STATE OF WEST VIRGINIA

COUNTY OF MARSHALL


I JOSEPH M. RUCKI, CLERK OF THE CIRCUIT COURT OF MARSHALL COUNTY,

WEST VIRGINIA, HEREBY CERTIFY THAT THE FOREGOING ARE A TRUE AND

EXACT COPY OF THE ORIGINAL CIVIL CASE FILING AND DOCKET SHEET ON

RECORD IN THE  ACTION OF 17-C-124C.


GIVEN UNDER MY HAND AND SEAL THIS 30TH DAY OF JUNE, 2017.


JOSEPH M.RUCKI, CLERK


BY: _____

Deputy Clerk

CASE 17-C-124          MARSHALL                          PAGE 0001

THE MARSHALL COUNTY COAL COMPA VS. JOHN OLIVER, ET AL


LINE    DATE    ACTION

   1 06/22/17   COMPLIANT, CCIS FORM. ****HOLD SERVICE****
   2 06/23/17   SUM, COMPLAINT TO SEC OF ST TO SERV HOME BOX OFFICE INC, TIME
   3            WARNER INC, & PARTIALLY IMPORTANT PROD LLC & CERT MAIL TO
   4            SERV JOHN OLIVER & CHARLES WILSON.
   5            ****NOTIFY ROBERT FITZSIMMONS WHEN A T.R.O. IS FILED******
   6 06/28/17   PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
   7            PRELIMINARY INJUNCTION.
   8 06/28/17   NOTICE OF HEARING 7-5-17 @ 3:00, CERT OF SERV
   9 06/30/17   ORDER: ERIC BAISDEN, MICHAEL BARRIE & WILLIAM ALLEMAN OF THE LAW
  10            FIRM OF BENESCH, FRIELANDER, COPLAN & ARONOFF ARE ADMITTED PRO
  11            HAC VICE, COPIES ISSUED TO D. DELK, T. HENTOFF (DC)
  12 06/30/17   PLF'S MOTION FOR PRO HACE VICE, VERIFIED STATEMENT, CERT OF SERV

FILED

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

2017 JUN 30  AM 9: 04

**THE MARSHALL COUNTY COAL COMPANY,**
**THE MARION COUNTY COAL COMPANY,**
**THE MONONGALIA COUNTY COAL COMPANY,**
**THE HARRISON COUNTY COAL COMPANY,**
**THE OHIO COUNTY COAL COMPANY,**
**MURRAY ENERGY CORPORATION, and**
**ROBERT E. MURRAY,**

JOSEPH M. RUCKI

        **Plaintiffs,**

        Civil Action No. 17-C-124
        Judge Jeffrey Cramer

**v.**
**JOHN OLIVER, CHARLES WILSON,**
**PARTIALLY IMPORTANT PRODUCTIONS, LLC,**
**HOME BOX OFFICE, INC., TIME WARNER, INC.,**
**and DOES 1 through 10.**

        **Defendants.**

**PLAINTIFFS' MOTION FOR PRO HAC VICE ADMISSION OF COUNSEL**

The plaintiffs, pursuant to Rule 8 of the Rules for the Admission to the Practice of Law,

hereby move this Court to permit William M. Alleman, Jr., Esq., W. Eric Baisden, Esq., and

Michael J. Barrie, Esq. to appear *pro hac vice* in this matter for all purposes allowable for the

practice of law in this State.  In support of this motion plaintiffs attach hereto the Verified

Statement of Application for Pro Hac Vice Admission completed by each applicant.  As is

reflected on the attached Verified Statements and is otherwise hereby verified by this Motion, the

application fees have been sent to The West Virginia State Bar which is further evidenced by the

attachment hereto of the receipt of payment.

Moreover, pursuant to Rule 8 (c), and in light of the hearing set for July 5, 2017 on

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND**

**PRELIMINARY INJUNCTION**, plaintiffs request this motion be considered prior to the start

of the July 5, 2017 proceeding.  To the extent the Court is not in a position to consider the

motion on a permanent basis at that time, plaintiffs request that the Court admit counsel *pro hac vice* on a temporary basis for purpose of the hearing and until such time as the matter can be considered.  In light of the significance of the matters which are the subject of the pending Motion, good cause exists for the temporary admission to allow plaintiffs to properly present their motion on July 5, 2017.

Wherefore, for all the reasons set forth herein, plaintiffs request the Motion be granted and that they be awarded all relief requested herein.

Respectfully Submitted:

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

FILED

2017 JUN 30 AM 9: 04

JOSEPH M. RUCKI

## CERTIFICATE OF SERVICE

Service of the foregoing **PLAINTIFFS' MOTION FOR PRO HAC VICE ADMISSION OF COUNSEL** was had upon the following by forwarding a true and complete copy thereof, via email, this 28th day of June, 2017, as follows:

Thomas G. Hentoff
THentoff@wc.com
Williams & Connolly LLP
725 Twelfth Street, N.W.,
Washington, D.C. 20005
**(Counsel for Mr. John Oliver, Mr. Charles Wilson
Home Box Office, Inc., Time Warner, Inc. and
Partially Important Productions, LLC)**

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

FILED

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

2017 JUN 30   AM 9: 04

JOSEPH M. RUCKI

THE MARSHALL COUNTY COAL COMPANY, THE
MARION COUNTY COAL COMPANY, THE
MONONGALIA COUNTY COAL COMPANY, THE
HARRISON COUNTY COAL COMPANY, THE OHIO
COUNTY COAL COMPANY, MURRAY ENERGY
CORPORATION, AND ROBERT E. MURRAY,

        **Plaintiffs,**

v.

        Civil Action No.: 17-C-124

JOHN OLIVER, CHARLES WILSON, PARTIALLY
IMPORTANT PRODUCTIONS, LLC, HOME BOX
OFFICE, INC., TIME WARNER, INC., and DOES 1
through 10.

        Judge: Jeffrey Cramer

        **Defendants.**

---

## VERIFIED STATEMENT OF APPLICATION FOR PRO HAC VICE
## ADMISSION BY MICHAEL J. BARRIE, ESQ.

In accordance with Rule 8.0 of the Rules for Admission to the practice of law, your

applicant Michael J. Barrie, Esq., of the law firm of Benesch, Friedlander, Coplan & Aronoff,

LLP provides the following verified statement of application:

1.     The action in which your applicant requests admission pro hac vice is set forth in

the above caption.

2.     Your applicant is admitted to practice law in the States of Delaware (Bar I.D. #

4684), Pennsylvania (Bar I.D. # 85625), New Jersey (Bar I.D. # 033262000), and

New York (Bar I.D. # 5057450).  The name, address, and telephone number of

the registration or disciplinary agency for each state is as follows:

a.  Delaware: Office of Disciplinary Counsel, the Renaissance Centre, 405 North

King Street, Suite 420, Wilmington, Delaware 19801.

10251793

    b.   New Jersey:  Office of Attorney Ethics of the Supreme Court of New Jersey, P.O. Box 963, Trenton, New Jersey 08625.

    c.   Pennsylvania: The Disciplinary Board of the Supreme Court of Pennsylvania, District 1 Office, 1601 Market Street, Suite 3320, Philadelphia, Pennsylvania 19103.

    d.   New York: Supreme Court, Appellate Division, First Judicial Department, Attorney Grievance Committees, 61 Broadway, Second Floor, New York, New York 1006.

3.    Responsible local attorneys in this matter will be:

**Jeffrey A. Grove, Esq. ( # 6065)**
**David L. Delk, Esq.  (#6883)**
**Grove, Holmstrand & Delk, PLLC**
**44 ½ 15ᵗʰ Street**
**Wheeling, WV  26003**
**(304) 905-1961**

4.    Your applicant has not been involved in any matter before West Virginia tribunals in the preceding 24 months.

5.    All matters before West Virginia tribunals in which any member of the applicant's firm has been involved in the preceding 24 months are set forth on the attachment hereto.

6.    Your applicant is in good standing with the Bars of each stated identified in paragraph two has not been disciplined by any Bar within the preceding 24 months.

7.    Your applicant agrees to comply with all laws, rules, and regulations of West Virginia state and local governments, including tax and authorities and any standards for pro bono civil and criminal indigent defense legal services.

8.      Attached hereto is a copy of the receipt of your applicant's payment in the amount

of $350 which payment was made to the West Virginia State Bar and a copy of

this application has been sent to the West Virginia State Bar.

I hereby verify that to the best of my knowledge the matters set forth herein are true and

correct.

_____
Michael Barrie, Esq.

STATE OF _California_,
COUNTY OF _Los Angeles_ to wit:

Acknowledged, subscribed and sworn to before me, a Notary Public, by **Michael Barrie** this **28** day of **June**, 2017.

(seal) 

**Margaret E Gazey**
Notary Public

My Commission expires: **Jan 2, 2018**

MARGARET E. GAZEY
Commission # 2050928
Notary Public - California
Los Angeles County
My Comm. Expires Jan 2, 2018

I hereby agree to participate in this matter as responsible local counsel for the Applicant in accordance with Rule 8 of the rules for Admission to the Practice of Law.

_____
Jeffrey A. Grove, Esq.

_____
David L. Delk, Esq.

| Case Caption | Court and Case Number | Benesch Attorneys Involved |
|---|---|---|
| Kimberly J. Simons v. DISH Network L.L.C. | Circuit Court of Kanawha County, West Virginia, Case No. 15-C-1157 | Eric L. Zalud & Laura E. Kogan |
| Albert Nicholson v. A.O. Smith Corporation, et al. | Circuit Court of Kanawha County, West Virginia, Civil Action No. 16-C-690 KAN | Eric L. Zalud & Anthony C. Sallah |
| David R. Bachner v. A.O. Smith Corporation, et al | Circuit Court of Kanawha County, West Virginia, Civil Action No. 16-C-487 KAN | Eric L. Zalud & Anthony C. Sallah |
| Sherry Pauley, Executrix for the Estate of Helen Chewning v. Lifeline Systems Company. et al. | Circuit Court of Boone County, West Virginia, Civil Action No. 14-C-129 | Brian N. Ramm |
| Ohio Valley Jobs Alliance v. Durham et al. | West Virginia Air Quality Board, Case No. 15-01-AQB | John Stock & Orla Collier |
| ESC Harrison County Power, LLC | Public Service Commission of West Virginia, Case No. 17-0036-E-CS | Matthew D. Gurbach, Gregory T. Frohman, & Emily V. Danford |
| Tammy Horn, Administratrix of the Estate of Franklin Delno Hensley, et. al. v. Robin Industries, Inc., et al., | Circuit Court for Kanawha County, West Virginia, Case No. 12-C-1249 KAN | W. Eric Baisden |
| F.S.T. Inc. d/b/a Tiffany's Dolls Cabaret v. Florence White, et al. v. Joseph Strazzanti | Circuit Court for Hancock County, West Virginia, Case No. 13-C-158 | W. Eric Baisden |
| CCP Worthington 1160 LLC f/k/a ARHC WNPBGWV01, LLC v. PWNR, LLC d/b/a Worthington Nursing & Rehabilitation Center, et al. | Circuit Court of Wood County, West Virginia, Case No. 17-C-42 | Harry M. Brown |
| In re Passage Midland Meadows Operations, LLC | United States Bankruptcy Court for the Southern District of West Virginia, Case No. 17-bk-30092 | William E. Schonberg & Kevin M. Capuzzi |

**IN THE CIRCUIT COURT OF**
**MARSHALL COUNTY, WEST VIRGINIA**

FILED

2017 JUN 30  AM 9: 05

JOSEPH M. RUCKI

THE MARSHALL COUNTY COAL
COMPANY, THE MARION COUNTY
COAL COMPANY, THE MONONGALIA
COUNTY COAL COMPANY, THE
HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION,
AND ROBERT E. MURRAY,

Civil Action No.: 17-C-124

Judge:  Jeffrey Cramer

      **Plaintiffs,**

    **v.**

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT
PRODUCTIONS, LLC, HOME BOX
OFFICE, INC., TIME WARNER, INC., and
DOES 1 through 10.

      **Defendants.**

**VERIFIED STATEMENT OF APPLICATION FOR PRO HAC VICE**
**ADMISSION BY ERIC BAISDEN., ESQ.**

In accordance with Rule 8.0 of the Rules for Admission to the practice of law, your

applicant Eric Baisden, Esq. of the law firm of Benesch, Friedlander, Coplan & Aronoff, LLP

provides the following verified statement of application:

1.    The action in which your applicant requests admission pro hac vice is set forth in

    the above caption.

2.    Your applicant is admitted to practice law in the State of Ohio (Bar I.D. #

    0055763). The name, address, and telephone number of the registration or

    disciplinary agency for Ohio is as follows:

3.    Responsible local attorneys in this matter will be:

    **Jeffrey A. Grove, Esq. ( # 6065)**
    **David L. Delk, Esq.  (#6883)**
    **Grove, Holmstrand & Delk, PLLC**

44 ½ 15th Street
Wheeling, WV 26003
(304) 905-1961

4.  All matters before West Virginia tribunals in which your applicant has been involved in the preceding 24 months is set forth on the attachment hereto.

5.  All matters before West Virginia tribunals in which any member of the applicant's firm has been involved in the preceding 24 months is set forth on the attachment hereto.

6.  Your applicant is in good standing with the Bar of Ohio and has not been disciplined by any Bar within the preceding 24 months.

7.  Your applicant agrees to comply with all laws, rules and regulations of West Virginia state and local governments, including tax and authorities and any standards for pro bono civil and criminal indigent defense legal services.

8.  Attached hereto is a copy of the receipt of your applicant's payment in the amount of $ 350 which payment was made to the West Virginia State Bar and a copy of this application has been sent to the West Virginia State Bar.

I hereby verify that to the best of my knowledge the matters set forth herein are true and correct.

W. Eric Baisden, Esq.

STATE OF OHIO,
COUNTY OF CUYAHOGA, to wit:

Acknowledged, subscribed and sworn to before me, a Notary Public, by W. Eric Baisden, this 28th day of June, 2017.

ADAM E. PRIMM
Attorney At Law
NOTARY PUBLIC
STATE OF OHIO
My commission has
no expiration date.
Section 147.03 O.R.C.

Notary Public

My Commission expires: _____

(seal)

I hereby agree to participate in this matter as responsible local counsel for the Applicant in accordance with Rule 8 of the rules for Admission to the Practice of Law.

_____
Jeffrey A. Grove, Esq.


_____
David L. Delk, Esq.

| Case Caption | Court and Case Number | Benesch Attorneys Involved |
|---|---|---|
| *Kimberly J. Simons v. DISH Network L.L.C.* | Circuit Court of Kanawha County, West Virginia, Case No. 15-C-1157 | Eric L. Zalud & Laura E. Kogan |
| *Albert Nicholson v. A.O. Smith Corporation, et al.* | Circuit Court of Kanawha County, West Virginia, Civil Action No. 16-C-690 KAN | Eric L. Zalud & Anthony C. Sallah |
| *David R. Bachner v. A.O. Smith Corporation, et al* | Circuit Court of Kanawha County, West Virginia, Civil Action No. 16-C-487 KAN | Eric L. Zalud & Anthony C. Sallah |
| *Sherry Pauley, Executrix for the Estate of Helen Chewning v. Lifeline Systems Company. et al.* | Circuit Court of Boone County, West Virginia, Civil Action No. 14-C-129 | Brian N. Ramm |
| *Ohio Valley Jobs Alliance v. Durham et al.* | West Virginia Air Quality Board, Case No. 15-01-AQB | John Stock & Orla Collier |
| *ESC Harrison County Power, LLC* | Public Service Commission of West Virginia, Case No. 17-0036-E-CS | Matthew D. Gurbach, Gregory T. Frohman, & Emily V. Danford |
| *Tammy Horn, Administratrix of the Estate of Franklin Delno Hensley, et. al. v. Robin Industries, Inc., et al.,* | Circuit Court for Kanawha County, West Virginia, Case No. 12-C-1249 KAN | W. Eric Baisden |
| *F.S.T. Inc. d/b/a Tiffany's Dolls Cabaret v. Florence White, et al. v. Joseph Strazzanti* | Circuit Court for Hancock County, West Virginia, Case No. 13-C-158 | W. Eric Baisden |
| *CCP Worthington 1160 LLC f/k/a ARHC WNPBGWV01, LLC v. PWNR, LLC d/b/a Worthington Nursing & Rehabilitation Center, et al.* | Circuit Court of Wood County, West Virginia, Case No. 17-C-42 | Harry M. Brown |
| *In re Passage Midland Meadows Operations, LLC* | United States Bankruptcy Court for the Southern District of West Virginia, Case No. 17-bk-30092 | William E. Schonberg & Kevin M. Capuzzi |

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

FILED

2017 JUN 30  AM 9: 05

JOSEPH M. RUCKI

**THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, MURRAY ENERGY CORPORATION, AND ROBERT E. MURRAY,**

   **Plaintiffs,**

**v.**

Civil Action No.: 17-C-124

**JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER, INC., and DOES 1 through 10.**

Judge: Jeffrey Cramer

   **Defendants.**

## VERIFIED STATEMENT OF APPLICATION FOR PRO HAC VICE ADMISSION BY WILLIAM M. ALLEMAN, JR., ESQ.

In accordance with Rule 8.0 of the Rules for Admission to the practice of law, your applicant William M. Alleman, Jr., Esq., of the law firm of Benesch, Friedlander, Coplan & Aronoff, LLP provides the following verified statement of application:

1.   The action in which your applicant requests admission pro hac vice is set forth in the above caption.

2.   Your applicant is admitted to practice law in the State of Delaware (Bar I.D. # 5449) The name, address, and telephone number of the registration or disciplinary agency for Delaware is as follows: Office of Disciplinary Counsel, the Renaissance Centre, 405 North King Street, Suite 420, Wilmington, Delaware 19801; Telephone: (302) 651-3931.

3.   Responsible local attorneys in this matter will be:

   **Jeffrey A. Grove, Esq. ( # 6065)**
   **David L. Delk, Esq.  (#6883)**

10251803

**Grove, Holmstrand & Delk, PLLC**
44 ½ 15th Street
Wheeling, WV  26003
(304) 905-1961

4.      Your applicant has not previously been involved in any matter before West Virginia tribunals in the preceding 24 months.

5.      All matters before West Virginia tribunals in which any member of the applicant's firm has been involved in the preceding 24 months are set forth on the attachment hereto.

6.      Your applicant is in good standing with the Bar of Delaware and has not been disciplined by any Bar within the preceding 24 months.

7.      Your applicant agrees to comply with all laws, rules, and regulations of West Virginia state and local governments, including tax and authorities and any standards for pro bono civil and criminal indigent defense legal services.

8.      Attached hereto is a copy of the receipt of your applicant's payment in the amount of $350 which payment was made to the West Virginia State Bar and a copy of this application has been sent to the West Virginia State Bar.

I hereby verify that to the best of my knowledge the matters set forth herein are true and correct.

_____
William M. Alleman, Jr., Esq.

STATE OF DELAWARE,
COUNTY OF NEW CASTLE, to wit:

Acknowledged, subscribed and sworn to before me, a Notary Public, by Kevin M. Capuzzi, this 28th day of June, 2017.

(seal)

_____
Notary Public

My Commission expires: NA

I hereby agree to participate in this matter as responsible local counsel for the Applicant in accordance with Rule 8 of the rules for Admission to the Practice of Law.

Jeffrey A. Grove, Esq.

David L. Delk, Esq.

| Case Caption | Court and Case Number | Benesch Attorneys Involved |
|---|---|---|
| *Kimberly J. Simons v. DISH Network L.L.C.* | Circuit Court of Kanawha County, West Virginia, Case No. 15-C-1157 | Eric L. Zalud & Laura E. Kogan |
| *Albert Nicholson v. A.O. Smith Corporation, et al.* | Circuit Court of Kanawha County, West Virginia,  Civil Action No. 16-C-690 KAN | Eric L. Zalud & Anthony C. Sallah |
| *David R. Bachner v. A.O. Smith Corporation, et al* | Circuit Court of Kanawha County, West Virginia, Civil Action No. 16-C-487 KAN | Eric L. Zalud & Anthony C. Sallah |
| *Sherry Pauley, Executrix for the Estate of Helen Chewning v. Lifeline Systems Company. et al.* | Circuit Court of Boone County, West Virginia, Civil Action No. 14-C-129 | Brian N. Ramm |
| *Ohio Valley Jobs Alliance v. Durham et al.* | West Virginia Air Quality Board, Case No. 15-01-AQB | John Stock & Orla Collier |
| *ESC Harrison County Power, LLC* | Public Service Commission of West Virginia, Case No. 17-0036-E-CS | Matthew D. Gurbach, Gregory T. Frohman, & Emily V. Danford |
| *Tammy Horn, Administratrix of the Estate of Franklin Delno Hensley, et. al. v. Robin Industries, Inc., et al.,* | Circuit Court for Kanawha County, West Virginia, Case No. 12-C-1249 KAN | W. Eric Baisden |
| *F.S.T. Inc. d/b/a Tiffany's Dolls Cabaret v. Florence White, et al. v. Joseph Strazzanti* | Circuit Court for Hancock County, West Virginia, Case No. 13-C-158 | W. Eric Baisden |
| *CCP Worthington 1160 LLC f/k/a ARHC WNPBGWV01, LLC v. PWNR, LLC d/b/a Worthington Nursing & Rehabilitation Center, et al.* | Circuit Court of Wood County, West Virginia, Case No. 17-C-42 | Harry M. Brown |
| *In re Passage Midland Meadows Operations, LLC* | United States Bankruptcy Court for the Southern District of West Virginia, Case No. 17-bk-30092 | William E. Schonberg & Kevin M. Capuzzi |

Thank You for Your Payment | The West Virginia State Bar Membership Portal

Page 1 of 2

*E. Baisden*
*38413.118*



The West Virginia State Bar
Membership Portal ✓

Eric Baisden Esq.
<u>Log out</u>

# Thank You for Your Payment

Thank you for submitting your information and payment. You will be contacted if further information is needed. Decisions of granting or denying Pro Hac Vice motions are not made by The West Virginia State Bar, but by the tribunal to which the motion was submitted. For more information please emal PHV@wvbar.org

To view your submission status click here

Your transaction has been processed successfully. Please print this page for your records.
An email receipt has also been sent to ebaisden@beneschlaw.com

### Payment Information

| Item | Qty | Unit Price | Total Price |
| --- | --- | --- | --- |
| Number of Out-Of-State Lawyers | 1 | $ 358.00 | $ 358.00 |

**Payment Total: $ 358.00**

Date: June 27th, 2017 9:18 AM
Transaction #: 40165865148

### PHV Case Information

Civil Action
Number

17-C-124

Organization
Email

ebaisden@beneschlaw.com

**Billing Name and Address**

BFCA Delaware Ofc
200 Public Square, #2300
Cleveland, OH 44114

**Your Email**

Thank You for Your Payment | The West Virginia State Bar Membership Portal                    Page 2 of 2

ebaisden@beneschlaw.com

**Credit Card Information**

Amex

***********3000

Expires: April 2019

All Contents Copyright © 2017, The WV State Bar. All Rights Reserved.

The West Virginia State Bar | 2000 Deitrick Boulevard, Charleston, WV 25311-1231

Toll Free: 866-989-8227| Phone: 304-553-7220

Click here for assistance if you are having technical difficulties or have questions.

W. Alleman
38413-118



# The West Virginia State Bar
## Membership Portal ✓

William M. Alleman Jr.
<u>Log out</u>

# Thank You for Your Payment

Thank you for submitting your information and payment. You will be contacted if further information is needed. Decisions of granting or denying Pro Hac Vice motions are not made by The West Virginia State Bar, but by the tribunal to which the motion was submitted. For more information please emal PHV@wvbar.org

To view your submission status click here

Your transaction has been processed successfully. Please print this page for your records.
An email receipt has also been sent to walleman@beneschlaw.com

## Payment Information

| Item | Qty | Unit Price | Total Price |
|------|-----|-----------|-------------|
| Number of Out-Of-State Lawyers | 1 | $ 358.00 | $ 358.00 |

**Payment Total: $ 358.00**

Date: June 27th, 2017 8:45 AM
Transaction #: 40165789136

## PHV Case Information

Civil Action Number: 17-C-124

Organization Email: walleman@beneschlaw.com

### Billing Name and Address

BFCA Delaware Ofc
200 Public Square, Ste. 2300
Cleveland, OH 44114

### Your Email

Thank You for Your Payment | The West Virginia State Bar Membership Portal                Page 2 of 2

walleman@beneschlaw.com

**Credit Card Information**

Amex

***********3000

Expires: April 2019

All Contents Copyright © 2017, The WV State Bar. All Rights Reserved.

The West Virginia State Bar | 2000 Deitrick Boulevard, Charleston, WV 25311-1231

Toll Free: 866-989-8227| Phone: 304-553-7220

Click here for assistance if you are having technical difficulties or have questions.

Thank You for Your Payment | The West Virginia State Bar Membership Portal                    Page 1 of 2

*M. Barrie*
*38413.118*



**The West Virginia State Bar**
Membership Portal ✓

Michael J Barrie
<u>Log out</u>

# Thank You for Your Payment

Thank you for submitting your Pro Hac Vice annual fee.

> Your transaction has been processed successfully. Please print this page for your records.
> An email receipt has also been sent to mbarrie@beneschlaw.com

**Membership Fee**

| Item | Fee |
|---|---|
| Annual Fee - Pro Hac Vice - Credit Card | $ 358.00 |

**Membership Fee Total: $ 358.00**

Date: June 27th, 2017 8:33 AM
Transaction #: 40165765799

**Out of State Membership Detail**

Membership        2017-06-23
Start Date

Membership End    2018-06-22
Date

**Billing Name and Address**

BFCA Delaware Ofc

200 Public Square, Ste. 2300
Cleveland, OH 44114

**Your Email**

mbarrie@beneschlaw.com

**Credit Card Information**

Thank You for Your Payment | The West Virginia State Bar Membership Portal          Page 2 of 2

Amex

***********3000

Expires: April 2019

All Contents Copyright © 2017, The WV State Bar. All Rights Reserved.

The West Virginia State Bar | 2000 Deitrick Boulevard, Charleston, WV 25311-1231

Toll Free: 866-989-8227| Phone: 304-553-7220

Click here for assistance if you are having technical difficulties or have questions.

FILED
2017 JUN 30  AM 10: 25
JOSEPH M. RUCKI

### IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

        Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

        Defendants.

Civil Action No. 17-C-124
Judge Jeffrey Cramer

### O R D E R

On a former day, the Court considered the Applications for Eric Baisden, Esq., Michael J. Barrie, Esq. and William M. Alleman, Jr., Esq. of the law firm of Benesch, Friedlander, Coplan & Aronoff, LLP, for admission *pro hac vice* in this proceeding on behalf of the Plaintiffs in association with Jeffrey A. Grove, Esq.

The Applications appearing to be in order and the Court being of the opinion that the Applications should be granted, it is hereby

**ORDERED** that Eric Baisden, Esq., Michael J. Barrie, Esq. and William M. Alleman, Jr., Esq. of the law firm of Benesch, Friedlander, Coplan & Aronoff, LLP are hereby admitted *pro hac vice* in the above-styled civil action in association with Jeffrey A. Grove, Esq. of Grove, Holmstrand & Delk, PLLC for all purposes in this proceeding.  It is futher

**ORDERED** that Jeffrey A. Grove, Esq. and/or David L. Delk, Jr., Esq. shall be required to attend all hearings, depositions, trials, or other proceedings actually conducted before the Court in this litigation.

**ENTERED** this 30th day of June, 2017.

HONORABLE JEFFREY CRAMER

A Copy Teste:

Joseph M. Rucki, Clerk

By _Donna Crane_ Deputy

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

        Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

        Defendants.

Civil Action No. 17-C-124
Judge Jeffrey Cramer

### NOTICE OF HEARING

Please take notice that the undersigned will bring the previously filed **PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** on for hearing before The Honorable Jeffrey Cramer, Judge of the Circuit Court of Marshall County, West Virginia, in his chambers at the Marshall County Courthouse on **Wednesday, July 5, 2017 @ 3:00 p.m.**, or as soon thereafter as the matter can be heard.

Respectfully Submitted,

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF HEARING** was had upon the following by forwarding a true and complete copy thereof, via facsimile, this 28th day of June, 2017, as follows:

Thomas G. Hentoff, Esq.
(202) 434-5029 - Facsimile
THentoff@wc.com
Williams & Connolly LLP
725 Twelfth Street, N.W.,
Washington, D.C. 20005
**(Counsel for Mr. John Oliver, Mr. Charles Wilson
Home Box Office, Inc., Time Warner, Inc. and
Partially Important Productions, LLC)**

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

## HP LaserJet Pro MFP M225dn

# Fax Confirmation

Jun-28-2017  2:37PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 2362 | 6/28/2017 | 2:35:44PM | Receive | 3049058628 | 1:24 | 4 | OK |

Jun. 28. 2017  3:30PM    Grove & Delk PLLC                          No. 1411   P. 1

**Law Offices**
**Grove Holmstrand & Delk P.L.L.C.**
44 ½ 15th Street  •  Wheeling, WV 26003
Telephone:  (304) 905-1961        Facsimile:  (304) 905-8628

### FACSIMILE TRANSMITTAL SHEET

DATE:  June 28, 2017                    TIME:  3:33

PLEASE DELIVER IMMEDIATELY TO:

NAME:   Joseph Rucki, Clerk

COMPANY/FIRM:  Marshall County Circuit Court

CITY/STATE:    Moundsville, WV

FACSIMILE NUMBER:    304-845-3948

SENT BY:   Jeffrey A. Grove, Esq.

TOTAL NUMBER OF PAGES INCLUDING THIS COVER SHEET:  4

COMMENTS:      CA # 17-C-124 C
                        Murray Energy / HBO

*IF MATERIAL IS NOT CLEARLY TRANSMITTED, PLEASE CONTACT SENDER.*

Sherry B.

IMPORTANT:   The information contained in this facsimile transmission is only for the use of the individual or entity named above, and may contain information that is privileged, confidential or exempt or protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any examination, dissemination, distribution or copying of this communication is strictly prohibited, and you should refrain from examining it (ABA, Ethical Opinion 92-362, 11/10/92).  If you have received this communication in error, please immediately notify us by telephone and return  the original message to us at the address above via the U.S. Postal Service.  Thank you.

## Law Offices
## Grove Holmstrand & Delk P.L.L.C.
### 44 ½ 15th Street • Wheeling, WV 26003
### Telephone: (304) 905-1961        Facsimile: (304) 905-8628

## FACSIMILE TRANSMITTAL SHEET

DATE:  June 28, 2017                    TIME:  3:33

PLEASE DELIVER IMMEDIATELY TO:

NAME:    Joseph Rucki, Clerk

COMPANY/FIRM:  Marshall County Circuit Court

CITY/STATE:        Moundsville, WV

FACSIMILE NUMBER:    **304-845-3948**

SENT BY:    Jeffrey A. Grove, Esq.

TOTAL NUMBER OF PAGES INCLUDING THIS COVER SHEET:  4

COMMENTS:        CA # 17-C-124 C
                 Murray Energy / HBO

*IF MATERIAL IS NOT CLEARLY TRANSMITTED, PLEASE CONTACT SENDER.*

Sherry B.

**IMPORTANT:** The information contained in this facsimile transmission is only for the use of the individuals or entity named above, and may contain information that is privileged, confidential or exempt or protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any examination, dissemination, distribution or copying of this communication is strictly prohibited, and you should refrain from examining it (ABA, Ethical Opinion 92-362, 11/10/92). If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the address above via the U.S. Postal Service. Thank you.

# GROVE, HOLMSTRAND & DELK, P.L.L.C.

JEFFREY A. GROVE
Jgrove@grovedelklaw.com
304.905.1961

June 28, 2017

**VIA FACSIMILE**
Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

> Re:   The Marshall County Coal Company, et al v HBO, Inc., et al
>       Civil Action No:  17-C-124 - C

Dear Mr. Rucki:

Enclosed herewith for filing please find the original **NOTICE OF HEARING** regarding the previously filed **PLAINTIFFS' MOTION FOR A TERRMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW INS UPPORT OF PLAINTIFFS' MOTION FOR A TERRMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** in connection with the above-referenced matter.  Please know a complete copy was forwarded to counsel as indicated.

Thank you for your attention to this matter.  Please call with any questions.

GROVE, HOLMSTRAND & DELK, P.L.L.C.

By:  _____
      Jeffrey A. Grove

JAG:slb
Encls.

cc w/encls:   Honorable Jeffrey Cramer (via facsimile)
              Thomas G. Hentoff, Esq. (via facsimile)

---

## HP LaserJet Pro MFP M225dn

# Fax Confirmation

---

Jun-28-2017  2:51PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 2363 | 6/28/2017 | 2:50:24PM | Send | 3042771705 | 1:18 | 3 | OK |

Jun. 28, 2017  3:30PM    Grove & Delk PLLC                    No. 1411   P. 2

## GROVE, HOLMSTRAND & DELK, P.L.L.C.

JEFFREY A. GROVE
jgrove@groudelklaw.com
304.905.1961

June 28, 2017

**VIA FACSIMILE**
Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

Re:  The Marshall County Coal Company, et al v HBO, Inc., et al
     Civil Action No:  17-C-124 - C

Dear Mr. Rucki:

Enclosed herewith for filing please find the original NOTICE OF HEARING regarding the previously filed PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and MEMORANDUM OF LAW INS UPPORT OF PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION in connection with the above-referenced matter.  Please know a complete copy was forwarded to counsel as indicated.

Thank you for your attention to this matter.  Please call with any questions.

GROVE, HOLMSTRAND & DELK, P.L.L.C.

By: _____
    Jeffrey A. Grove

JAG:alb
Encls.

cc w/encls:   Honorable Jeffrey Cramer (via facsimile)
              Thomas G. Henloff, Esq. (via facsimile)

FILED
2017 JUN 28  PH 3: 37

44 ½ 15TH STREET | WHEELING, WEST VIRGINIA 26003 | FAX 304.905.8628

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

       Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

       Defendants.

Civil Action No. 17-C-124
Judge Jeffrey Cramer

## NOTICE OF HEARING

Please take notice that the undersigned will bring the previously filed **PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** on for hearing before The Honorable Jeffrey Cramer, Judge of the Circuit Court of Marshall County, West Virginia, in his chambers at the Marshall County Courthouse on **Wednesday, July 5, 2017 @ 3:00 p.m.**, or as soon thereafter as the matter can be heard.

Respectfully Submitted,

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

## CERTIFICATE OF SERVICE

Service of the foregoing **NOTICE OF HEARING** was had upon the following by forwarding a true and complete copy thereof, via facsimile, this 28th day of June, 2017, as follows:

Thomas G. Hentoff, Esq.
(202) 434-5029 - Facsimile
THentoff@wc.com
Williams & Connolly LLP
725 Twelfth Street, N.W.,
Washington, D.C. 20005
**(Counsel for Mr. John Oliver, Mr. Charles Wilson**
**Home Box Office, Inc., Time Warner, Inc. and**
**Partially Important Productions, LLC)**

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

**HP LaserJet Pro MFP M225dn**

# Fax Confirmation

Jun-28-2017  2:37PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 2362 | 6/28/2017 | 2:35:44PM | Receive | 3049058628 | 1:24 | 4 | OK |

Jun. 28. 2017  3:30PM    Grove & Delk PLLC                    No. 1411   P. 1

**Law Offices**
**Grove Holmstrand & Delk P.L.L.C.**
44 ½ 15th Street  •  Wheeling, WV 26003
Telephone:  (304) 905-1961        Facsimile:  (304) 905-8628

**FACSIMILE TRANSMITTAL SHEET**

DATE:  June 28, 2017                          TIME:  3:33

PLEASE DELIVER IMMEDIATELY TO:

NAME:   Joseph Rucki, Clerk

COMPANY/FIRM:  Marshall County Circuit Court

CITY/STATE:     Moundsville, WV

FACSIMILE NUMBER:    304-845-3948

SENT BY:    Jeffrey A. Grove, Esq.

TOTAL NUMBER OF PAGES INCLUDING THIS COVER SHEET:   4

COMMENTS:     CA # 17-C-124 C
Murray Energy / HBO

*IF MATERIAL IS NOT CLEARLY TRANSMITTED, PLEASE CONTACT SENDER.*

Sherry B.

**IMPORTANT:**  The information contained in this facsimile transmission is only for the use of the individual or entity named above, and may contain information that is privileged, confidential or exempt or protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any examination, dissemination, distribution or copying of this communication is strictly prohibited, and you should refrain from examining it (ABA, Ethical Opinion 92-362, 11/10/92).  If you have received this communication in error, please immediately notify us by telephone and return  the original message to us at the address above via the U.S. Postal Service.  Thank you.

# Law Offices
# Grove Holmstrand & Delk P.L.L.C.
## 44 ½ 15th Street • Wheeling, WV 26003
### Telephone: (304) 905-1961          Facsimile: (304) 905-8628

# FACSIMILE TRANSMITTAL SHEET

DATE:   June 28, 2017                    TIME: 3:33

PLEASE DELIVER IMMEDIATELY TO:

NAME:   Joseph Rucki, Clerk

COMPANY/FIRM:   Marshall County Circuit Court

CITY/STATE:       Moundsville, WV

FACSIMILE NUMBER:   **304-845-3948**

SENT BY:   Jeffrey A. Grove, Esq.

TOTAL NUMBER OF PAGES INCLUDING THIS COVER SHEET: 4

COMMENTS:       CA # 17-C-124 C
                Murray Energy / HBO

*IF MATERIAL IS NOT CLEARLY TRANSMITTED, PLEASE CONTACT SENDER.*

Sherry B.

**IMPORTANT:** The information contained in this facsimile transmission is only for the use of the individuals or entity named above, and may contain information that is privileged, confidential or exempt or protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any examination, dissemination, distribution or copying of this communication is strictly prohibited, and you should refrain from examining it (ABA, Ethical Opinion 92-362, 11/10/92). If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the address above via the U.S. Postal Service. Thank you.

# GROVE, HOLMSTRAND & DELK, P.L.L.C.

JEFFREY A. GROVE
jgrove@grovedelklaw.com
304.905.1961

June 28, 2017

**VIA FACSIMILE**
Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

  Re: The Marshall County Coal Company, et al v HBO, Inc., et al
    Civil Action No: 17-C-124 - C

Dear Mr. Rucki:

  Enclosed herewith for filing please find the original **NOTICE OF HEARING** regarding the previously filed **PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW INS UPPORT OF PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** in connection with the above-referenced matter. Please know a complete copy was forwarded to counsel as indicated.

  Thank you for your attention to this matter. Please call with any questions.

       GROVE, HOLMSTRAND & DELK, P.L.L.C.

    By: _____
      Jeffrey A. Grove

JAG:slb
Encls.

cc w/encls: Honorable Jeffrey Cramer (via facsimile)
     Thomas G. Hentoff, Esq. (via facsimile)

44 ½ 15ᵀᴴ STREET | WHEELING, WEST VIRGINIA 26003  | FAX 304.905.8628

HP LaserJet Pro MFP M225dn

# Fax Confirmation

Jun-28-2017  2:51PM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 2363 | 6/28/2017 | 2:50:24PM | Send | 3042771705 | 1:18 | 3 | OK |

Jun. 28. 2017  3:30PM     Grove & Delk  PLLC                    No. 1411  P. 2

GROVE, HOLMSTRAND & DELX, P.L.L.C.

JEFFREY A. GROVE
jgrove@grovedelklaw.com
304.905.1961

June 28, 2017

**VIA FACSIMILE**
Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

FILED
2017 JUN 28  PM 3:37
MARSHALL COUNTY CIRCUIT CLERK

Re:  The Marshall County Coal Company, et al v HBO, Inc., et al
Civil Action No: 17-C-124 - C

Dear Mr. Rucki:

Enclosed herewith for filing please find the original NOTICE OF HEARING regarding the previously filed PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and MEMORANDUM OF LAW INS UPPORT OF PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION in connection with the above-referenced matter.  Please know a complete copy was forwarded to counsel as indicated.

Thank you for your attention to this matter.  Please call with any questions.

GROVE, HOLMSTRAND & DELX, P.L.L.C.

By: _____
Jeffrey A. Grove

JAG:slb
Encls.

cc w/encls:  Honorable Jeffrey Cramer (via facsimile)
Thomas G. Hentoff, Esq. (via facsimile)

44 ½ 15ᵗʰ STREET | WHEELING, WEST VIRGINIA 26003 | FAX 304.905.8628

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

      Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

      Defendants.

Civil Action No. 17-C-124
Judge Jeffrey Cramer

**PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

The above-captioned Plaintiffs hereby move (the "Motion") pursuant to Rule 65 of the

West Virginia Rules of Civil Procedure for entry of a temporary restraining order, preliminary

injunction, and "gag order" to restrain Defendants, during the pendency of this litigation, from (i)

re-broadcasting the Defamatory Statements that are the subject of Plaintiffs' Complaint, and (ii)

publicly discussing the substance of this litigation.  This relief is necessary to prevent further

irreparable harm to Plaintiffs and their employees, and to preserve Plaintiffs' ability to obtain

justice from a jury of impartial peers in this Court.  In support of this Motion, Plaintiffs

respectfully submit the accompanying *Memorandum of Law in Support of Plaintiffs' Motion for*

*a Temporary Restraining Order and Preliminary Injunction* and the (i) *Affidavit of Robert E.*

*Murray*; (ii) *Affidavit of John Klayko*; and (iii) *Affidavit of Heather Santini*.  Due to the imminent

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

   Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

   Defendants.

   Civil Action No. 17-C-124
   Judge Jeffrey Cramer

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION

The above-captioned Plaintiffs hereby submit this *Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction* and, for the reasons set forth herein, respectfully request that this Court enter a temporary restraining order, preliminary injunction, and "gag order" to restrain Defendants, during the pendency of this litigation, from (i) re-broadcasting the Defamatory Statements that are the subject of Plaintiffs' Complaint,[1] and (ii) publicly discussing the substance of this litigation. This relief is necessary to prevent further irreparable harm to Plaintiffs and their employees, and to preserve Plaintiffs' ability to obtain justice from a jury of impartial peers in this Court. The relevant facts and authorities are set forth below. Due to the imminent and irreparable injury, loss, and damage that the Motion seeks to prevent, Plaintiffs respectfully request an expedited hearing on the Motion.

---

[1]   Capitalized terms used but not defined herein are defined in the Complaint.

## PRELIMINARY STATEMENT

Plaintiffs are quickly learning firsthand about the phenomenon that Time and Fortune magazines have dubbed the "John Oliver Effect."   When Plaintiffs filed their Complaint, they did not appreciate the extent of the destructive aftermath that Defendants' malicious and false broadcast would cause.  Mr. Murray and his employees and family have been inundated with an onslaught of threats, harassment, and intimidation by people that are simply following Defendants' lead as they view and re-view the Defamatory Statements.   Murray Energy's website has been overrun with messages of "Eat Shit, Bob."  Employees who once enjoyed coming to work now spend their days receiving countless phone calls and e-mails telling them they are "a worthless piece of shit," and worse.   Mr. Murray's family members have even received death threats.  None of this would have occurred but for Defendants' broadcast of the Defamatory Statements.  Worse yet, Defendants knew that fans of the show would react in this manner.  Continued publication and public access to the Defamatory Statements will only enlist additional people to Defendants' perverse "call to action," with additional grave consequences.

Moreover, the John Oliver Effect has already spilled over to directly affect this litigation: numerous media outlets are commenting on their views of this action in a biased fashion that often times provides viewers with access to the entire June 18 broadcast.   Additionally, the broadcast's YouTube video has been viewed 1.9 million times more since the Complaint was filed.   The pervasiveness of the Defamatory Statements is unfairly tilting public opinion in Defendants' favor so much so that third parties have specifically directed threats and harassment at Plaintiffs' counsel regarding the perceived merits of Plaintiffs' claims.  Plaintiffs' ability to assemble a fair and impartial jury diminishes every day that the Defamatory Statements are available to prejudice the individuals that might be called upon to serve justice in this matter.

2

Plaintiffs therefore seek narrow relief to protect the wellbeing and property of those affected by this lawsuit and the potential pool of West Virginian jurors.  Seeking Court intervention in this manner comes as a last resort following Plaintiffs' request for a voluntary agreement from Defendants, which defense counsel refused, notwithstanding Defendants' awareness of these facts and, significantly, Mr. Murray's serious health condition and the harassment resulting from the show that is specified in the Complaint.

To prevent further imminent and irreparable harm, Plaintiffs request an Order enjoining the rebroadcast of the program at issue in this litigation and prohibiting Defendants from using their unique powers, through their access to millions of West Virginians, to bias the potential jurors who will determine their fate.  Plaintiffs' request for limited relief will mitigate further irreparable injury to Mr. Murray and his companies, as well as protect untold numbers of innocent Murray Energy employees from the consequences of the John Oliver Effect.  Plaintiffs also believe fairness dictates reciprocity, and will similarly be bound to refrain from utilizing the press, which they have attempted to modestly employ in a futile endeavor to level the disproportionate media playing field that Defendants enjoy.

## FACTS

### I.     Defendants' Assault on Mr. Murray and his Companies.

On June 18, 2017, before HBO's approximately 134 million subscribers, Defendants executed a meticulously planned attempt to assassinate the character and reputation of Mr. Robert E. Murray and his companies, including Murray Energy Corporation and those in West Virginia, on a world stage.  In carrying out their attack on Mr. Murray and his companies, however, Defendants ignored facts in their possession that directly contradicted the false and defamatory statements about Mr. Murray and his companies that they improperly passed off as truths to the nation and throughout the world.

When Defendants made Mr. Murray and the other Plaintiffs aware that they intended to advance their anti-coal agenda by, among other things, broadcasting injurious, false, and defamatory statements to millions of people, Mr. Murray and the other Plaintiffs, at Defendants' invitation (believed to have been extended under the guise of responsible and ethical journalism), transmitted—prior to the June 18, 2017 broadcast—information and facts directly contrary to the injurious, false, and defamatory statements that Defendants threatened to broadcast. But instead of reporting on the facts, including those facts which Defendants secured through their (what turned out to be) disingenuous outreach to Mr. Murray and his companies, Defendants ignored them and "doubled-down" on their character assassination of Mr. Murray and the business reputation of his companies, ending their recorded broadcast with the phrases "Eat Shit, Bob" and "Kiss my ass, Bob."

Defendants' initial broadcast of the Defamatory Statements has subsequently been viewed over 6.1 million times on YouTube (an increase of 1.9 million since Plaintiffs filed their Complaint), over 1.5 million times on Facebook (with over 32,000 likes) (an increase of 300,000 and 3,000, respectively, since the Complaint was filed), and an unknown number of additional times by people who have viewed the broadcast on streaming applications. The number of people who have viewed the Defamatory Statements will only continue to rise throughout this litigation.

II.   **The "John Oliver Effect": Defendants' Audience Joins in the Assault on Mr. Murray and his Companies.**

Defendants have broadcasted the show "Last Week Tonight with John Oliver" since April 27, 2014. In that time, the show has developed a loyal fan base, averaging millions of viewers each week. Defendants regularly take advantage of that fact to advance their agendas.

As has been the subject of wide-spread reports, including by Time and Fortune magazines, Defendants incite viewers of Defendant Oliver's show to attack, harass, and injure the show's subjects.  Known as "The John Oliver Effect," Defendants are well aware of the injury the show's fans inflict upon Mr. Oliver's targets, and they encourage it.  As reported by Fortune magazine:

> With his signature humor, Oliver convinces his audience that they should care about these complex topics and often signs off with a call to action.  The result is what *Time* has called the "John Oliver Effect," in which the British comedian helps—in ways both big and small—to create very real change.  This level of influence is what landed Oliver, who in addition to the show's host is also an executive producer, on Fortune's 2015 40 Under 40 list.

Beth Kowltt, *The John Oliver Effect: Why the British Comedian's Impact is no Joke*, Fortune.com (Sept. 29, 2015).

Time magazine similarly recounted how Defendants incite vigilantism.  Time's article reported how Defendant Oliver called upon his viewers to inflict damage upon governmental property: "'seize your moment, my lovely trolls,' he said.  'Turn on caps lock, and fly, my pretties!'  He got his wish.  Following the show, a flood of new comments led to major glitches for the FCC website."  *See* Victor Luckerson, *How the 'John Oliver Effect' is Having Real-Life Impact*, Time Magazine (Jan. 20, 2015) (Updated July 10, 2015).

Other instances of the John Oliver Effect causing significant damage have been reported.  In 2015, Defendants aired a segment discussing alleged exploitation of chicken farmers by chicken production companies.  Defendant Oliver criticized members of the House Appropriations Committee, who declined to pass a bill that, in his view, would have protected the farmers.  Defendant Oliver then encouraged viewers to harass congresspersons by editing their Wikipedia pages to label them as "chicken f***ers."  According to one source, at least

5

thirty-six Wikipedia articles were vandalized. *See* https://blog.wikimedia.org/2015/05/27/dark-side-of-comedy/.

Plaintiffs have similarly experienced the John Oliver Effect, to disturbing and dangerous proportions. In the days following the June 18, 2017 broadcast of Last Week Tonight with John Oliver, in which the Defamatory Statements were first broadcast to millions of viewers, Murray Energy's website twice received over 30,000 spam messages within a 20-minute window in an effort to "crash" the site. *See Affidavit of John Klayko* (the "Klayko Aff.") ¶ 5. A third, potentially more damaging attack, received from multiple sources, forced Murray Energy to take its website down on the morning of June 20, 2017, to implement new, increased security measures. Threats of physical harm and property damage have only increased since the Complaint was filed. *Id.* ¶ 10.

Plaintiffs also have been continuously harassed by numerous telephone calls that have subjected Plaintiffs' employees to threats and vulgarities and tied up Plaintiffs' telephone lines, preventing timely communications with Plaintiffs' customers and vendors. Klayko Aff. ¶ 8; *Affidavit of Heather Santini* (the "Santini Aff.") ¶ 4. These attacks caught Plaintiffs' innocent employees in the crossfire—employees who, by any measure of descent humanity, should not be subject to the vulgarities asserted by Defendants' viewership. Some of the harassing calls incited by the Defamatory Statements can be summarized as follows:

- Multiple callers exclaiming "Tell Bob Murray to eat shit!" or "Eat shit, Bob!";

- One caller stating that "your owner is a pussy and he's fat!";

- Another caller asked an employee if she liked working for a company that was destroying the planet;

- One stated that "Murray Energy is a lying piece of shit";

- One person congratulated Mr. Murray on being probably one of the most heartless people alive to watch so many of his employees die;

6

- A group called on speaker phone demanding Plaintiffs' employee to "justify to the whole room why you like working at Murray Energy" and then demanded that she repeat her positive answer "to all the miners, that Bob Murray took all the black lung insurance from";

- One stated his desire to "tell Bob Murray to eat shit and kiss my ass!";

- One condemned an employee, explaining that "you should be ashamed of yourself for working for a company like Murray Energy"

- Multiple callers asked "Is Dr. Evil in?";

- One stated "you're a worthless piece of shit"

- Others demanded that Plaintiffs "stop with their bullshit lawsuits" or asked "Why are you suing John Oliver?"

- One threatened employees "to watch their back";

- One stated "hope your CEO goes to Hell";

- One explained "this is a squirrel, F@@@ you Bob, F@@@ you Bob!";

- Another called a receptionist "a F@@@ing Bitch," among other derogatory terms.

Santini Aff. ¶ 4.

If the foregoing were not enough, employees are also in fear from hearing that Mr. Murray's son, who is not a party to this action, received a phone call on his mobile phone from a caller that wished him death. Santini Aff. ¶ 7. These telephone calls represent a fraction of what Plaintiffs have endured since the initial broadcast, which only intensified after Plaintiffs commenced this action to vindicate the wrongs they have suffered, including demands to "Drop the lawsuit." *Id.* ¶ 5.

Plaintiffs' emails servers have also been subjected to malicious attacks and harassing communications since the June 18 broadcast of "Last Week Tonight with John Oliver," and increasingly following the commencement of this action. Klayko Aff. ¶¶ 5, 7. In addition to the attempts to crash Murray Energy's website described above and in the Complaint, Plaintiffs have

received numerous disparaging e-mails echoing Defendant Oliver's comments on the show.  The

following emails are examples of the John Oliver Effect:

| | |
|---|---|
| **From:** Chris McNair <mcnair.chris@gmail.com><br>**Date:** June 22, 2017 at 9:18:57 PM EDT<br>**To:** rmurray@coalsource.com<br>**Subject:** RE: Coal News Mag<br><br>Eat SH)T Bob! | **From:** kmart1131 <kmart1131@yahoo.com><br>**Date:** June 22, 2017 at 6:36:21 PM EDT<br>**To:** sales@coalsource.com<br>**Subject: EAT SHIT BOB!!!** |
| **From:** Mike Waite <waitemw@yahoo.com><br>**Date:** June 22, 2017 at 5:12:08 PM EDT<br>**To:** "sales@coalsource.com" <sales@coalsource.com><br>**Subject: EAT SHIT BOB!**<br>**Reply-To:** Mike Waite <waitemw@yahoo.com><br><br>You fucking slime ball! | **From:** Chris Ryan <Chris@Chris-Ryan.com><br>**Date:** June 22, 2017 at 7:44:55 PM EDT<br>**To:** media@coalsource.com<br>**Subject: Eat shit bob!** |
| **From:** Bruno Seabra <brunoseabra@gmail.com><br>**Date:** June 19, 2017 at 10:59:01 PM EDT<br>**To:** rmurray@coalsource.com<br>**Subject: EAT SHIT BOB!** | **From:** Christopher Campbell <campbell_chris@mc.com><br>**Date:** June 22, 2017 at 7:47:24 PM EDT<br>**To:** media@coalsource.com<br>**Subject: Eat Shit, Bob. You fat cunt.** |

*Id.* ¶ 7.

The John Oliver Effect is also pervasive on social media.  For example, Mr. Murray been

inundated with harassing messages on Murray Energy's Facebook website in the wake of the

June 18 broadcast.  Santini Aff. ¶ 8.  Among other comments, Facebook users have left messages

saying:

- "Criminal"

- "Clown"

- "Should be imprisoned"

- "Thief"

- "Liar"

- "This man should not be operating mines of any kind"

- "Scum"

- "He's murdering people"

- "Pig"

- "Greedy"

- "Avaricious"

- "Soul less"

- "Corporate hack"

- "A sleaze"

- "Clueless"

- "All Murray wants is money"

- "Rich greedy a**hole"

- "Despot"

- "Puts his Employees in direct danger"

- "Uses illegal mining practices"

- "Is responsible for coal miner's deaths!"

- "POS"

- "ordered ' Retreat Mining ' to extract the most profit from the Crandall mine against OSHA Regulations."

*Id.* The Facebook messages also referred to Murray Energy and stated:

- "Companies who don't give a plug nickel about the employees"

- "The Utah mine that that pulled down the mountain on top of the workers killing them and then 3 more trying to rescue them"

- "Is responsible for coal miner's deaths!"

9

*Id.* ¶ 9.

Comments posted on other social media such as YouTube and Twitter reflect a similar level of vitriol, include wishes of death to Mr. Murray. In some cases, the comments are eerily prescient regarding the John Oliver Effect, as in the case of YouTube commenters predicting that Murray Energy's website would crash as it did:



Hee Sing Sia 8 days ago
If bob really does sue John Oliver, they can kiss their servers goodbye as they will crash everyday
Reply 24



jasonlajoie 8 days ago
The Murry Energy Corp website is crashed now. Well done internet! I wanted to send an "Eat Shit Bob." email to them but apparently I'm too late.
Reply 39

Santini Aff. ¶ 10.

As these comments reflect, the John Oliver Effect on Plaintiffs goes far beyond incessant and demeaning communications that Plaintiffs and their employees have had to suffer through. Given the relentless attacks that Defendants have encouraged, including on Plaintiffs' website, telephones, and emails systems, and the attendant diversion of IT personnel to respond to these attacks, Plaintiffs have a grave concern that individuals might attempt to infiltrate or harm Murray Energy's electronic network of safety systems. Klayko Aff. ¶ 10. Any interruption to these networks is a risk to human life. *Id.* Murray Energy hosts sensitive computer networks responsible for monitoring all critical safety aspects relating to underground mine conditions. *Id.* These systems monitor, among other things, the quality and composition of breathable air,

seismic events, and all other critical aspects that ensure the complete safety of all underground personnel. *Id.* A security breach of this network literally is a threat to human life itself.[2]

Given the significant diversion of resources that Plaintiff has implemented to deal with this onslaught, Plaintiffs' business has suffered, and continues to irreparably suffer. Plaintiffs' entire telephone system had to be taken offline and upgraded. Klayko Aff. ¶ 8. Many of Plaintiffs' employees cannot perform their usual job functions because they are needed to manage this harassment. *Id.* ¶ 9. Plaintiffs are unable to fully and timely respond to customer inquiries and needs. *Id.* Technology personnel have diverted from attending their normal job functions to concentrate on the issues caused by Defendants. *Id.* Plaintiffs are simply unable to conduct their day-to-day business operations and communications with vendors, suppliers, customers, and others in the same fashion as they did before the Defamatory Statements were publicized.

Defendants' Defamatory Statements have also directly and negatively impacted Plaintiffs' business reputation amongst prospective employees. Santini Aff. ¶ 6. After the filing of the Complaint, when one prospective employee telephoned Murray Energy about being unable to view current job postings on the company's website, a company employee responded that the company website was temporarily down and explained the cause. *Id.* That individual responded that he did not want to work for a company under those circumstances. *Id.*

The John Oliver Effect is not limited to Plaintiffs. Defendants' fan base has attacked Plaintiffs' counsel's electronic media and sent emails such as the following:

---

[2]      This point is especially troublesome in light of the fact that Defendants' broadcast gave its viewers the false impression that Plaintiffs have little regard for the safety of the lives of their employees.

**From:** Sujan Vasavada [mailto:suj1981@gmail.com]
**Sent:** Thursday, June 22, 2017 11:01 AM
**To:** contact@wewillfightforu.com
**Subject:** Fuck Bob Murray and your frivolous lawsuit

Awww poor fat fuckin scumbag Bob Murray had his feelings hurt. He loves America (not sure how that advances a defamation claim). BTW- the fact that in your words the John Oliver segment "likely further reducing his already limited life expectancy due to his Idiopathic Pulmonary Fibrosis," is a wonderful thing. Your client is a scumbag and you are pathetic bottom feeders for filing such a bullshit lawsuit.

Fuck you and your bigoted worthless state. Enjoy the black lung and I can't wait to see your worthless residents lose their opioid treatment when they lose their Medicaid. These "white working class" assholes did it to themselves.

Disrespectfully yours!!!
SV

In sum, the damage caused by the Defamatory Statements goes far beyond what Plaintiffs understood even five days ago. If left unchecked, the John Oliver Effect will continue to irreparably harm Plaintiffs' business and reputations, and jeopardize the wellbeing of Plaintiffs, their employees, and family members.

**III.     Numerous Reports of this Lawsuit Contain Clips of the June 18 Broadcast.**

The John Oliver Effect on Plaintiffs and this lawsuit is being aggravated every day. Since the filing of the Complaint, numerous media outlets, including several under Defendant Time Warner's control, have aired reports of this lawsuit. These reports contain clips of the Defamatory Statements and, in some instances, access to the entire June 18 broadcast of "Last Week Tonight with John Oliver." These reports also comment on this litigation in a way that is damaging to Plaintiffs and likely to bias potential jurors. Media coverage of this lawsuit includes (but is not limited to) the following:

- CNNMoney.com (owned by Defendant Time Warner) posted an article on June 22, 2017 titled "John Oliver Sued by Coal CEO Claiming 'Character Assassination,' which discusses the lawsuit and includes a video re-broadcasting certain of the Defamatory Statements. *See* http://money.cnn.com/2017/06/22/media/john-oliver-coal-king-murray-lawsuit/index.html.

12

- Salon.com ran an article on June 22, 2017, titled "Power-mad Coal King Sues John Oliver for Defamation, as Promised," in which the author tells readers, among other things, that "[c]ritics, experts and miners alike have blamed Murray Energy for the collapse and what they saw was a flawed emergency response to it, citing possible safety violations." *See* http://www.salon.com/2017/06/22/john-oliver-last-week-tonight-coal-robert-murray-lawsuit/.

- The Washington Post ran an article on June 22, 2017, titled "John Oliver, a Giant Squirrel and a Defamation Lawsuit by a Coal Industry Titan," that includes a video of the Defamatory Statements. *See* https://www.washingtonpost.com/news/morning-mix/wp/2017/06/22/john-oliver-a-giant-squirrel-and-a-defamation-lawsuit-by-a-coal-industry-titan/?tid=ss_mail&utm_term=.157dc086d856.

- Slate.com ran an article on June 22, 2017, titled "A Coal Baron is Suing John Oliver for 'Character Assassination' over *Last Week Tonight*'s Talking Squirrel Segment," which article, among other things, mocks this lawsuit by contending that Plaintiffs might name the fictitious squirrel that appeared on the original broadcast as a potential defendant. *See* http://www.slate.com/blogs/browbeat/2017/06/22/coal_baron_robert_murray_is_suing_john_oliver_over_his_segment_featuring.html.

- The Daily Beast ran an article on June 22, 2017, titled "Republican Coal King Sues HBO over John Oliver's Show," in which it features a statement by an attorney describing this lawsuit as "frivolous and vexatious." *See* http://www.thedailybeast.com/coal-king-sues-hbo-over-john-olivers-show?source=email&via=desktop.

- CBS News ran an article on June 22, 2017, titled "Coal King Sues John Oliver over 'Last Week Tonight' Segment," which includes a 24-minute video of the entire June 18 broadcast of "Last Week Tonight." *See* http://www.cbsnews.com/news/coal-king-sues-john-oliver-over-last-week-tonight-segment/.

- Time.com (also owned by Defendant Time Warner) ran an article on June 23, 2017 titled "Coal Boss Robert Murray is suing John Oliver after being Mocked on *Last Week Tonight*," which includes a 24-minute video of the entire June 18 broadcast of "Last Week Tonight." *See* http://time.com/4829720/john-oliver-lawsuit-robert-murray-coal/.

- ABC World News Now aired a segment on June 23, 2017, in which it rebroadcast certain of the Defamatory Statements, discussed the merits of Plaintiffs' claims, and commented further on Mr. Murray and the topics of this lawsuit. *See* http://abcnews.go.com/WNN/video/john-oliver-sued-48231110.

13

## IV.    Defendants' Assault Is Jeopardizing Mr. Murray's Health.

As a result of the constant rebroadcasting of the Defamatory Statements and the hateful conduct described above, Mr. Murray has suffered and will continue to suffer irreparable injury to his health so long as he and his companies are under attack.  As explained in the Complaint, Mr. Murray suffers from Idiopathic Pulmonary Fibrosis, a progressive fatal disease requiring intense medical care, a potential lung transplant, and continuous oxygen.  *Affidavit of Robert E. Murray* (the "Murray Aff.") ¶¶ 2-3.  Even before the June 18 broadcast, Mr. Murray was told by his doctors that he was in ill health, which would that undoubtedly be made worse as a result of the stress induced by Defendants' conduct.  *Id.* ¶¶ 2- 3.

The additional severe distress due to the malicious and defamatory conduct of Defendants and the ensuing barrage from their viewers (a reasonable and foreseeable consequence of the John Oliver Effect) has caused Mr. Murray's emotional and physical health to significantly worsen.   Murray Aff. ¶¶ 4-5.  As a result of the broadcast and his need to respond to the continued and sustained harassment caused by re-broadcastings, Mr. Murray has increased trouble breathing.  *Id.* ¶ 7.  He continues to use an oxygen tank full-time and must now reduce meeting lengths to lie down and rest.  *Id.* ¶ 8.  Mr. Murray must maintain his portable oxygen system set at 6.5 liters per minute, higher than settings before the broadcasts.  *Id.* ¶ 7.  Even on his recent appearance on a Fox Business segment, he needed his oxygen close by, inhaling from the machine until shortly before airing.  *Id.*   These events, which continue to haunt Mr. Murray, have been so exhausting that he can barely walk by the end of the day.  Mr. Murray lives in fear for his physical safety, and has increased security presence as a result.  *Id.* ¶ 6.

## RELIEF REQUESTED

By this Motion, Plaintiffs respectfully request that the Court enter an order immediately restraining Defendants, during the pendency of this litigation, from (i) re-broadcasting the

Defamatory Statements that are the subject of Plaintiffs' Complaint, and (ii) publicly discussing the substance of this litigation.  This relief is necessary to prevent further irreparable harm to Plaintiffs and their employees as discussed above, including the erosion of Plaintiffs' business reputation with customers, suppliers, employees, prospective employees, vendors, and the public in general, and to preserve Plaintiffs' ability to obtain justice from a jury of impartial peers in this Court.

## ARGUMENT

I.     **Plaintiffs Are Entitled to a Temporary Restraining Order and Preliminary Injunction.**

Rule 65 of the West Virginia Rules of Civil Procedure governs the issuance of temporary restraining orders and injunctions.  *Camden-Clark Mem'l Hosp. Corp. v. Turner*, 575 S.E.2d 362, 367 (W. Va. 2002).  Determining whether to grant injunctive relief "calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case."  *Jefferson Cty. Bd. of Educ. v. Jefferson Cty. Educ. Ass'n*, 393 S.E.2d 653, 662 (W. Va. 1990).  In particular, the Court should consider "the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties."  *Id.*

In exercising its judicial discretion, this Court should consider the "flexible interplay" of four factors: (1) the likelihood of irreparable harm to Mr. Murray, Murray Energy, and his employees and family members without the injunction; (2) the likelihood of harm to Defendants with an injunction; (3) the likelihood that Plaintiffs will succeed on the merits; and (4) the public interest.  *Camden-Clark Mem'l Hosp.*, 575 S.E.2d at 366; *see also W. Va. Min. & Reclamation Ass'n v. Snyder*, 1991 WL 331482, at *5 (N.D.W. Va. Aug. 30, 1991) (explaining that court must first balance "the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction").

15

and irreparable injury, loss, and damage that this Motion seeks to prevent, Plaintiffs respectfully

request an expedited hearing on the Motion.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order granting the

Motion and such other relief as may be just and proper.


Dated: June 28, 2017

Respectfully submitted,


Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961
(304) 905-8628 (facsimile)

All four of these factors weigh in favor of granting injunctive relief so as to stem the tide of harassment and injury caused by Defendants' malicious conduct. Moreover, the law of West Virginia is clear that "if a decided imbalance of hardship appears in the plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim." *Snyder*, 1991 WL 331482, at \*5. Under the circumstances, and as discussed in more detail below, an injunction is necessary and appropriate.

A.  Plaintiffs' Reputations and Mr. Murray's Health are Being Irreparably Harmed, and Will Continue to be Damaged Without an Injunction.

"[I]rreparable harm is often suffered when 'the injury can[not] be adequately atoned for in money,' or when 'the district court cannot remedy [the injury] following a final determination on the merits.'" *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976)).

Damages to reputation and health are the quintessential forms of irreparable injury that justify injunctive relief, and Plaintiffs are suffering both. With respect to reputational damage, numerous courts have held that

> [e]vidence of potential damage to a business reputation is a sufficient basis to establish irreparable injury justifying the grant of preliminary injunctive relief. Damage to business reputation and good will can be difficult or impossible to quantify and demonstrates irreparable harm, as opposed to injury that can be compensated with damages.

*Jacon H. Rottkamp & Son v. Wulforts Farms*, 17 Misc. 3d 382, 388 (N.Y. Sup. Ct. 2007) (citations omitted); *see, e.g., Registercom v. Verio* 356 F.3d 393, 404 (2d Cir. 2004) ("In our view, the district court did not abuse its discretion in finding that, unless specific relief were granted, Verio's actions would cause Register irreparable harm through loss of reputation, good will, and business opportunities."); *Rodriguez v. National Freight*, 5 F. Supp. 3d 725, 730 (M.D. Pa. 2014) (granting preliminary injunction because "[g]rounds for irreparable injury include loss

of control of reputation"); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978) (granting preliminary injunction restraining defendant from circulating magazines containing plaintiff's likeness because unsanctioned use of his image would likely inflict irreparable damage upon plaintiff's reputation); *see also Celsis In Vitro v. CellzDirect*, 664 F.3d 922, 930 (Fed. Cir. 2012) (stating that "valid grounds for finding irreparable harm" include "damage to reputation"); *Mercy Health Servs. v. 1199 Health & Human Serv. Employees Union*, 888 F. Supp. 828 (W.D. Mich. 1995) (enjoining republication of commercials that were unfairly damaging to the reputation of a hospital chain).

For this reason, West Virginia courts have previously enjoined conduct, similar to the conduct here, that harms Plaintiffs' business reputation and terrorizes and intimidates Plaintiffs' employees and family members. *See Parker Paint & Wall Paper Co. v. Local Union No. 813*, 105 S.E. 911 (1921). In *Parker*, a West Virginia court enjoined defendant union members from picketing plaintiff's business because the effect was to tortiously discourage third parties from doing business with plaintiff and to encourage existing customers to breach their contracts. The boycotts were also likely to cause "physical fear" to plaintiff and its employees. *Id.* at 915.

Additionally, as the West Virginia Supreme Court of Appeals stated more than a century ago, "[a]ll injury to health is special and irreparable damages, which will justify the interference of equity." *Medford v. Levy*, 8 S.E. 302, 308 (1888). This commonsense principal has been repeated by courts in West Virginia and elsewhere for years. *See, e.g., In re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 70-71 (2003) (recognizing that "the exposure creating the need for [medical surveillance] was the very essence of irreparable harm" (citing *Barth v. Firestone Tire and Rubber Co.*, 661 F. Supp. 193, 203-05 (N.D. Cal. 1987))); *LaForest v. Former Clean Air Holding Co., Inc.*, 376 F.3d 48 (2d Cir. 2004) (holding that even a mere reduction in medical

17

coverage benefits established "irreparable injury" warranting injunctive relief); *Kekis v. Blue Cross & Blue Shield of Utica Watertown*, 815 F. Supp. 571 (N.D.N.Y. 1993) ("If Ms. Kekis proves that the absence of injunctive relief would deprive her of valuable medical treatment, then she has shown that she would suffer irreparable harm....[I]nasmuch as this deprivation would permanently affect her health (although the extent of this effect is unknown), it is not the type of deprivation that could be compensated with monetary relief in the future.").

And indeed, pulmonary fibrosis has been specifically recognized to be an ailment that can warrant injunctive relief, including under less aggravating circumstances than those found here. *See 2 Perlman Drive, LLC v. Stevens*, 2017 N.Y. Slip. Op. 50173(U), (N.Y. Civ. Ct. Feb. 9, 2017) (enjoining landlord from employment of chemical exterminators in apartment tenanted by sufferer from pulmonary fibrosis).

As noted in detail above, Defendants' conduct is harming Plaintiffs' reputation and business opportunities, causing Plaintiffs' employees and family members to suffer threatening and harassing confrontations with strangers, and is significantly and unnecessarily exacerbating Mr. Murray's health problems.  Prospective employees have declined to pursue employment because of the after effects of the June 18 broadcast.  Mr. Murray's son has received death threats.  Murray Energy's technology systems, which enable Murray Energy to effectively work with vendors and customers while also monitoring various aspects of underground mining operations that are critical to worker safety, are under attack.  The stress of all of this has understandably worsened Mr. Murray's already poor health condition.

Moreover, the continued publication of the Defamatory Statements will impair Plaintiffs' ability to seek redress in this Court.  Impaneling an impartial jury will become increasingly difficult, if not impossible, as more and more people are exposed to the Defamatory Statements

and develop prejudices against Plaintiffs similar to the prejudices reflected in the thousands of harassing telephone calls, e-mails, and social media posts described above.

The severity of the harm occasioned by Defendants' conduct cannot be understated, and will certainly worsen so long as new people are being exposed to Defendants' statements. This Court has the power to prevent this harm, and Plaintiffs submit that the circumstances are ripe for equitable intervention.

B.   Defendants Will Not Suffer Harm.

By sharp contrast to the harm Plaintiffs are suffering and will continue to suffer without an injunction, Defendants will suffer no harm from the relief requested by this Motion. Defendants have already aired their false statements regarding Mr. Murray and his companies; further republication of those statements could only be intended to harass and injure Plaintiffs further and incite others to do the same, a purpose that is deserving of no protection by this Court. *See, e.g.*, *Rodriguez*, 5 F. Supp. 3d at 730 ("Because his proposed communications are not intended for a proper purpose, prohibiting such communications will not significantly harm Plaintiff."); *Bingham v. Struve*, 591 N.Y. S.2d 156, 158-59 (N.Y. App. Div. 1992) (granting preliminary injunction against continued speech damaging to plaintiff's "reputation" in "all aspects of his personal and professional life," and rejecting defendant's "attempt to continue her offending communications 'as protected free speech'" because the First Amendment "'does not confer an absolute right to speak or publish, without responsibility, whatever one may choose'"); *see also San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230 (9th Cir. 1997) (upholding an injunction against labor union members' use of fraudulent statements on a banner used to boycott their employer; the banner conveyed a misleading and fraudulent impression to third parties and fraud is not entitled to protection under the First Amendment).

19

Additionally, Defendants will suffer no harm from a prohibition of public discussion of this litigation, because Defendant Oliver has already publicly announced that he will refrain from using his show to discuss this case. Although Defendant Oliver made this announcement during the June 25, 2017 episode of "Last Week Tonight with John Oliver," his agreement is inconsistent with his counsel's refusal to agree to a gag order previously. Thus Defendants admit they will incur no harm, but have not formally agreed to the relief requested herein.

C.     Plaintiffs Are Likely to Succeed on the Merits of their Claims.

Finally, although the Court need not reach this prong in light of the severity of the harm Plaintiffs are suffering, *see Snyder*, 1991 WL 331482, at *5, Plaintiffs are likely to succeed on the merits of the defamation, invasion of privacy, and intentional infliction of emotional distress claims against Defendants.

As set forth in the Complaint, Defendants have intentionally published false and outrageous statements about Mr. Murray and his companies. They have contended that Mr. Murray lied about the cause of a tragic mine collapse that took nine lives, and that Mr. Murray is "on the side of black lung." These statements and the other Defamatory Statements set forth in the Complaint maliciously cast Plaintiffs in a false light in front of the public, including the thousands of employees and business partners that they work with in West Virginia, and they have caused Mr. Murray significant emotional and physical distress.

Plaintiffs are confident that they will be able to convince an impartial jury of West Virginians of the obvious: Defendants must be held accountable for their extraordinary and illegal conduct. But given that Defendants control the airwaves that flood the homes of West Virginians and have no qualms with using those airwaves to malign Mr. Murray and his companies, ultimate vindication requires equitable intervention in the interim.

20

D.    Injunctive Relief is in the Public Interest.

Finally, enjoining further broadcast of Defendants' original broadcast is undoubtedly in the public's interest for several reasons.

First, the public has a strong interest in seeing that justice is served—an interest that would be undermined by Plaintiffs' inability to obtain a fair trial by a jury that has not been tainted by Defendants' pervasive libel. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991) ("Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.").

Second, the public has an interest in seeing that important topics are discussed truthfully and with civility.   Defendants' publication does neither.   And *re*publication of Defendants' defamatory comments will certainly add nothing to the debate. *See Rodriguez*, 5 F. Supp. 3d at 730-31 ("While the public also benefits from free and unfettered discourse, the minimal restriction on Plaintiff's proposed speech is justified by the circumstances of this case."); *Bingham*, N.Y.S.2d at 158 (rejecting defendant's "attempt to continue her offending communications 'as protected free speech'" because the First Amendment "'does not confer an absolute right to speak or publish, without responsibility, whatever one may choose'").

Defendants doubtless will resist an injunction using words such as "First Amendment" and "free speech."   But these rights do not give anyone the right to say anything, anywhere, to anyone.   Indeed, our Nation's founding founders and The Supreme Court of the United States have repeatedly noted that false and defamatory statements deserve no Constitutional protection:

> But there is no constitutional value in false statements of fact.   Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues. *New York Times Co. v.* Sullivan, 376 U.S., at 270.   They belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight

social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).

*Gertz v. Robert Welch Inc.*, 418 U.S. 323, 340 (1974). The Supreme Court more recently reiterated this in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990):

> First Amendment protection for defendants in defamation actions surely demonstrate the Court's recognition of the amendment's vital guarantee of free and uninhibited discussion of public issues. But there is also another side to the equation; we have regularly acknowledged the important social values which underlie the law of defamation, and recognized that society has a pervasive and strong interest in preventing and redressing attacks upon reputation.

497 U.S. at 22 (internal quotation marks and citation omitted). Granting an injunction in this case will buttress society's "pervasive and strong interest in preventing and redressing attacks upon reputation," and is in the public's interest.

**II.    Plaintiffs Are Entitled to a Gag Order.**

Plaintiffs are also entitled to a "gag order" prohibiting Defendants from discussing the substance of this litigation during the pendency of this action. "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile*, 501 U.S. at 1075. Accordingly, this Court has the responsibility of ensuring that media coverage does not affect the fairness of the proceeding. *See Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966) ("[T]he cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."). And here, as discussed above, the media coverage of this litigation has already been extensive.

An order enjoining the parties from publicly speaking about a lawsuit is appropriate if: (1) the activity restrained poses either a clear and present danger or a serious and imminent threat

to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *See Wood v. Georgia*, 370 U.S. 375, 383-85 (1962); *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 183-84 (1968); *Neb. Press Ass'n v. Stuart*, 427 U.S. 538, 563 (1976).   Moreover, a gag order is constitutionally permissible if there is a reasonable likelihood that the extrajudicial statements of the parties will be a prejudice to a fair trial. *In re Russell*, 726 F.2d 1007, 1010-11 (4th Cir. 1984) (citing cases); *see also Sheppard*, 384 U.S. at 360-63 (suggesting that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants).

Many jurisdictions have upheld gag orders. *See Levine v. U.S. Dist. Court for Cent. Dist.*, 764 F.2d 590, 595-96 (9th Cir. 1985) (citing cases).

Here, because the order requested does not restrict press coverage, but instead, affects only the statements the parties make to the media, it is narrowly tailored and is the least restrictive method available. *See Sheppard*, 384 U.S. at 361-63; *Neb. Press Ass'n*, 427 U.S. at 564 & n.8.  The Court should enter an order prohibiting the parties from discussing the substance of this case.

*[Remainder of Page Intentionally Blank]*

## CONCLUSION

For all these reasons, Plaintiffs respectfully request that this Court enter a temporary restraining order and preliminary injunction ordering Defendants to remove their broadcast from the internet and cease from rebroadcasting it in any way, cease from broadcasting any such attacks on Mr. Murray and his companies in the future, and cease from commenting on this case to the media until the conclusion of the litigation.  Due to the imminent and irreparable injury, loss, and damage that the Motion seeks to prevent, Plaintiffs respectfully request an expedited hearing on the Motion.

Dated: June 28, 2017

Respectfully submitted,

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961
(304) 905-8628 (facsimile)

24

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY,
THE MARION COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL COMPANY,
THE HARRISON COUNTY COAL COMPANY,
THE OHIO COUNTY COAL COMPANY,
MURRAY ENERGY CORPORATION, and
ROBERT E. MURRAY,

        Plaintiffs,

Civil Action No. 17-C-124
Judge Jeffrey Cramer

        v.

JOHN OLIVER, CHARLES WILSON,
PARTIALLY IMPORTANT PRODUCTIONS, LLC,
HOME BOX OFFICE, INC., TIME WARNER, INC.,
and DOES 1 through 10.

        Defendants.

## CERTIFICATE OF SERVICE

Service of the foregoing **PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND  PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was had upon the following by forwarding a true and complete copy thereof, via regular United States Mail and Federal Express, this 28th day of June, 2017, as follows:

Thomas G. Hentoff
THentoff@wc.com
Williams & Connolly LLP
725 Twelfth Street, N.W.,
Washington, D.C. 20005
**(Counsel for Mr. John Oliver, Mr. Charles Wilson**
**Home Box Office, Inc., Time Warner, Inc. and**
**Partially Important Productions, LLC)**

Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

THE MARSHALL COUNTY COAL COMPANY, *et al.*

    Plaintiffs,

v.

                                                    Civil Action No.:   17-C-124

JOHN OLIVER, *et al.*                            Judge:   Cramer

    Defendants.

## <u>AFFIDAVIT OF HEATHER SANTINI</u>

I, Heather Santini, being duly sworn, state as follows:

1.    I am over the age of 21.

2.    I am a receptionist at the Murray Energy Corporation ("Murray Energy") and have worked for Murray Energy since 2012. As part of my job, I am responsible for receiving in-bound telephone calls to Murray Energy.

3.    I am authorized to submit this Affidavit on behalf of Murray Energy. The facts attested to in this Affidavit are true and correct to the best of my knowledge, information, and belief. I make this Affidavit based on personal knowledge, information provided to me in company documents, my review of publicly available information, and communications with company personnel in the ordinary course of my duties. I offer this Affidavit in support of Murray Energy's Motion for a Preliminary Injunction.

4.    Since the June 18, 2017 airing of Defendants' episode of Last Week Tonight with John Oliver (the "Broadcast"), Murray Energy has been inundated with harassing and malicious telephone calls. In the matter of a few hours, Murray Energy received over 50 calls. For example, one caller wished death on Bob Murray. Other harassing statements included:

- Multiple callers exclaiming "Tell Bob Murray to eat shit!" or "Eat shit, Bob!";

- One caller stating that "your owner is a pussy and he's fat!";

- Another caller asked an employee if she liked working for a company that was destroying the planet;

- One stated that "Murray Energy is a lying piece of shit";

- One person congratulated Mr. Murray on being probably one of the most heartless people alive to watch so many of his employees die;

- A group called on speaker phone demanding Plaintiffs' employee to "justify to the whole room why you like working at Murray Energy" and then demanded that she repeat her positive answer "to all the miners, that Bob Murray took all the black lung insurance from.";

- One stated his desire to "tell Bob Murray to eat shit and kiss my ass!";

- One condemned an employee, explaining that "you should be ashamed of yourself for working for a company like Murray Energy"

- Multiple callers asked "Is Dr. Evil in?";

- One stated "you're a worthless piece of shit"

- Others demanded that Plaintiffs "stop with their bullshit lawsuits" or asked "Why are you suing John Oliver?"

- One threatened employees "to watch their back";

- One stated "hope your CEO goes to Hell";

- One explained "this is a squirrel, F@@@ you Bob, F@@@ you Bob!";

- Another called a receptionist "a F@@@ing Bitch," among other derogatory terms;

5.     These telephone calls are a representative sample of what Murray Energy has received since the initial Broadcast, and the attacks have intensified since Plaintiffs commenced the above-captioned lawsuit, including demands to "Drop the lawsuit."

6.     Additionally, after the Complaint was filed on June 21, 2017, one prospective employee telephoned Murray Energy about being unable to view current job postings on the

2

company's website.  I responded that the company website was temporarily down and explained the cause.  That individual responded that he did not want to work for a company under those circumstances.

7.    I was also frightened to hear that Mr. Murray's son received a death threat on his mobile telephone following the Broadcast.

8.    I have also reviewed Murray Energy's Facebook website.  Numerous harassing messages have been posted on Murray Energy's Facebook website since the Broadcast.  Among other comments, Facebook users have left messages saying, among other things regarding Mr. Murray:

- "Criminal"
- "Clown"
- "Should be imprisoned"
- "Thief"
- "Liar"
- "This man should not be operating mines of any kind"
- "Scum"
- "He's murdering people"
- "Pig"
- "Greedy"
- "Avaricious"
- "Soul less"
- "Corporate hack"
- "A sleaze"
- "Clueless"
- "All Murray wants is money"
- "Rich greedy a**hole"
- "Despot"
- "Puts his Employees in direct danger"
- "Uses illegal mining practices"
- "Is responsible for coal miner's deaths!"
- "POS"
- "ordered ' Retreat Mining ' to extract the most profit from the Crandall mine against OSHA Regulations."

9.    The Facebook messages also referred to Murray Energy and stated:

3

- "Companies who don't give a plug nickel about the employees"
- "The Utah mine that that pulled down the mountain on top of the workers killing them and then 3 more trying to rescue them"
- "Is responsible for coal miner's deaths!"

10.    Comments posted on other social media, such as YouTube and Twitter, reflect a similar level of vitriol, including wishes of death to Mr. Murray, and other threats and harassment, such as the following:



Hee Sing Si a6 days ago
If bob really does sue John Oliver, they can kiss their servers goodbye as they will crash everyday
Reply 24



jasonla1qioe5 days ago
The Murry Energy Corp website is crashed now. Well done internet! I wanted to send an "Eat Shit Bob." email to them but apparently I'm too late.
Reply 59

**AFFIANT FURTHER SAYETH NAUGHT.**

_____
HEATHER SANTINI

SWORN TO AND subscribed before me this 26th day of June , 2017.

_____
NOTARY PUBLIC

GARY M. BROADBENT
Notary Public, State of Ohio
My Commission Has No Expiration Date

4

## IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, *et al.*

     Plaintiffs,

v.

JOHN OLIVER, *et al.*

     Defendants.

Civil Action No.:   17-C-124

Judge:   Cramer

### AFFIDAVIT OF JOHN KLAYKO

I, John Klayko, being duly sworn, state as follows:

1.     I am over the age of 21.

2.     I am the Manager of Information Technology at the Murray Energy Corporation ("Murray Energy") and have worked for Murray Energy since 2001. As part of my job, I am responsible for monitoring, managing, and overseeing the pubic facing technology of Murray Energy. More specifically, I oversee Murray Energy's phone systems, email systems, and website.

3.     I am authorized to submit this Affidavit on behalf of Murray Energy. The facts attested to in this Affidavit are true and correct to the best of my knowledge, information, and belief. I make this Affidavit based on personal knowledge, information provided to me in company documents, and communications with company personnel in the ordinary course of my duties. I offer this Affidavit in support of Murray Energy's Motion for a Preliminary Injunction.

4.     Since the June 18, 2017 airing of Defendants' episode of Last Week Tonight with John Oliver (the "Broadcast"), Murray Energy has been inundated with harassing and malicious telephone calls, email messages, and website messages.

5.      For example, Murray Energy's website received over 33,000 submissions in a matter of minutes that read "Eat Shit Bob," a reference to a portion of the Broadcast. Consequently, the website had to be taken offline for a substantial period of time.

6.      Similarly, Murray Energy employees have received harassing email messages. For example, one Murray Energy executive received multiple email messages that said "Eat SH)T Bob!" Other Murray Energy employees received messages saying "Eat Shit Bob" and "You fucking slime ball!"

7.      The following emails are examples of the harassing e-mails that Murray Energy and its employees have received since the Broadcast:

| | |
|---|---|
| **From:** Chris McNair <mcnair.chris@gmail.com><br>**Date:** June 22, 2017 at 9:18:57 PM EDT<br>**To:** rmurray@coalsource.com<br>**Subject:** RE: Coal News Mag<br><br>Eat SH)T Bob! | **From:** kmart1131 <kmart1131@yahoo.com><br>**Date:** June 22, 2017 at 6:36:21 PM EDT<br>**To:** sales@coalsource.com<br>**Subject: EAT SHIT BOB!!!** |
| **From:** Mike Waite <waitemw@yahoo.com><br>**Date:** June 22, 2017 at 5:12:08 PM EDT<br>**To:** "sales@coalsource.com" <sales@coalsource.com><br>**Subject: EAT SHIT BOB!**<br>**Reply-To:** Mike Waite <waitemw@yahoo.com><br><br>You fucking slime ball! | **From:** Chris Ryan <Chris@Chris-Ryan.com><br>**Date:** June 22, 2017 at 7:44:55 PM EDT<br>**To:** media@coalsource.com<br>**Subject: Eat shit bob!** |
| **From:** Bruno Seabra <brunoseabra@gmail.com><br>**Date:** June 19, 2017 at 10:59:01 PM EDT<br>**To:** rmurray@coalsource.com<br>**Subject: EAT SHIT BOB!** | **From:** Christopher Campbell <campbell_chris@me.com><br>**Date:** June 22, 2017 at 7:47:24 PM EDT<br>**To:** media@coalsource.com<br>**Subject: Eat Shit, Bob. You fat cunt.** |

8.      In addition, as a result of the volume and nature of the harassing telephone calls that Murray Energy has received since the Broadcast, Murray Energy's entire telephone system had to be taken offline on June 23, 2017 to upgrade security.

2

9.      Murray Energy employees have been hindered in their job performance due to the substantial time they have been forced to devote to managing this harassment, including being unable to fully and timely responding to customer inquiries and needs. Technology personnel have also been diverted from attending their normal job functions to concentrate on the issues caused by this harassment.

10.     Given the relentless attacks that Defendants have encouraged, including on our website, telephones, and emails systems, and the attendant diversion of IT personnel to respond to these attacks, we are gravely concerned that individuals might attempt to infiltrate or harm our electronic network of safety systems, which would pose a risk to human life.  Murray Energy hosts sensitive computer networks responsible for monitoring all critical safety aspects relating to the underground mine conditions.  These systems monitor, among other things, the quality and composition of breathable air, seismic events, and all other critical aspects that ensure the complete safety of all underground personnel.

**AFFIANT FURTHER SAYETH NAUGHT.**

JOHN KLAYKO

SWORN TO AND subscribed before me this 26  day of ____June____, 2017.

NOTARY PUBLIC

GARY M. BROADBENT
Notary Public, State of Ohio
My Commission Has No Expiration Date

3

# IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, *et al.*

     Plaintiffs,

v.

JOHN OLIVER, *et al.*

     Defendants.

Civil Action No.:   17-C-124

Judge:   Cramer

## AFFIDAVIT OF ROBERT E. MURRAY

I, ROBERT E. MURRAY, being duly sworn, state as follows:

1.     I make this Affidavit based on personal knowledge and the facts attested to in this Affidavit are true and correct to the best of my knowledge, information, and belief.

2.     I am 77 years old.  I have been diagnosed with idiopathic pulmonary fibrosis, a chronic, progressive and ultimately fatal disease of the lungs which impairs my ability to oxygenate my bloodstream.  My doctors have told me that, as a result of this disease, my life expectancy is significantly reduced, to approximately two years, absent aggravating factors that could shorten it further.

3.     I rely on an oxygen tank to survive and my doctors have told me that I need a transplant to replace both of my lungs.  My doctors have also told me to reduce my stress, because significant stress could exacerbate my pulmonary fibrosis, further damage my heart and lungs, and further shorten my life.

4.     The John Oliver Show segment about me that aired on June 18, 2017 has resulted in one of the most stressful periods of my life, perhaps exceeded only by the tragedy of the collapse of the Crandall Canyon Mine in 2007.

5.    The things that were said about me and the way I was mocked and lied about in front of millions of people was a terrible thing that I would not wish on anyone.  To know that the world has been falsely sent the message that you are a villain and that you should be laughed and despised would be a hard thing for anyone.  And then to receive emails and phone calls filled with hate, even wishing death upon me, is even more difficult to bear, as it would be for anyone.

6.    Given that I was falsely portrayed to the world as a despicable man, and in light of all the hate that has been spewed at me since, I fear for my safety.  I have increased my personal security measures, but I do not feel that I can be made safe when I do not know who among the anonymous millions that have seen that show are the ones that wished me harm or may actually harm me.

7.    I have also had increased trouble breathing.  While I relied heavily on my oxygen tank before the show, this week I have had to increase the oxygen flow settings to 6.5 liters per minute, well above what was necessary for me to function previously.  Since the show, I have also had to use my oxygen tank nearly full-time, with only short breaks.  I recently appeared on Fox Business and had to keep my oxygen close, inhaling oxygen right up to the time of airing and then immediately after.

8.    I have also been unable to work at the same level I could before the show.  Unlike before, I now have had no choice but to cut meetings short so I can lie down and rest.

9.    This past week, when I arrived home from work, I could barely put one foot in front of the other.

**AFFIANT FURTHER SAYETH NAUGHT.**

Robert E. Murray

2

SWORN TO AND subscribed before me this 26th day of June, 2017.

PATSY L. JENKINS
Notary Public
State of Ohio
My Commission Expires August 24, 2019

NOTARY PUBLIC

3

FILED

GROVE, HOLMSTRAND & DELK, P.L.L.C. 2017 JUN 28  AM 9: 14

JOSEPH M. RUCKI

JEFFREY A. GROVE
jgrove@grovedelklaw.com
304.905.1961

June 28, 2017

**VIA HAND-DELIVERY**
Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

      Re:    The Marshall County Coal Company, et al v HBO, Inc., et al
            Civil Action No:  17-C-124 - C

Dear Mr. Rucki:

      Enclosed herewith for filing please find the original **PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** and **MEMORANDUM OF LAW INS UPPORT OF PLAINTIFFS' MOTION FOR A TERMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** in connection with the above-referenced matter.  Please know a complete copy was forwarded to counsel as indicated.

      Thank you for your attention to this matter.  Please call with any questions.

            GROVE, HOLMSTRAND & DELK, P.L.L.C.

      By:                                       
             Jeffrey A. Grove

JAG:slb
Encls.

cc w/encls:    Honorable Jeffrey Cramer
               Thomas G. Hentoff, Esq.

44 ½ 15ᵗʰ STREET | WHEELING, WEST VIRGINIA 26003 | FAX 304.905.8628

COPY

**SUMMONS**

CIRCUIT COURT OF MARSHALL COU

THE MARSHALL COUNTY COAL COMPANY
PLAINTIFF,

VS.                                      CIVIL A
                                         JUDGE:

JOHN OLIVER, ET AL
                DEFENDANT.

**To the above named Defendant:**

IN THE NAME OF THE STATE OF WEST VII

and required to serve upon **DAVID L. DELK, JR,** who

**WHEELING, WV 26003,** an answer including any re

the complaint filed against you in the above civil action, a true copy of which is herewith

delivered to you.  You are required to serve your answer within  20  days after service of

this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by

default will be taken against you for the relief demanded in the complaint and you will be

thereafter barred from asserting in another action any claim you may have which must be

asserted by counterclaim in the above style civil action.

Joseph Rucki
CLERK OF COURT

Dated: June 23, 2017

BY: _____ / _____
                                    DEPUTY CLERK

*Please Serve:*
*HOME BOX OFFICE INC*
*C/O THE CORPORATION TRUST COMPANY*
*CORPORATION TRUST CENTER*
*1209 ORANGE STREET*
*WILMINGTON, DE 19801*

d:\corel\boiler\civsum.wpd

---

U.S. Postal Service
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $_____
☐ Return Receipt (electronic)         $_____
☐ Certified Mail Restricted Delivery  $_____
☐ Adult Signature Required            $_____
☐ Adult Signature Restricted Delivery $_____

Postmark
Here

Mr. Charles Wilson
Senior News Producer
Last Week Tonight With John Oliver
110 Avenue of Americas
New York, NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

Mr. John Oliver
Last Week Tonight With John Oliver
110 Avenue of Americas
New York, NY 10036

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

CIRCUIT COURT, MARSHALL COUNTY
STATE OF WEST VIRGINIA
WEST VIRGINIA

# SUMMONS
## CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, ET AL
                    PLAINTIFF,

VS.                                 CIVIL ACTION NO.  17-C-124
                                    JUDGE:  JEFFREY D. CRAMER

JOHN OLIVER, ET AL
                    DEFENDANT.

**To the above named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and required to serve upon **DAVID L. DELK, JR**, whose address is **44 1/2 15TH STREET WHEELING, WV 26003**, an answer including any related counterclaim you may have to the complaint filed against you in the above civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer within $20$ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above style civil action.

                                    _____ Joseph Rucki _____
                                    CLERK OF COURT

Dated: June 23, 2017            BY _____

                                        DEPUTY CLERK

*Please Serve:*
*TIME WARNER INC*
*C/O THE CORPORATION TRUST COMPANY*
*CORPORATION TRUST CENTER*
*1209 ORANGE STREET*
*WILMINGTON, DE 19801*

d:\corel\boiler\civsum.wpd

# SUMMONS

## CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, ET AL
                    PLAINTIFF,
        VS.                          CIVIL ACTION NO.  17-C-124
                                     JUDGE:  JEFFREY D. CRAMER
JOHN OLIVER, ET AL
                    DEFENDANT.

**To the above named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned

and required to serve upon **DAVID L. DELK, JR**, whose address is **44 1/2 15TH STREET**

**WHEELING, WV 26003**, an answer including any related counterclaim you may have to

the complaint filed against you in the above civil action, a true copy of which is herewith

delivered to you.  You are required to serve your answer within  20  days after service of

this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by

default will be taken against you for the relief demanded in the complaint and you will be

thereafter barred from asserting in another action any claim you may have which must be

asserted by counterclaim in the above style civil action.

                                        Joseph Rucki
                                        CLERK OF COURT
Dated: June 23, 2017
                            BY:

                                        DEPUTY CLERK

*Please Serve:*
*PARTIALLY IMPORTANT PRODUCTIONS LLC*
*C/O PARACORP INCORPORATED*
*2140 S. DUPONT HIGHWAY*
*CAMDEN, DE 19934*

d:\corel\boiler\civsum.wpd

# SUMMONS

## CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, ET AL
           PLAINTIFF,

     VS.                     CIVIL ACTION NO. 17-C-124
                              JUDGE: JEFFREY D. CRAMER

JOHN OLIVER, ET AL
           DEFENDANT.

**To the above named Defendant:**

     IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned

and required to serve upon **DAVID L. DELK, JR**, whose address is **44 1/2 15TH STREET**

**WHEELING, WV 26003**, an answer including any related counterclaim you may have to

the complaint filed against you in the above civil action, a true copy of which is herewith

delivered to you. You are required to serve your answer within 20 days after service of

this summons upon you, exclusive of the day of service. If you fail to do so, judgment by

default will be taken against you for the relief demanded in the complaint and you will be

thereafter barred from asserting in another action any claim you may have which must be

asserted by counterclaim in the above style civil action.

                             _____ Joseph Rucki _____
                             CLERK OF COURT,

Dated: June 23, 2017

               BY
                             DEPUTY CLERK

*Please Serve:*
*MR. JOHN OLIVER*
*LAST WEEK TONIGHT WITH JOHN LOIVER*
*110 AVENUE OF AMERICAS*
*NEW YORK, NY 10036*

d:\corel\boiler\civsum.wpd



# SUMMONS
## CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

THE MARSHALL COUNTY COAL COMPANY, ET AL
          PLAINTIFF,
          VS.                    CIVIL ACTION NO. 17-C-124
                                 JUDGE: JEFFREY D. CRAMER
JOHN OLIVER, ET AL
          DEFENDANT.

**To the above named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned

and required to serve upon **DAVID L. DELK, JR**, whose address is **44 1/2 15TH STREET**

**WHEELING, WV 26003**, an answer including any related counterclaim you may have to

the complaint filed against you in the above civil action, a true copy of which is herewith

delivered to you. You are required to serve your answer within 20 days after service of

this summons upon you, exclusive of the day of service. If you fail to do so, judgment by

default will be taken against you for the relief demanded in the complaint and you will be

thereafter barred from asserting in another action any claim you may have which must be

asserted by counterclaim in the above style civil action.

                          Joseph Rucki
                          CLERK OF COURT

Dated: June 23, 2017      BY

                          DEPUTY CLERK

*Please Serve:*
*MR. CHARLES WILSON*
*SENIOR NEWS PRODUCER*
*LAST WEEK TONIGHT WITH JOHN OLIVER*
*110 AVENUE OF AMERICAS*
*NEW YORK, NY 10036*

d:\corel\boiler\civsum.wpd

*pd ch*
*$115.00*

# GROVE, HOLMSTRAND & DELK, P.L.L.C.

●━━━━━━━━━━━━━━━━━━━━━━━━━━━━━●

DAVID L. DELK, JR.
Ddelk@grovedelklaw.com
304.905.1961

June 22, 2017

Mr. Joseph Rucki, Clerk
Marshall County Circuit Courthouse
600 Seventh Street
Moundsville, WV 26041

      Re:    The Marshall County Coal Company, et al v HBO, Inc., et al
               Civil Action No:  17-C-124 - C

Dear Mr. Rucki:

      Enclosed herewith please find five (5) copies of the Civil Case Information
Statement with a time-stamped copy of the Complaint to be served on the defendants,
as directed, in connection with the above-referenced matter.  I am also enclosing my
firm's draft in the amount of $115.00 to cover said service on defendants.

      Thank you for your attention to this matter.  Please call with any questions.

                        GROVE, HOLMSTRAND & DELK, P.L.L.C.

                        By:                                    
                            David L. Delk, Jr.

DLD:slb
Encls.

44 ½ 15th STREET | WHEELING, WEST VIRGINIA 26003 | FAX 304.905.8628



**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

2017 JUN 21  PM 4: 22

THE MARSHALL COUNTY COAL COMPANY, THE
MARION COUNTY COAL COMPANY, THE
MONONGALIA COUNTY COAL COMPANY, THE
HARRISON COUNTY COAL COMPANY, THE OHIO
COUNTY COAL COMPANY, MURRAY ENERGY
CORPORATION, AND ROBERT E. MURRAY,

     **Plaintiffs,**

**v.**

                                          Civil Action No.: 17-C-124

                                          Judge: Cramer

JOHN OLIVER, CHARLES WILSON, PARTIALLY
IMPORTANT PRODUCTIONS, LLC, HOME BOX
OFFICE, INC., TIME WARNER, INC., and DOES 1
through 10.

     **Defendants.**

## COMPLAINT

     1.     On June 18, 2017, Defendants executed a meticulously planned attempt to

assassinate the character and reputation of Mr. Robert E. Murray and his companies, including

Murray Energy Corporation and those in West Virginia, on a world stage. They did so for their

personal financial gain by knowingly broadcasting false, injurious, and defamatory comments to

HBO's approximately 134 million paying subscribers, while also knowing that their malicious

broadcast would be repeated to countless more individuals through various outlets (including

other media owned by certain Defendants).

     2.     They did this to a man who needs a lung transplant, a man who does not expect to

live to see the end of this case. They attacked him in a forum in which he had no opportunity to

defend himself, and so he has brought this suit to try to set the record straight.



3.     This callous, vicious, and false attack upon Mr. Murray and his companies was Defendants' most recent attempt to advance their biases against the coal industry and their disdain for the coal-related policies of the Trump Administration.

4.     In carrying out their self-serving attack on Mr. Murray and his companies, however, Defendants ignored facts in their possession that directly contradict the false and defamatory statements about Mr. Murray and his companies that they improperly passed off as truths to the nation and throughout the world.

5.     Worse yet, Defendants employed techniques designed solely to harass and embarrass Plaintiffs, including Mr. Murray, a seventy-seven year-old citizen in ill health and dependent on an oxygen tank for survival, who, despite the foregoing, continuously devotes his life, including by working seven days each week, to save the jobs and better the lives of the thousands of coal miners that he employs in West Virginia and elsewhere.  Defendants childishly demeaned and disparaged Mr. Murray and his companies, made jokes about Mr. Murray's age, health, and appearance, made light of a tragic mining incident, broadcasted false statements, and incited television and internet viewers to do harm to Mr. Murray and his companies, all before a worldwide audience—including the thousands of people that work for and do business with Mr. Murray and his companies in West Virginia.  In fact, medical doctors have informed Mr. Murray that he should stop working because the stress is shortening his life.  Mr. Murray must, however, continue working because of all those individuals who rely on him.  But nothing has ever stressed him more than this vicious and untruthful attack.

6.     The Plaintiffs require intervention from this Court to prevent further injury at the hands of Defendants' harassment and blatant and purposeful disregard for the truth, the stress of

which has caused Mr. Murray significant emotional and physical distress and damage, and this fact is readily apparent on him. Mr. Murray depends on continuous oxygen supply.

## PARTIES

Mr. Murray and the Other Plaintiffs

7.      Mr. Murray is the Founder, Chairman, President, and Chief Executive Officer of Plaintiff Murray Energy Corporation. He also serves as the President, Chief Executive Officer, and sole Director of each of the other Plaintiffs. Mr. Murray is a resident of Ohio.

8.      In order to provide for his family, Mr. Murray began working as a coal miner at a very young age. He labored arduously underground for sixteen years of his life, and later used his life savings and mortgaged nearly everything he owned to purchase his first coal mine. Mr. Murray continued his work underground by visiting his miners virtually every month until July 22, 2016, when he was diagnosed with Idiopathic Pulmonary Fibrosis, a progressive fatal disease requiring intense medical care, a potential lung transplant, continuous oxygen, and culminating in a significantly reduced life expectancy from diagnosis.

9.      Over the last thirty years, Mr. Murray has built Murray Energy and its operating entities into the largest underground coal mining company in the United States and the largest coal miner in West Virginia. Along the way, he also built a strong reputation as one of the staunchest defenders and most ardent champions of the United States coal industry and America itself.

10.      As a coal miner himself for his entire life, Mr. Murray is and has been unwavering in his insistence upon safe working conditions and the pursuit of policies and practices that promote and reward safety above all else. Mr. Murray is listed by the Mine Safety

and Health Administration as the "Current Controller" for all of the mines owned by the

Plaintiffs, and, as such, the public equates the mining business of each Plaintiff with Mr. Murray.

11.     Plaintiff The Marshall County Coal Company owns and operates the Marshall

County Coal Mine, which is located in Marshall County, West Virginia.  The operation of that

coal mine in West Virginia is The Marshall County Coal Company's primary business.  The

Marshall County Coal Company is incorporated under the laws of Delaware.

12.     Plaintiff The Marion County Coal Company owns and operates the Marion

County Coal Mine, which is located in Marion County, West Virginia.  The operation of that

coal mine in West Virginia is The Marion County Coal Company's primary business.  The

Marion County Coal Company is incorporated under the laws of Delaware.

13.     Plaintiff The Monongalia County Coal Company owns and operates the

Monongalia County Coal Mine, which is located in Monongalia County, West Virginia.  The

operation of that coal mine in West Virginia is The Monongalia County Coal Company's

primary business.  The Monongalia County Coal Company is incorporated under the laws of

Delaware.

14.     Plaintiff The Harrison County Coal Company owns and operates the Harrison

County Coal Mine, which is located in Harrison County, West Virginia.  The operation of that

coal mine in West Virginia is The Harrison County Coal Company's primary business.  The

Harrison County Coal Company is incorporated under the laws of Delaware.

15.     Plaintiff The Ohio County Coal Company owns and operates the Ohio County

Coal Mine, which is located in Ohio County, West Virginia.  The operation of that coal mine in

West Virginia is The Ohio County Coal Company's primary business.  The Ohio County Coal

Company is incorporated under the laws of Ohio.

4

16.     Plaintiffs The Marshall County Coal Company, The Marion County Coal Company, The Monongalia County Coal Company, The Harrison County Coal Company, and The Ohio County Coal Company (the "Coal Company Plaintiffs") are owned by Plaintiff Murray Energy Corporation (the "Parent Company Plaintiff"). The Parent Company Plaintiff is a corporation incorporated under the laws of the State of Ohio. Its principal office (and the principal office of each of the Coal Company Plaintiffs) is located at 46226 National Road, St. Clairsville, Belmont County, Ohio 43950, seven miles west of Wheeling, West Virginia. The Coal Company Plaintiffs, along with their corporate affiliates, and the Parent Company Plaintiff, comprise an organization that is known as "Murray Energy."

17.     Mr. Murray's businesses employ over 5,400 people in three countries, and six states, including over 2,800 employees in the State of West Virginia. Studies show that, for every one coal mining job provided by Mr. Murray's businesses, up to eleven secondary jobs are provided in the communities where the mines are located, meaning that Murray Energy is responsible for the creation of up to 30,800 jobs in the State of West Virginia.

<u>Defendants</u>

18.     Defendants are persons and organizations fundamentally opposed to any revitalization of the coal industry, having described coal as "environmentally catastrophic." Defendant Home Box Office, Inc. is owned by Defendant Time Warner, Inc., which is widely reported as a top ten donor of Hillary Clinton, as tracked by the Center for Responsive Politics at OpenSecrets.org. As a presidential candidate, Mrs. Clinton's agenda was to "put a lotta coal miners and coal companies outta business."

19.     Defendants' broadcasts have vigorously supported and advanced Mrs. Clinton's agenda.

20.     When Defendants made Mr. Murray and the other Plaintiffs aware that they intended to advance their anti-coal agenda by, among other things, broadcasting injurious, false, and defamatory statements to millions of people on June 18, 2017, Mr. Murray and the other Plaintiffs, at Defendants' invitation (believed to have been extended under the guise of responsible and ethical journalism), transmitted—prior to the June 18, 2017 broadcast—information and facts directly contrary to the injurious, false, and defamatory statements that Defendants threatened to broadcast.

21.     But instead of reporting on the facts, including those facts which Defendants secured through their (what turned out to be) disingenuous outreach to Mr. Murray and his companies before the June 18, 2017 broadcast, Defendants ignored them and "doubled-down" on their character assassination of Mr. Murray and the business reputation of his companies, ending their recorded broadcast with the phrases "Eat Shit, Bob" and "Kiss my ass, Bob."

22.     Defendant Home Box Office, Inc. ("HBO") is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.  HBO is a pay-TV network.  On information and belief, hundreds of thousands of households in West Virginia are among HBO's 134 million subscribers.

23.     Defendant John Oliver is an individual who hosts, writes for, and is the executive producer of a show, "Last Week Tonight with John Oliver," that is broadcast weekly on HBO. On information and belief, Defendant Oliver is a foreign national residing in New York, New York.  On information and belief, together with Defendant Wilson, Defendant Partially Important Productions, and other persons and entities, Does 1-10, whose identities are presently unknown to Plaintiffs, Defendant Oliver wrote the script for the June 18, 2017 episode of Last Week Tonight.

6

24.     Defendant Charles Wilson is the Senior News Producer for Last Week Tonight with John Oliver.  On information and belief, Defendant Wilson is a resident of New York, New York.  On information and belief, together with Defendant Oliver, Defendant Partially Important Productions, and other persons and entities, Does 1-10, whose identities are presently unknown to Plaintiffs, Defendant Wilson wrote the script for the June 18, 2017 episode of Last Week Tonight.

25.     Defendant Partially Important Productions, LLC ("Defendant Partially Important") is the production company for HBO's program Last Week Tonight with John Oliver. On information and belief, Defendant Partially Important is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York.  On information and belief, together with Defendant Oliver, Defendant Wilson, and other persons and entities, Does 1-10, whose identities are presently unknown to Plaintiffs, Defendant Partially Important wrote the script for the June 18, 2017 episode of Last Week Tonight.

26.     Defendant Time Warner, Inc. ("Time Warner") is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.  Time Warner owns Defendant HBO.  Upon information and belief, Time Warner knew of the statements made by Defendants, was made aware of all facts prior to the broadcast that showed their falsity, and, as the owner of HBO, approved the decision to permit Defendants HBO, Partially Important, Wilson, and Oliver to make the known false statements in the broadcast.

27.     Other persons and entities, Does 1-10, whose identities are presently unknown to Plaintiffs, participated in the events alleged herein which give rise to the claims asserted by the Plaintiffs.

7

**VENUE**

28.     Venue lies in this Court pursuant to W. Va. Code § 56-1-1 subsections (1) and (2)

because the causes of action arose in this county and Defendant HBO does business in this

county.

**GENERAL ALLEGATIONS**

29.     On June 18, 2017, Defendant HBO initially broadcasted an episode of "Last

Week Tonight with John Oliver." Defendant Oliver hosted, wrote, and produced the show.

30.     Before the June 18, 2017 broadcast, Defendants made Mr. Murray and Murray

Energy aware (under the guise of responsible and ethical journalism) that they intended to

discuss in an upcoming broadcast "the decline of jobs in the coal industry, the political criticism

of President Obama's 'war on coal,' the recent regulatory rollback by the Trump administration,

and the prospect going forward of a revival of coal jobs." They specifically referenced

Plaintiffs' mining operations in West Virginia, stating they intended to "mention other pressures

on coal jobs outside of regulation—including … the competition that Appalachian coal has

faced."

31.     When Defendants contacted Murray Energy, Mr. Murray and his companies were

under the false impression that Defendants would use this supplied information to accurately and

responsibly broadcast the facts and circumstances regarding the topics of the upcoming

broadcast.

32.     Mr. Murray and the other Plaintiffs warned Defendants—prior to the June 18,

2017 broadcast—that their sources of information and the information itself were "outdated, and

were false and defamatory when they were made, and remain so. You recklessly rely

exclusively on previously discredited media reports." At Defendants' invitation, Plaintiffs

8

provided detailed information and facts directly contrary to the injurious, false, and defaming statements that Defendants threatened to broadcast. Plaintiffs demanded that Defendants "cease and desist from any effort to defame, harass, or otherwise injure Mr. Murray or Murray Energy."

33.    One subject that Defendants notified Mr. Murray and his companies that they intended to discuss was the collapse of and subsequent rescue efforts at the Crandall Canyon Mine, operated by Genwal Resources, Inc.

34.    To ensure accurate reporting, and given the sensitivity surrounding these tragic events, which resulted in the loss of nine lives and injuries to several others, Mr. Murray and Murray Energy provided summaries of and citations to reports evidencing that the mine collapse was in fact triggered by what is commonly understood as an earthquake. Among other things, Mr. Murray and Murray Energy provided Defendants with the following facts and information:

a.    When Mr. Murray first learned of the initial collapse, he was in Montana and rushed to the Mine, arriving within four hours of the accident.

b.    Mr. Murray then spent the next twenty-eight days at the Mine, directing rescue efforts, personally attending to the families tragically affected by the collapse, and directing the recovery efforts.

c.    Although Mr. Murray was understandably unable to satisfy all of the expectations of the public and the family members of the trapped miners, he and his team worked around the clock to try and rescue the miners, and showed honesty, sincerity, and compassion every day in his communications and dealings with the families and the public. Mr. Murray held frequent meetings, several times every day, and provided for every possible need for all members of the trapped miners' families.

     d.     Everyone tried their hardest to rescue the trapped miners.  Over $45 million and over four hundred people were committed to the rescue efforts because, as Mr. Murray then stated, "there is no price on a human life."

     e.     The Federal Mine Safety and Health Administration's report regarding the collapse (the "MSHA Report") contained multiple concessions that a sudden change in stresses due to a "slip along a joint" or "joint slip in the overburden," which is very similar to the United States Geological Survey's definition of an "earthquake" (i.e., "both sudden slip on a fault, and the resulting ground shaking and radiated seismic energy caused by the slip"), "could have been a factor in triggering the collapse" and was one of the "likely candidates" for triggering the collapse, but MSHA and its "experts" chose not to analyze the seismic data of the triggering event and instead focused on the secondary collapse, which was a disservice to the lost miners, their families and the truth.

     f.     Studies have shown that the Mine collapse was a seismic event originating in the Joe's Valley Fault Zone.  More specifically, these studies indicated that the triggering event for the seismic disturbance, which was not consistent with normal mining-induced seismicity resulting in the collapse, occurred on a subsidiary fault parallel to the Joe's Valley Fault.  This is a more technical manner of stating that the collapse was caused by what many would characterize as an earthquake.

     g.     When Mr. Murray arrived at the Mine, the University of Utah was broadcasting that an earthquake had occurred, with an epicenter 4.7 miles from the Crandall Canyon Mine.

     h.     The major Joe's Valley Fault was nearby the Mine.

10

i.      Mr. Murray and his companies referred Defendants to the following publicly available studies indicating that the collapse was initiated by a seismic event akin to an earthquake that originated in the Joe's Valley Fault Zone near the Mine: A. Kubacki, T., K. Koper, K.L. Pankow and M.K. McCarter (2014), Changes in mining induced seismicity before and after the 2007 Crandall Canyon Mine Collapse, *J. Geophys. Res.*, doi: 10.1002/2014JB011037 (stating that "Lineations apparent in the newly detected events have strikes similar to those of known vertical joints in the mine region, which may have played a role in the collapse" and "[a]t Crandall Canyon, however, there is a notable spatial gap in seismicity between the western event clusters and the seismicity to the east.").

ii.     Appendix S to the MSHA Report, titled "Back-Analysis of the Crandall Canyon Mine Using the LaModel Program," Keith A. Heasley, Ph.D., P.E. West Virginia University (stating (i) "[t]his [particular] analysis indicates that a sudden change in stresses due to slip along a joint in the roof certainly could have been a factor in triggering the collapse seen on August 6th"; (ii) the USGS defines an "earthquake" as "both sudden slip on a fault, and the resulting ground shaking and radiated seismic energy caused by the slip"; and (iii) "[f]rom the modeling, it was not clear exactly what triggered the August collapse. . . . Likely candidates include: . . . a joint slip in the overburden....."

iii.    "Seismological Report on the 6 Aug 2007 Crandall Canyon Mine Collapse in Utah," University of Utah Dept. of Geology and Geophysics (relied upon by MSHA) (stating (i) this report was relied on by the Federal Mine Safety and Health Administration, but they said it was not determinative; (ii) in a discussion of the source

11

mechanism, "the first motion data alone do not provide definitive results because normal-faulting mechanisms can also be fit to the data"; and (iii) concluding that "*most* [but not all] of the seismic wave energy in this event was generated by the mine collapse and not by a naturally occurring earthquake."

iv.     The University of Utah also relocated the epicenter of the initial seismic event to the western edge of the mine, close to the Joe's Valley Fault Zone.

35.     Mr. Murray and his companies warned Defendants to cease and desist from a broadcast of defamatory comments or any misguided attempt at humor regarding the tragic mine collapse and loss of life, which Plaintiffs believed would be cruel and heartless.  Intentionally and in obvious retaliation for this humanitarian request, Defendant Oliver boldly announced "[a]s we have been explicitly told to cease and desist, let us do neither of those things, and let's talk about Bob Murray."

36.     Plaintiffs also warned Defendants that broadcast of the republication of the previously published malicious false statements upon which Defendants relied, "will severely harm the reputation of Mr. Murray and Murray Energy, which is obvious defamation and cast them in a false light before the public."  Plaintiffs demanded a second time that Defendants "cease and desist from any effort to defame, harass, or otherwise injure Mr. Murray or Murray Energy."

37.     In the ensuing broadcast, Defendants deliberately omitted the facts Plaintiffs provided regarding the Crandall Canyon Mine incident.  There was no mention of the efforts Mr. Murray personally made to save the trapped miners.  Defendant Oliver did not tell his audience that Mr. Murray arrived at the Crandall Canyon Mine in Utah within four hours of the collapse. Nor did Defendant Oliver say anything about the twenty-eight straight days Mr. Murray then

spent on that mountain overseeing the massive rescue efforts, and administering to the families. Nor did he mention that Mr. Murray personally led the rescue efforts when rescue workers were injured and killed in a subsequent event ten days after the initial seismic event, in fact pulling rescue workers from the debris and attending to their injuries with his own hands and administering to them.

38.     Instead, presumably to boost ratings, line their pockets with profits, and advance the show's anti-coal agenda, Defendant Oliver intentionally, falsely, and outrageously conveyed that Mr. Murray has no evidence to support his statements that an earthquake caused the tragedy that took the lives of Murray Energy miners during the course of their work for the organization.

39.     Rather than fairly characterizing the evidence that he had in his possession on the subject, Defendant Oliver instead quoted an out-of-context snippet from a single report stating that there was "no evidence that a naturally occurring earthquake caused the collapse." Because Defendant Oliver omitted any mention of the other reports he was aware of that evidenced that an earthquake caused the collapse, as Mr. Murray correctly stated following the collapse, Defendant Oliver's presentation intentionally and falsely implied that there is no such evidence.

40.     In fact, however, even the report Defendant Oliver selectively referenced out of context itself (i.e., the MSHA report) contains evidence—as Plaintiffs pointed out prior to the June 18, 2017 broadcast—that an earthquake or earthquake-like event triggered the Mine collapse. Moreover, Defendant Oliver quoted from the sweeping executive summary of the MSHA report, which obviously and grossly overstated the actual conclusions contained in the MSHA report, which Defendants easily would have seen upon a cursory review of the actual MSHA report. But again, Defendants obviously were not interested in the truth, as they

intentionally ignored the facts pointed out in advance by Plaintiffs and did not conduct a reasonable inquiry prior to that or thereafter.

41.     Worse still, as discussed, Defendant Oliver's Senior News Producer, Defendant Wilson, obtained from Plaintiffs detailed information evidencing that an earthquake or earthquake-like event did trigger and cause the Crandall Canyon Mine collapse.  Defendants intentionally and with malice disregarded this information and ignored the parts of the MSHA report that undermined and cast doubt upon Mr. Oliver's statements in an effort to further damage Mr. Murray's reputation.  They also did this despite knowing that determinations of causation are vastly complex and can take years before a reliable conclusion can be reached.

42.     Defendants also aired a clip of congressional testimony of a relative of a former employee of Murray Energy that appeared to be dissatisfied with Mr. Murray's handling of the Crandall Canyon Mine collapse, when upon information and belief the statements of that employee were not his own, but were instead scripted by adverse counsel in a lawsuit against Murray Energy and given to the employee to further the agenda of such counsel and their clients.

43.     Then, Defendant Oliver reinforced the impression he gave his audience (that Mr. Murray lied about the cause of the mine collapse and had no evidence to support his position) with other thinly veiled implications that Mr. Murray is a liar in general.

44.     Specifically, in reference to Mr. Murray's denial of an absurd story that Mr. Murray claimed a squirrel told him he should operate his own mines, Defendant Oliver stated "You know what, I actually believe Murray on that one" and "Even by your standard, that would be a pretty ridiculous thing to say."  This implied that Mr. Murray lied about other, more important matters, such as the cause of the mine collapse, and that he treated the affected families with "honesty, sincerity and compassion."

14

45.     As if mocking the tragic mine collapse that took the lives of six miners and three rescuers and insinuating that Mr. Murray was a liar were not sufficient, Defendants also falsely insinuated that Plaintiffs and Mr. Murray disregarded the well-being of their employees.

46.     For example, Defendant Oliver stated during the broadcast that Mr. Murray and Murray Energy "appear to be on the same side as black lung" and that their position regarding a coal dust regulation was the equivalent of rooting for bees to kill a child.

47.     Defendants' characterization of Mr. Murray and Murray Energy as villainous, however, is itself vile and baseless.  Substantial evidence establishes that the regulation at issue has no health benefits.  Murray Energy relied on highly credible third party expert review of the regulations for the basis of its litigation.

48.     And with the statement that "Murray…illustrates the divide that can exist between a coal company's interests and those of its workers," particularly in the highly slanted context of the overall broadcast, Defendants falsely imply that Murray Energy sacrifices safety for profits.  Defendants create this false impression by willfully avoiding facts demonstrating Murray Energy's true safety record.

49.     Defendants also falsely broadcasted that Mr. Murray and the other Plaintiffs implemented bonus policies that sacrificed the health and safety of their employees.  Never did Defendants broadcast that these bonus programs were at all times predicated on safety compliance *and* performance measures.  Defendants omitted that the very title of the bonus program was the "*Safety* and Production Bonus Plan."  Defendants failed to state that employees found violating safety standards would face automatic disqualification from receiving bonuses under the program.  Defendants knew these facts before the broadcast aired, and, in spite of them, broadcasted that this bonus program sacrificed safety and health standards.

50.     Defendant Oliver also failed to mention, despite having the information, that Mr. Murray has pioneered Emergency Response and Fire Suppression Training in the coal industry. Nor did Defendant Oliver mention the facts in his possession that Mr. Murray has fought for retiree medical and pension benefits for coal miners that never even worked in his company.

51.     Instead, Defendants continued their ruthless character assassination and attack on Plaintiffs' business reputations by describing Mr. Murray as someone who "looks like a geriatric Dr. Evil" and arranging for a staff member to dress up in a squirrel costume and deliver the message "Eat Shit, Bob!" to Mr. Murray.

52.     If that were not enough, after the live taping, Defendant Oliver exclaimed to the audience that having someone in a squirrel costume tell Mr. Murray to "Eat Shit" was a "dream come true."

53.     Even worse, toward the end of the broadcast, Defendant Oliver confirmed that Defendants intentionally expanded their attack against Mr. Murray and the Plaintiffs as retaliation for Plaintiffs' good faith efforts to ensure the accuracy of the broadcast.  Defendant Oliver stated "Bob Murray, I didn't really plan for so much of this piece to be about you, but you kind of forced my hand on that one."

54.     Unfortunately, with their false and malicious presentation Defendants succeeded in villainizing Plaintiffs and inciting injury to Plaintiffs.  Following Defendants' lead, for several days after the June 18, 2017 broadcast, Murray Energy's website was hacked and inundated with the message incited by Defendants: "Eat Shit Bob."  Not only has the broadcast of these false statements caused injury to Plaintiffs reputation and property (through the website inundation), but these false and disparaging statements have interfered with and harmed and will continue to interfere with and harm Plaintiffs' relationships with their employees, their vendors, and their

16

customers.  Indeed, Plaintiffs have already received numerous harassing telephone calls echoing Defendants' false and defamatory statements.

55.     Since the initial broadcast by HBO on June 18, 2017, which was viewed by at least 2.5 million people, as of the date of this Complaint, the broadcast has been viewed over 4.2 million times on YouTube, over 1.2 million times on Facebook (with over 29,000 likes), and an unknown number of additional times by people who have viewed the broadcast on streaming applications such as HBO Go and/or other rebroadcasts.  The number of people that view Defendants' false and malicious broadcast grows every day.

56.     The above statements by Defendants are defamatory (the "Defamatory Statements") and reflect discredit upon the methods by which Plaintiffs do business.

57.     On information and belief, all Defendants acted jointly in writing and producing the June 18, 2017 episode of Last Week Tonight with John Oliver, as well as the episodes referenced above regarding Hillary Clinton.  On information and belief, all Defendants received the information provided through the correspondence from Murray Energy's in-house counsel, which is referenced above.  On information and belief, all Defendants shared the same reaction to the correspondence from Murray Energy's in-house counsel and acted with the same motives and intent with respect to the June 18, 2017 episode of Last Week Tonight with John Oliver.

## COUNT I
## DEFAMATION

58.     Plaintiffs restate and reallege all of the other paragraphs of this Complaint as if fully set forth herein.

59.     Upon information and belief, Defendants caused the Defamatory Statements to be published with knowledge of the falsity of those statements or with reckless disregard as to the falsity of those statements.

17

60.     The Defamatory Statements are defamatory *per se* in that, on their face, they reflect upon Plaintiffs' reputation and character in a manner that: (1) injured Plaintiffs' reputation and subject Plaintiffs to public hatred, ridicule, shame, or disgrace; and (2) adversely affected Plaintiffs' trades or businesses.  In the alternative, the Defamatory Statements are defamatory *per quod* in that they are capable of being interpreted as reflecting upon Plaintiffs' reputation or character in a manner that: (1) injured Plaintiffs' reputation or expose them to public hatred, ridicule, shame, or disgrace; and (2) adversely affected Plaintiffs' trades or businesses.

61.     The Defamatory Statements were published and continue to be published with malice and without any lawful privilege or basis.

62.     Publication of the Defamatory Statements will cause Plaintiffs to encounter more difficulty in securing performance surety bonds from lenders to support their businesses and Plaintiffs may have to collateralize them at higher levels, and publication of the Defamatory Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such lenders.

63.     Publication of the Defamatory Statements will cause lenders to be less willing to engage in financing transactions with Plaintiffs, thereby preventing them from gaining access to capital needed to operate their businesses or making it more difficult and expensive for them to obtain such capital, and publication of the Defamatory Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such lenders.

64.     Publication of the Defamatory Statements will cause Plaintiffs to encounter difficulty in having effective discussions with public officials, including regulatory agencies, regarding matters of concern to Plaintiffs' businesses, and publication of the Defamatory

18

Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such public officials and agencies.

65.     Publication of the Defamatory Statements will cause Plaintiffs to suffer a loss of business opportunities and loss of potential or existing customers for their businesses, and publication of the Defamatory Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such potential and existing customers.

66.     Publication of the Defamatory Statements will cause Plaintiffs to suffer a loss of business opportunities and loss of potential or existing vendors, and publication of the Defamatory Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such potential and existing vendors.

67.     Publication of the Defamatory Statements will cause Plaintiffs to suffer a loss of business opportunities by making it more difficult to attract talented employees, and publication of the Defamatory Statements already has caused Plaintiffs harm in this regard by damaging their reputations with such potential employees.

68.     Publication of the Defamatory Statements has caused and will continue to cause damage to Plaintiffs' reputation, good will, and good standing in their communities and industry.

## COUNT II
## FALSE LIGHT INVASION OF PRIVACY

69.     Plaintiffs restate and reallege all of the other paragraphs of this Complaint as if fully set forth herein.

70.     The Defamatory Statements constitute false light invasion of privacy in that the Defamatory Statements have subjected Plaintiffs to unreasonable and highly objectionable publicity by attributing to them characteristics, conduct, or beliefs that are false, thereby placing them in a false light before the public.

19

71.     The false light in which Plaintiffs have been placed due to publication of the Defamatory Statements would be highly offensive to a reasonable person.

72.     Defendants had knowledge of the falsity of the Defamatory Statements or acted in reckless disregard as to the falsity of the Defamatory Statements and the false light in which Plaintiffs would be placed.

73.     Publication of the Defamatory Statements has caused and will continue to cause Plaintiffs and members of Mr. Murray's family to suffer great mental anguish and emotional distress.

74.     Publication of the Defamatory Statements will cause Plaintiffs to encounter more difficulty in securing performance surety bonds from lenders to support their businesses and Plaintiffs may have to collateralize them at higher levels.

75.     Publication of the Defamatory Statements will cause lenders to be less willing to engage in financing transactions with Plaintiffs, thereby preventing them from gaining access to capital needed to operate their businesses or making it more difficult and expensive for them to obtain such capital.

76.     Publication of the Defamatory Statements will cause Plaintiffs to encounter difficulty in having effective discussions with public officials, including regulatory agencies, regarding matters of concern to Plaintiffs' businesses.

77.     Publication of the Defamatory Statements will cause Plaintiffs to suffer a loss of business opportunities and loss of potential or existing customers for their businesses.

78.     Publication of the Defamatory Statements will cause Plaintiffs to suffer a loss of business opportunities and loss of potential or existing vendors.

79.     Publication of the Defamatory Statements has caused and will continue to cause damage to Plaintiffs' reputation and good standing in their community and industry.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.     Plaintiffs restate and reallege all of the other paragraphs of this Complaint as if fully set forth herein.

81.     Defendants' conduct in publishing the Defamatory Statements to millions of people worldwide and thereby viciously, falsely, and purposefully attacking Mr. Murray, his appearance, his companies, and his life-long dedication to the coal industry was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

82.     Defendants' conduct has caused severe emotional distress and physical damage to Mr. Murray.

83.     Defendants intentionally inflicted emotional distress upon Mr. Murray, or acted recklessly when it was certain or substantially certain that emotional distress and physical damage would result from their outrageous conduct.

84.     Defendants have broadcast the show "Last Week Tonight with John Oliver" since April 27, 2014, and in that time the show has developed a loyal fan base, averaging millions of viewers each week.

85.     In the past, upon information and belief, fans of the show have acted upon the biased and inflammatory comments made by Defendants to attack, harass, and injure subjects of the show.

86.     Indeed, in the days following the June 18, 2017, episode, on two separate occasions, Murray Energy's website received over 30,000 spam messages within a 20-minute window in an effort to "crash" the site. A third, potentially more damaging attack, received from

multiple sources, forced Murray Energy to take its website down on the morning of June 20, 2017, to implement new, increased security measures.

87.     Additionally, as discussed above, Murray Energy has received numerous harassing telephone calls since Defendants aired their outrageous broadcast, including from callers whose only message was the one they heard Defendants repeatedly utter on June 18, 2017: "Eat Shit, Bob."

88.     Since the date of the broadcast, and due to the stress and physical damage caused by the malicious and defamatory conduct of Defendants, and resulting misconduct of others incited by Defendants' conduct, Mr. Murray's health has significantly worsened, likely further reducing his already limited life expectancy due to his Idiopathic Pulmonary Fibrosis.

89.     No reasonable person could be expected to endure the emotional distress and physical damage that Mr. Murray has suffered as a result of Defendants' conduct.

**WHEREFORE,** Plaintiffs respectfully request, as to all Counts:

1.     Judgment for general damages in favor of Plaintiffs and against
       Defendants in an amount in to be determined at trial;

2.     Judgment for special damages in favor of Plaintiffs and against
       Defendants in an amount to be determined at trial;

3.     Judgment for punitive damages in favor of Plaintiffs and against
       Defendants in an amount to be determined at trial;

4.     An award to Plaintiffs of attorneys' fees and costs of suit;

5.      A permanent injunction prohibiting rebroadcast of the Defamatory

Statements and requiring the removal of the Defamatory Statements from

public access; and

6.      Such other and further relief as the Court deems just and proper.


*[Remainder of Page Intentionally Blank]*

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS ACTION**.

Dated: June 21, 2017

Respectfully submitted,

_____
Of Counsel for Plaintiff

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961
(304) 905-8628 (facsimile)

CIVIL CASE INFORMATION STATEMENT   *pd ck*

*$200.00*

CIVIL CASES
2017 JUN 21 PM 4: 22

In the Circuit Court of Marshall County, West Virginia

---

## I.   CASE STYLE:

Plaintiff(s)

Case # *17-C-124*
Judge *Cramer*

**THE MARSHALL COUNTY COAL COMPANY**
**THE MARION COUNTY COAL COMPANY,**
**THE MONONGALIA COUNTY COAL COMPANY,**
**THE HARRISON COUNTY COAL COMPANY,**
**THE OHIO COUNTY COAL COMPANY,**
**and MURRAY ENERGY CORPORATION,**

vs.

| Defendant(s) | Days to Answer | Type of Service |
|---|---|---|
| **JOHN OLIVER,** | | **NO SERVICE AT THIS TIME** |
| **CHARLES WILSON,** | | **NO SERVICE AT THIS TIME** |
| **PARTIALLY IMPORTANT PRODUCTIONS, LLC** | | **NO SERVICE AT THIS TIME** |
| **HOME BOX OFFICE, INC.,** | | **NO SERVICE AT THIS TIME** |
| **TIME WARNER, INC., and** | | **NO SERVICE AT THIS TIME** |
| **DOES 1 through 10.** | | **NO SERVICE AT THIS TIME** |

*Original and 5 copies of Complaint furnished herewith.*

| PLAINTIFF: The Marshall County Coal Co., et al<br>DEFENDANT: John Oliver, et al | CASE NUMBER: |
|---|---|

## II.   TYPE OF CASE:

| TORTS | OTHER  CIVIL | |
|---|---|---|
| __ Asbestos | __ Adoption | __ Appeal from Magistrate Court |
| __ Professional Malpractice | __ Contract | __ Petition for Modification of Magistrate Sentence |
| ✓ Personal Injury | Real Property | Miscellaneous |
| __ Product Liability | Mental Health | Other |
| __ Other Tort | __ Appeal of Administrative Agency | |

**III.  JURY DEMAND:** ___X__ Yes _____ No

CASE WILL BE READY FOR TRIAL BY *(MONTH/YEAR)*: _12_ / _2018_

**IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?** ____ YES __X__ NO
**IF YES, PLEASE SPECIFY:**

__ Wheelchair accessible hearing room and other facilities.
__ Interpreter or other auxiliary aid for the hearing impaired.
__ Reader or other auxiliary aid for the visually impaired.
__ Spokesperson or other auxiliary aid for the speech impaired.
__ Other: _____

Attorney Name: _____David L. Delk, Jr._____   Representing:

Firm Name: _Grove, Holmstrand & Delk, PLLC_   X Plaintiff __Defendants

Address: ____44 ½ 15ᵗʰ Street____
____Wheeling, WV 26003____

Telephone: ____(304) 905-1961____

Dated: _____June 21, 2017_____

_____
*Signature*