**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY,  MURRAY ENERGY CORPORATION,  and ROBERT E. MURRAY, | Civil Action No.: 5:17-CV-99

Judge John Preston Bailey |
| **Plaintiffs,** | |
| v. | CIVIL ACTION NO. 17-C-124 |
| JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER, INC., and DOES 1 through 10, | Judge Cramer
(Marshall County Circuit Court) |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND**

Plaintiffs respectfully submit this memorandum of law in support of their motion to remand.

**INTRODUCTION**

The Defendants' purported basis for removal of this defamation action, that the four Plaintiffs incorporated in Delaware "were added to the Complaint as plaintiffs in a transparent attempt to defeat this Court's exercise of its jurisdiction,"[1] is not only provably false, it is obviously false.  As Defendants are well aware, those exact same four plaintiffs sued just two months ago on the very same theory of defamation – that defamation of their President, CEO and sole Director, Robert E. Murray, likewise defames them – in an action where complete diversity existed on the face of the complaint.  That case was then removed, without objection, and is currently pending

---

[1] Notice of Removal [Doc. No. 1] at 7.

1

before this Court.  *See The Marshall County Coal Co., et. al, v. The New York Times Co.*, 5:17-cv-79 (N.D. W. Va.) (filed May 3, 2017).  Those same Plaintiffs sued in both cases – one properly removable, one not – because defamation regarding the business practices of their founder and leader also defames them, pure and simple.

What is more, the legal proposition that communications about the officer of a company can defame the corporation if they reflect discredit upon it, is not some attempt to creatively extend the outer reaches of liability.  To the contrary, it is a fundamental tenet long ingrained in the law of defamation.  *See, e.g.*, Restatement (Second) of Torts § 561 Comment on Clause (a) (Am. Law Inst. 1977) ("communications defamatory of its officers, agents or stockholders" also defame the corporation if "they also reflect discredit upon the method by which the corporation conducts its business.").  Indeed, that principle, which renders all the corporate Plaintiffs proper parties, is not only well-established, it is indisputable.

Moreover, to qualify as proper parties, it is by no means necessary that those Plaintiffs rely on such a clear principle of liability.  Rather, as explained by the Fourth Circuit, "there need be only a slight possibility of a right to relief."  *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).  "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."  *Id.*

Here, it is basic law – far more than a mere glimmer of hope – that renders all of the Plaintiffs proper parties.  As such, removal was inappropriate.  All the more so, given that this maneuver enabled Defendants to avoid a hearing on Plaintiffs' motion for a temporary restraining order and preliminary injunction that was, at the time Defendants filed their notice, set to be heard in five days.

Remand is therefore required.

**FACTS**

**The Prior Suit**

On May 3, 2017, The Marshall County Coal Company, The Marion County Coal Company, The Monongalia County Coal Company, The Harrison County Coal Company, The Ohio County Coal Company, and Murray Energy Corporation (the "Murray Energy Companies") filed a defamation lawsuit against the New York Times Company in West Virginia state court. Like the present case, that lawsuit was also premised on false statements made about the honesty of the President, CEO, and sole Director of the Murray Energy Companies, Robert E. Murray. As in this suit, the Murray Energy Companies alleged that the defamation about Mr. Murray injured the reputation of each Plaintiff because "the public equates the mining business of each Plaintiff with Mr. Murray." [Case No. 5:17-cv-79, Doc. No. 1-1 ¶ 17].

The Marshall, Marion, Monongalia and Harrison County Coal Companies (along with The Ohio County Coal Company and Murray Energy Corporation) filed their defamation suit on that basis with complete diversity existing on the face of the complaint. Defendant the New York Times Company then removed the action, without objection by the plaintiffs, and that case is now pending in this Court.

**The Present Action**

On June 18, 2017, HBO broadcast a defamatory episode of the "Last Week Tonight with John Oliver" that made false statements to a worldwide audience about the business practices of Mr. Murray (which thereby also harmed the reputation of his companies). In response, on June 21, 2017, the Marshall, Marion, Monongalia and Harrison County Coal Companies (along with The Ohio County Coal Company, Murray Energy Corporation and Mr. Murray) filed suit against Mr. Oliver, Charles Wilson, Partially Important Productions, LLC, Home Box Office, Inc., and Time Warner, Inc.

3

In this case, as opposed to the prior action against the New York Times filed less than two months earlier, it so happened that four of the corporate plaintiffs and at least two of the Defendants, HBO and Time Warner, are incorporated in the same state, Delaware.[2]

### Defendants' Defamatory Broadcast

During the June 18, 2017 broadcast by Defendants, false and defamatory statements were made about Mr. Murray and his companies that Defendants knew were contradicted by the detailed facts Plaintiffs had provided to them beforehand in attempt to prevent Defendants from taking those harmful actions.  *See* Compl. ¶¶ 29-57.  Defendants retaliated against Mr. Murray for what they perceived as his attempt at censorship, by expanding their attack upon him and his companies. *See id.* ¶ 53.  Defendants' malice is graphically evident in the broadcast, in which they describe Mr. Murray as someone who "looks like a geriatric Dr. Evil," and tell him to "Eat Shit, Bob!"  *Id.* ¶ 51.

Defendants' defamation was designed to falsely characterize Mr. Murray as the worst kind of person to run a coal company, someone who supposedly places profits over the safety of his employees.  *Id.* ¶ 48.  For example, Defendants conveyed that Mr. Murray and his companies implemented bonus policies that sacrificed the health and safety of their employees.  Defendants never broadcasted that these bonus programs were at all times predicated on safety compliance *and* performance measures.  *Id.* ¶ 49.  Defendants omitted that the very title of the bonus program

---

[2]Defendants' Notice of Removal incorrectly states that because Partially Important Productions "is a Delaware limited liability company with its principal place of business in New York . . It is therefore a citizen of Delaware and New York for diversity purposes."  Notice of Removal [Doc. No. 1 ¶ 18(f)]. "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members."  *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).  Since the Defendants have not disclosed the citizenship of the members of Partially Important Productions, they have not set forth the citizenship of all of the parties to this case, which renders their Notice of Removal defective on its face.

10260997 v1

was the "*Safety* and Production Bonus Plan." Defendants failed to state that employees found violating safety standards would face automatic disqualification from receiving bonuses under the program. *Id.* Defendants knew these facts before the show aired, and, in spite of them, expressed through the broadcast that this bonus program sacrificed safety and health standards. *Id.*

Defendants even falsely portrayed Mr. Murray as someone who lied about the cause of a mine collapse that killed six miners during the course of their duties for the Murray Energy organization, along with three rescue workers. *Id.* ¶¶ 34-41. In fact, Defendants falsely implied that Mr. Murray not only lied about the cause of that tragic mine collapse, but that he had no evidence to support his statements that an earthquake triggered the collapse. *Id.* ¶¶ 39-41. Defendants conveyed this baseless accusation despite having been provided, prior to the broadcast, with specific information detailing that the Federal Mine Safety and Health Administration's report – selectively quoted out-of-context on the show – contains concessions evidencing that an earthquake caused the collapse. *Id.* ¶ 34(e). Defendants also deliberately omitted the other publicly available studies evidencing that an earthquake caused the collapse, which Plaintiffs had provided Defendants before the broadcast. *Id.* ¶¶ 34 & 39-41.

In addition, the broadcast also reinforced this false image of Mr. Murray in many other ways. In this regard, for example, Defendants falsely portrayed (1) Mr. Murray and his companies as taking positions that are the equivalent of rooting for bees to kill a child, (2) Mr. Murray as illustrating "the divide that can exist between a coal company's interests and those of its workers," and (3) Mr. Murray as a liar in general. *Id.* ¶¶ 33-34 & ¶¶ 46-48. In sum, through the statements set forth in the Complaint ("Defamatory Statements"), Defendants' falsely represented Mr. Murray and his companies as disregarding the safety of their employees for profit, and Mr. Murray as

making baseless excuses to try to cover up the true cause of death of his employees who died in the line of duty for his organization.

These Defamatory Statements about disregarding safety for profit and making baseless misrepresentations about employee deaths "reflect discredit upon the methods by which Plaintiffs do business." *Id.* ¶ 56. For the corporate Plaintiffs, this is because "the public equates the mining business of each Plaintiff with Mr. Murray." *Id.* ¶ 10. As for the Marshall, Marion, Monongalia, and Harrison County Coal Companies, Mr. Murray is the President, CEO, and Sole Director of each of them. *Id.* ¶ 7. In addition, Mr. Murray is also listed by the Mine Safety and Health Administration as the "Current Operator" for all the mines owned by those Plaintiffs. *Id.* ¶ 7. Furthermore, those Plaintiffs, along with the other corporate Plaintiffs and their affiliates, comprise an organization that is known as "Murray Energy." *Id.* ¶ 16. The Marshall, Marion, Monongalia, Harrison, and Ohio County Coal Companies employ over 2,800 people in West Virginia, and, including secondary jobs, are responsible for the creation of up to 30,800 jobs in this state. *Id.* ¶ 16. The broadcast even specifically referenced coal-mining jobs in West Virginia. *Id.* ¶ 30.

Following the June 18, 2017 episode, Murray Energy and its employees have been inundated with harassing, threatening and intimidating emails, messages, and phone calls that have interfered with its ability to do business. Exhibit A to Notice of Removal [Doc. No. 1-1] at 40. Mr. Murray, who is seventy-seven years old and suffers from idiopathic pulmonary fibrosis, which is a progressive and fatal disease exacerbated by stress, has seen a decline in his health since the airing of the episode and the subsequent harassment. *Id.* at 52.

On June 28, 2017, Plaintiffs Filed a Motion for a Temporary Restraining Order and Preliminary Injunction seeking a gag order prohibiting Defendants from either rebroadcasting the

Defamatory Statements or publicly discussing the substance of the litigation. *Id.* at 38. The hearing on that motion was set for July 5. *Id.* at 32.

On June 30, 2017, Defendants removed this case to this court. *See* Notice of Removal [Doc. No. 1].

## ARGUMENT

I.    **The Fourth Circuit Mandates That Courts Should Resolve All Doubts About The Propriety Of Removal In Favor Of Retained State Court Jurisdiction.**

The Fourth Circuit has repeatedly directed that "'courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction.'" *Hartley*, 187 F.3d at 425 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1999)). Accordingly, where, as is the case with the Fourth Circuit, a Federal Circuit Court of Appeals has not yet ruled on the question of whether the concept of fraudulent joinder applies to non-diverse plaintiffs (as opposed to non-diverse defendants), some district courts have refused to apply that doctrine to plaintiffs.[3] For this reason alone, remand is appropriate.

In addition, even assuming that fraudulent joinder may be applied to non-diverse plaintiffs, the "party alleging fraudulent joinder bears a heavy burden." *Hartley*, 187 F.3d at 424. The "standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.* "[A]ll legal uncertainties are to be resolved in the plaintiff's

---

[3]*See Allen v. Pfizer, Inc.*, 2016 WL 7338595, at **1-3 (D. S.C. Jan. 15, 2016) (declining to apply fraudulent joinder doctrine to plaintiffs, noting that there "is some question as to the viability of fraudulent joinder as applicable to plaintiffs," that there does not "appear to be" any "controlling authority in the Fourth Circuit on this issue" and "all doubts" must be "resolved against removal"); *see also Myers Indus., Inc. v. Young*, 2013 WL 4431250, at *3 (N.D. Ohio Aug. 16, 2013) ("Because the Court cannot conclude with complete certainty that the Sixth Circuit would hold fraudulent joinder analysis applies to plaintiffs, and '[a]ll doubts as to propriety of removal must be resolved in favor of remand, the Court is bound to refuse to apply fraudulent joinder analysis") (citation omitted).

favor.  *Id.* at 425.  Indeed, the Court must resolve "all issues of law and fact in the plaintiff's favor." *Id.* at 424.

After resolving all issues of law and fact in the plaintiff's favor, "there need be only a slight possibility of a right to relief." *Id.* at 426.  "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.*

Moreover, the analysis of whether the plaintiff has a glimmer of hope cannot involve consideration of defenses that apply equally to all parties.  *See Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990) (court addressing fraudulent joinder could not properly consider defense that was "equally applicable" to a non-diverse party).  "No circuit has rejected the mutual defenses doctrine when squarely presented with it." *Powers v. Wireless Horizon, Inc.*, 2017 WL 550581, at *7 (E.D. Mo. Feb. 10, 2017);[4] *see McDowell Pharmacy, Inc. v. West Virginia CVS Pharmacy, L.L.C.*, 2012 WL 2192167, at *5 (S.D. W.Va. June 14, 2012) ("The court has found no circuits that have rejected the common defense rule when squarely presented with it").  And this rule applies with equal force to assertions that plaintiffs were fraudulently joined.  *See, e.g.*, *Stevenson v. Bros. of the Sacred Heart*, 2008 WL 4279611, at *2 (S.D. Miss. Sept. 12, 2008) (remanding case after applying the common defense doctrine to action removed on the grounds that plaintiffs were fraudulently joined).

---

[4] In *Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015), the court did not address the common defense doctrine because it was not raised and no defenses applied equally to all parties, who were situated differently.

## II.    No Doubts Exist Because Fundamental Law Dictates That Plaintiffs Are Proper Parties.

Here, the corporate Plaintiffs do not rely on a glimmer of hope, but well-established principles of defamation law.[5]  Those principles make clear that a false and derogatory statement about the manner in which a CEO performs in his professional role defames not only the CEO, but also his company.  Moreover, to constitute defamation of the company, it is not necessary that such defamatory comments about its executive – such as that he allegedly lied, without any supporting evidence, about the cause of death of employees who were killed during the line of work – concern such a serious matter to the corporation and its people as is at issue here.  Indeed, as discussed below, statements about employees that reflect on their corporations much less directly than those at issue here have been found to constitute actionable defamation of the corporation.

The law has long spoken with precision as to whether the defamatory statement about an executive can defame a company.  *See* Restatement (Second) of Torts § 561 Comment on Clause (a) (Am. Law Inst. 1977) ("communications defamatory of its officers, agents or stockholders" also defame the corporation if "they also reflect discredit upon the method by which the corporation conducts its business."); *see also* 53 C.J.S. Libel and Slander; Injurious Falsehood § 60 (2017 Update) ("an accusation of misconduct on the part of corporate officers when acting as and for the corporation, which discredits the corporation in its trade or business, is defamation against the corporation."); *Market Choice, Inc. v. New England Coffee Co.*, 2009 WL 2590651, at *5 (W.D. N.C. Aug. 18, 2009) ("the strong interrelationship between the reputations of Market Choice and [its founder] Charles Moore are such that statements which impugn the reputation of

---

[5] Everything else aside, the simple fact that all six corporate plaintiffs (two of which are diverse) rely on these same principles of defamation law by itself shows that the Marshall, Marion, Monongalia, and Harrison County Coal Companies were not fraudulently joined to defeat jurisdiction.

Mr. Moore in his business relationships have the immediate tendency to also impair the reputation of Market Choice."); *Trenton Mut. Life & Fire Ins. Co. v. Perrine*, 23 N.J.L. 402, 412 (N.J. 1852) ("an action may be maintained by a corporation aggregate for words falsely and maliciously spoken or written . . . of the officers, servants, or members of the company, by reason of which special damages is sustained by the corporation.").

Defamatory statements about even low-level, or unspecified employees, can defame a corporation where the accusation concerns professional misconduct involving dishonesty. *See VECC, Inc. v. Bank of N.S.*, 296 F. Supp. 2d 617, 623 (D. V.I. 2003) (corporation defamed by assertions of professional misconduct involving dishonesty by its banking agent); *see also Whitney Info. Network, Inc. v. Weiss*, 2008 WL 731024, at *3 & *6 (E.D. N.Y. March 18, 2008) (corporation defamed by assertions of professional misconduct involving dishonesty by persons identified only as "past and present employees" in defamatory statements).

Moreover, where the defamed employee is a high level executive, false accusations about that individual can defame the corporation even when those assertions have nothing to do with any type of dishonesty. *See Q-Tone Broadcasting Co. v. Musicradio of Maryland*, 1996 WL 494177, at *1 (Sup. Ct. Del. April 22, 1996) (corporation defamed by assertion that its "leading male executive officer was a homosexual who might be likely to 'put the move' on" a male client of the company). Indeed, if it is the CEO of a corporation that is the subject of defamatory statements, those statements can defame that corporation even if they refer to the individual's actions during his prior tenure as the CEO at a different company. *See Perlman v. Vox Media Inc.*, 2015 WL 5724838 at *17 (Del. Ct. Chancery September 30, 2015) (corporation defamed by statements about its CEO that concerned actions taken by that individual in his tenure as CEO at a prior company "in that it suggests that similar misconduct will occur at" the current company).

10

Here, Mr. Murray is not only the CEO of each corporate Plaintiff, he is also each such Plaintiff's President and sole Director or Chairman. *See* Compl. ¶ 7. In addition, the Mine Safety and Health Administration also officially lists Mr. Murray as the "Current Controller" of all the mines owned by the corporate Plaintiffs. *Id.* ¶ 10. Plus, all of the corporate Plaintiffs comprise an organization known as "Murray Energy." *Id.* ¶ 16. Accordingly, the public equates the mining business of each corporate Plaintiff with Mr. Murray. *See id.* ¶¶ 10. What is more, Defendant not only has accused Mr. Murray of professional misconduct involving dishonesty, it is a false accusation of dishonesty about Murray Energy mining operations, and the death of Murray Energy employees in their line of work for the Murray Energy organization. Those defamatory statements falsely conveying that Mr. Murray is dishonest and lies about employee safety, therefore, reflect discredit upon the method by which the Plaintiffs do business. *See, e.g.*, *Wilfred Coal Company v. Sapp*, 193 Ill. App. 400, 414 (2d Dist. 1915) (coal company defamed by assertions of professional misconduct by its president).

Beyond that fundamental principle dictating that the corporate Plaintiffs are proper parties, there is another well-established proposition of law that independently supports that conclusion. That is, because the corporate Plaintiffs are part of a group that is known as "Murray Energy," Compl. ¶ 16, they are defamed by the broadcast that defamed that group. The Supreme Court of West Virginia, the federal courts, and the Restatement of Torts are all aligned. "If defamatory words are published concerning a restricted group of persons, a member of that group may maintain an action thereon as sole plaintiff." *Long v. Egnor*, 176 W. Va. 628, 346 S.E. 2d 778, 786 n.11 (1986) (quoting Syllabus, Point 1, *Swearingen v. Parkersburg Sentinel Co.*, 125 W. Va. 731, 26 S.E. 2d 209 (1943)); *see Evans v. Chalmers*, 703 F.3d 636, 659-60 (4th Cir. 2012) (Wlkinson, J., concurring) ("One who publishes defamatory matter concerning a group or class of

persons is subject to liability to an individual member of it if, but only if, (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.") (quoting Restatement (Second) of Torts § 564A (American Law Inst. 1977)); *see also Yoder v. Workman*, 224 F. Supp. 2d 1077, 1079 (S.D. W.V. 2002) (same).

As such, given that the corporate Plaintiffs are part of the group that constitutes Murray Energy, Plaintiffs are permitted to "maintain an action" based on the defamatory broadcast, *see* Compl. ¶ 49, that Murray Energy implemented bonus policies that sacrificed the health and safety of its employees. *Long*, 346 S.E. 2d at 786 n.11; *see Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 170 & 176 (W.D. N.Y. 2003) (various limited partnerships and limited liability companies allowed to pursue defamation claims based on statements referring to "Promedicus" where those entities were affiliated with the same health group); *see also Conseco Group Risk Management Co. v. Ahrens Financial Systems, Inc.*, 2001 WL 219627, at **9-10 (N.D. Ill. March 6, 2001) (defamatory statements regarding "Conseco" applied to a group of three different corporate entities in the same organization). As the law mandates, defamation of the small and identifiable group that comprises Murray Energy constitutes defamation of every member in that group.

These long-standing and universally accepted principles of defamation law far exceed the glimmer of hope of a slight possibility of relief that dictates remand. *See, e.g.*, *Montanaro v. State Farm Mut. Auto. Ins. Co.*, 29 F. Supp. 3d 662, 668 (D. S.C. 2014) (remanding defamation case where there was nothing that might connect the non-diverse party to the claim other than an "unattributed quotation" that the Court could not find was impossible to be tied to that party); *see also Guider v. Hertz Corp.*, 2004 WL 1497611, at *5 (M.D. N.C. June 28, 2004) (remanding

defamation claim because it "is unclear from the Complaint who heard the statements, the context in which the statements were made, and the exact wording used.  Therefore, the facts presently before the Court do not allow a determination of whether Mr. England committed the tort of slander per se and, if so, whether a qualified privilege may exist."); *Pritt v. Republican Nat'l Comm.*, 1 F. Supp. 2d 590, 592 (S.D. W. Va. 1998) (remanding defamation claim where non-diverse party was "only briefly mentioned in the Complaint" and the likelihood of recovery as to that party was "remote").

Finally, apart from the deep-rooted doctrine supporting the defamation claims of the Marshall, Marion, Monongalia, and Harrison County Coal Companies, it bears emphasis that those same Plaintiffs filed a defamation suit two months ago based on these same principles in a case where complete diversity existed.  It could not be more clear, therefore, that those same Plaintiffs' claims likewise have nothing to do with diversity here.

## CONCLUSION

Plaintiffs motion to remand should be granted.

Dated: July 7, 2017                                                Respectfully submitted,


                                                          ____/s/ David L. Delk, Jr._____
                                                          Of Counsel for Plaintiff

                                                          Jeffrey A. Grove, Esq. (#6065)
                                                          David L. Delk, Jr., Esq. (#6883)
                                                          GROVE, HOLMSTRAND & DELK, PLLC
                                                          44 1/2 15th Street
                                                          Wheeling, WV 26003
                                                          (304) 905-1961
                                                          (304) 905-8628 (facsimile)

10260997 v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY,  MURRAY ENERGY CORPORATION,  and ROBERT E. MURRAY,** | Civil Action No.: 5:17-CV-99 |
| | Judge John Preston Bailey |
| **Plaintiffs,** | |
| **v.** | CIVIL ACTION NO. 17-C-124 |
| **JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER, INC., and DOES 1 through 10,** | Judge Cramer (Marshall County Circuit Court) |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Service of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND** was electronically filed with the Clerk of this Court on the 7th day of July, 2017, by using the CM/ECF system who shall provide electronic notice of such filing to the following:

Robert P. Fitzsimmons, Esq.
W. Va. State Bar I.D. #1212
Clayton J. Fitzsimmons, Esq.
W. Va. State Bar I.D. #10823
FITZSIMMONS LAW FIRM, PLLC
1609 Warwood Avenue
Wheeling, WV 26003
**(Counsel for Home Box Office, Inc.)**

_____/s/ David L. Delk, Jr._____
Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

14

10260997 v1