**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

|  |  |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, MURRAY ENERGY CORPORATION, and ROBERT E. MURRAY,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER INC., and DOES 1 through 10,<br><br>    Defendants. | Civil Action No. 17-cv-00099<br>Judge John P. Bailey |

**DEFENDANT HOME BOX OFFICE, INC.'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

    A.    The Plaintiffs..................................................................................................4

    B.    The Defendants ..............................................................................................4

    C.    The Sunday, June 18 Episode .......................................................................5

    D.    Plaintiffs' Allegations ...................................................................................7

ARGUMENT ........................................................................................................................8

    A.    The Fraudulent Joinder Standard ................................................................10

    B.    The Fraudulent Joinder Doctrine Applies to Fraudulently Joined Plaintiffs .........11

    C.    The Mutual Defenses Doctrine Does Not Preclude Removal ..............................13

    D.    The Non-Diverse Plaintiffs Have No Possibility of Success Because the Complaint Fails To Allege that the Episode Was "Of and Concerning" Them ...........................................................................................................15

    E.    The Non-Diverse Plaintiffs Have No Possibility of Success Because the Fair Report Privilege Also Bars Certain Claims....................................................23

    F.    The Non-Diverse Plaintiffs Cannot Prevail on Their Emotional Distress or False Light Claims as a Clear Matter of State Law .................................................24

    G.    Plaintiffs Are Not Entitled to Attorneys' Fees or Costs .......................................24

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*17th St. Assocs., LLP v. Markel Int'l Ins.*, 373 F. Supp. 2d 584 (E.D. Va. 2005) ........................10

*Afftrex, Ltd. v. Gen. Elec. Co.*, 555 N.Y.S.2d 903 (App. Div. 1990).......................................18, 22

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990) ..........................................................................................................................15, 22

*Allen v. Pfizer, Inc.*, 2016 WL 7338595 (D.S.C. Jan. 15, 2016)...............................................12, 13

*Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996 (3d Cir. 1994) ......................................20

*Arrington v. Nationwide Mut. Fire Ins.*, 2015 WL 852056 (W.D. Ky. Feb. 26, 2015) ...................................................................................................................................17

*Beavers v. DePuy Orthopaedics, Inc.*, 2012 WL 1945603 (N.D. Ohio May 30, 2012) ...................................................................................................................................17

*Berry v. Safer*, 293 F. Supp. 2d 694 (S.D. Miss. 2003) ...........................................................15, 16

*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990)........................................................14

*Burns v. W. S. Life Ins.*, 298 F. Supp. 2d 401 (S.D. W. Va. 2004) ...............................................11

*Chamberlaine & Flowers, Inc. v. Smith Contracting, Inc.*, 341 S.E.2d 414 (W. Va. 1986) ...................................................................................................................................24

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)......................................................23

*Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157 (S.D.N.Y. 1992) ...................................................................................................................................21

*Clear Channel Commc'ns, Inc. v. Citigroup Glob. Mkts., Inc.*, 541 F. Supp. 2d 874 (W.D. Tex. 2008) ............................................................................................................11

*Cohn v. NBC*, 414 N.Y.S.2d 906 (App. Div. 1979).................................................................18, 19

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983)..............................................15

*dPi Teleconnect LLC v. Owens*, 413 F. App'x 641 (4th Cir. 2011)...............................................24

*Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 2007 WL 2332470 (E.D. Mich. Aug. 15, 2007) ...............................................................................................................................11

*Eyal v. Helen Broad. Corp.*, 583 N.E.2d 228 (Mass. 1991) ........................................................18

*Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891 (N.D. Iowa 2000) ...................11

*Fowler v. Curtis Publ'g Co.*, 78 F. Supp. 303 (D.D.C. 1948) .......................................20

*Gales v. CBS Broad., Inc.*, 269 F. Supp. 2d 772 (S.D. Miss. 2003) .........................................15, 16

*Grennell v. W. S. Life Ins.*, 298 F. Supp. 2d 390 (S.D. W. Va. 2004) ...........................................11

*Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).........................................17

*Guider v. Hertz Corp.*, 2004 WL 1497611 (M.D.N.C. June 28, 2004) ........................................17

*Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222 (N.D. Ga. 2005) ........................................11

*Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400 (8th Cir. 1977).................................11

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080 (D.C. Cir. 2007) .......................................20

*Johnson v. Am. Towers, LLC*, 781 F.3d 693 (4th Cir. 2015) ................................................. *passim*

*Kans. State Univ. v. Prince*, 673 F. Supp. 2d 1287 (D. Kan. 2009) ............................................11

*Kennedy v. Children's Serv. Soc'y*, 17 F.3d 980 (7th Cir. 1994)...................................................20

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)...........................................18, 19, 22

*Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011 (E.D. Wis. 1999)..............................12

*Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979) ...................................................10

*Lyons v. Trott & Trott*, 905 F. Supp. 2d 768 (E.D. Mich. 2012) ................................................17

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)...............................................24

*Mayes v. Rapoport*, 198 F.3d 457 (4th Cir. 1999) .............................................5, 10, 22

*Med. Lab. Consultants v. ABC (In re Med. Lab. Mgmt. Consultants)*, 931 F. Supp. 1487 (D. Ariz. 1996)......................................................10

*Mitchell v. Random House, Inc.*, 703 F. Supp. 1250 (S.D. Miss. 1988).......................................20

*Montanaro v. State Farm Mut. Auto. Ins.*, 29 F. Supp. 3d 662 (D.S.C. 2014) ...........................17

*Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456 (S.D. Ohio June 17, 2016)........................................................................3, 12

*Mylan Pharm. Inc. v. PG Publ'g Co.*, 2009 WL 5195865 (N.D. W. Va. Dec. 18, 2009) ......................................................................11

*Oliva v. Chrysler Corp.*, 978 F. Supp. 685 (S.D. Tex. 1997) ..........................................12

*Pritt v. Republican Nat'l Comm.*, 1 F. Supp. 2d 590 (S.D. W. Va. 1998)....................17

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991) (en banc)................23

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ........................................................................15

*Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001) ....................17

*Sims v. Shell Oil Co.*, 130 F. Supp. 2d 788 (S.D. Miss. 1999) ......................................12

*Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568 (5th Cir. 2004)...........................................14

*Sodibar Sys., Inc. v. Simon*, 2014 WL 1276441 (D. Md. Mar. 26, 2014).....................11

*Spence v. Flynt*, 647 F. Supp. 1266 (D. Wyo. 1986) .....................................................10

*Susko v. Cox Enters., Inc.*, 2008 WL 4279673 (N.D. W. Va. Sept. 16, 2008) ..............24

*Swearingen v. Parkersburg Sentinel Co.*, 26 S.E.2d 209 (W. Va. 1943) ......................20

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998) .......................10, 23

*Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011) ...................................................14

*Willfred Coal Co. v. Sapp*, 193 Ill. App. 400 (Ill. App. Ct. 1915)................................22

*Youghiogheny Commc'ns-Tex., LLC v. eSecuritel Holdings, LLC*, 2012 WL
      868786 (W.D. Tex. Mar. 13, 2012) .........................................................................11

## OTHER AUTHORITIES

28 U.S.C. § 1332.........................................................................................................3, 8

28 U.S.C. § 1441.........................................................................................................5, 8

28 U.S.C. § 1446............................................................................................................8

13F Charles Alan Wright et al., *Federal Practice & Procedure* § 3641.1 (3d ed.
      2009) ......................................................................................................................12

E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder
      Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569 (2006)..................................................12

Matthew C. Monahan, Note, *De-Frauding the System: Sham Plaintiffs and the
      Fraudulent Joinder Doctrine*, 110 Mich. L. Rev. 1341 (2012) ..............................12

Restatement (Second) of Torts § 561............................................................................18

## <u>INTRODUCTION</u>

The Plaintiffs—Robert Murray ("Murray"), Murray Energy Corporation ("Murray Energy"), and five wholly-owned subsidiaries of Murray Energy—have moved to remand this action to state court on the basis of incomplete diversity.  The Court should deny Plaintiffs' motion because the Complaint does not allege that any statements were directed at the four non-diverse Plaintiffs, and they are, therefore, not real parties in interest.  In addition, certain of the statements of which Plaintiffs complain are clearly protected by the privilege to report on official proceedings.  There is, therefore, no "possibility" or "glimmer of hope" that these Plaintiffs could recover against Defendants.  *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015).

The Complaint's factual allegations concern Murray and Murray Energy only.  The majority of the allegations and the heart of the lawsuit focus on *Last Week Tonight with John Oliver*'s discussion of a mine collapse at the Crandall Canyon Mine in Utah, which was operated by a subsidiary of Murray Energy, called UtahAmerican Energy, Inc. ("UtahAmerican").  That company is not joined as a plaintiff, but five other corporate subsidiaries that operate mines in West Virginia and Ohio are named plaintiffs.  None of those subsidiaries was connected in any way to the mine collapse in Utah.  Tellingly, UtahAmerican, which is incorporated in Utah and would not defeat diversity, is not a plaintiff.

In addition to its primary focus on the mine collapse, the Complaint contains a single paragraph that alleges frivolously that Defendants' discussion of a bonus program instituted by Murray left out important facts.  The Complaint conspicuously omits, however, that *Last Week Tonight*'s discussion of the bonus program was presented to viewers as coming from the National Labor Relations Board judicial decision that provided the entire basis for those statements, and therefore renders them privileged as a matter of law.  One of the Plaintiffs—the

1

Marion County Coal Company—was a party to the NLRB case, but the Complaint is just as silent about this fact as it is about the existence of the NLRB opinion itself.

Other than in the Complaint's caption and the paragraphs identifying the Murray Energy subsidiaries as parties, the Complaint does not mention the Marshall County Coal Company, the Marion County Coal Company, the Monongalia County Coal Company, or the Harrison County Coal Company ("the non-diverse Plaintiffs").[1]  Nevertheless, the Complaint asserts on behalf of each of these non-diverse Plaintiffs the same three claims it asserts on behalf of Murray and Murray Energy, including claims for intentional infliction of emotional distress and false light invasion of privacy that are frivolous as to the corporate Plaintiffs because, as a matter of law, they can only be brought by natural persons.

Plaintiffs' Motion to Remand simply rehashes the allegations in the Complaint without offering any explanation of how the non-diverse Plaintiffs can state a claim other than by virtue of their affiliation with Plaintiffs Murray and Murray Energy, which does not provide a colorable basis for recovery.  As even a cursory review of hornbook defamation law reveals, to state a claim for defamation, a plaintiff must allege that the defamatory statements were "of and concerning" that particular plaintiff.  It is not enough that the plaintiff have some connection or affiliation with the party that is the subject of the alleged defamation.  Because the Complaint fails to allege that the challenged statements were directed at the non-diverse Plaintiffs, these parties have no possibility of relief.

Pursuant to the doctrine of fraudulent joinder, which applies to fraudulently joined plaintiffs and defendants alike, the non-diverse Plaintiffs' citizenship must be disregarded for the

---

[1] There are similarly no allegations about the fifth Murray Energy subsidiary Plaintiff, the Ohio County Coal Company.  As a citizen of Ohio, however, its presence does not destroy diversity jurisdiction.

purpose of determining jurisdiction.  Murray and Murray Energy have joined those non-diverse

plaintiffs for the sole purpose of defeating diversity jurisdiction, just as a federal court in Murray

Energy's home state of Ohio found that Murray Energy has done recently.  *See Murray Energy*

*Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456, at *3-6 (S.D. Ohio June 17, 2016).

This Court's exercise of jurisdiction is proper because complete diversity of citizenship

exists among the real parties in interest, and it is uncontested that the remaining requirements of

28 U.S.C. § 1332 are met.  The Court should deny Plaintiffs' Motion to Remand.

## BACKGROUND

*Last Week Tonight with John Oliver* is a half-hour television program that presents a

satirical look at the week in news and politics.  Produced by Partially Important Productions,

LLC and distributed on Home Box Office, Inc.'s ("HBO") premium pay television service, new

episodes premiere on Sunday night.  Each episode generally begins with a satirical look at some

of the news highlights from the previous week, and then moves to a "main story" that tackles an

important and often-overlooked issue of public interest and importance, such as civil forfeiture or

payday loans, in an in-depth and humorous manner.

Plaintiffs claim they were injured by the main story from the episode of *Last Week*

*Tonight* that premiered on June 18, 2017 (the "Episode").  On June 21, 2017, Plaintiffs filed suit

against Defendants in the Circuit Court of Marshall County, West Virginia, asserting defamation,

intentional infliction of emotional distress, and false light invasion of privacy.  On June 28,

Plaintiffs moved for a temporary restraining order and preliminary injunction.  On June 30, HBO

removed to this Court with the consent of the other named Defendants, because while certain

Plaintiffs and Defendants appear to share Delaware citizenship, those Plaintiffs have been fraudulently joined for the purpose of defeating diversity jurisdiction.[2]

### A.    The Plaintiffs

Robert Murray, who resides in Ohio, is the CEO of Murray Energy, which was incorporated and has its principal place of business in Ohio.  Compl. ¶¶ 7, 16.  Murray also is the CEO of a number of subsidiaries of Murray Energy, including the Marshall County Coal Company, the Marion County Coal Company, the Monongalia County Coal Company, and the Harrison County Coal Company (the "non-diverse Plaintiffs")—which are incorporated in Delaware.  Compl. ¶¶ 7, 11-14, 16.  The fifth additional corporate Plaintiff, the Ohio County Coal Company, was incorporated in Ohio.  Compl. ¶ 15.  The primary business of the four non-diverse Plaintiffs is to operate coal mines in West Virginia that bear their corporate names. Compl. ¶¶ 11-14.

### B.    The Defendants

John Oliver is a legal permanent resident of the United States who resides in New York. Compl. ¶ 23.  Charles Wilson resides in New York.  Compl. ¶ 24.  HBO and Time Warner Inc. were incorporated in Delaware and have their principal places of business in New York.  Compl. ¶¶ 22, 26.  Partially Important Productions is a Delaware limited liability company with its principal place of business in New York.[3]  Compl. ¶ 25.  The Complaint names Does 1 through

---

[2] HBO bases this Opposition on the allegations of the Complaint and documents it incorporates by reference.  By stating the facts as pleaded, HBO does not admit any of the Complaint's allegations.  HBO expressly preserves all rights, remedies, and defenses available in defense of this lawsuit, including all personal jurisdiction and other defenses.

[3] Partially Important Productions has no member—natural or corporate—that is a citizen of Ohio or West Virginia, and complete diversity of citizenship exists, therefore, between it and Defendants Murray, Murray Energy, and the Ohio County Coal Company.  *See* Ex. 1 (Declaration of David Martin).

10 whose identities are "presently unknown to Plaintiffs," Compl. ¶ 27, and whose citizenship, therefore, is disregarded for purposes of removal analysis.  *See* 28 U.S.C. § 1441(b)(1).

### C.     The Sunday, June 18 Episode

The Sunday, June 18 episode of *Last Week Tonight with John Oliver* included a segment about issues surrounding the coal mining industry in the United States.  This "main story" opened with Oliver recounting how President Trump had particular success "connect[ing] with mining communities during the campaign."  *See* Ex. 2 at 6:23.[4]  The story included a number of video clips from news programs and other sources.

Plaintiff Murray was introduced about five minutes in.  Oliver explained that many involved in the coal industry blame President Obama for its job losses, and that Murray was among the "loudest" critics of President Obama's policies.  *Id.* at 11:00.  Video clips of Murray harshly criticizing the former president on several news shows were shown, after which the story did not return to Murray for another six minutes.  During this time, Oliver presented data on job losses in the industry and criticized coal executives, including former Massey Energy CEO Don Blankenship, for their approach to miner safety.

When the segment returned to Murray, Oliver noted that, after *Last Week Tonight* contacted the company, Murray Energy sent cease-and-desist letters threatening "immediate litigation" that would be pursued "to the level of the Supreme Court of the United States."  *Id.* at 19:58 - 21:10; *see* Compl. ¶¶ 20, 30, 32, 36; Ex. 3 at 1, 4 (June 12, 2017 letter); Ex. 4 at 1 (June 16, 2017 letter).  Although Murray Energy has claimed in the past that it would "never" sue "to

---

[4] The Episode is incorporated by reference into the Complaint and may be considered here.  *See Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999) (when considering fraudulent joinder, a court may consider "entire record" (internal quotation marks omitted)).  Exhibit 2 is a DVD of the Episode.

chill free speech," Oliver noted that Murray had a history of lawsuits against the media.  Ex. 2 at 20:30.  Oliver jokingly compared Murray to a "geriatric Dr. Evil," the campy villain from the *Austin Powers* movies.  *Id.* at 20:50.

Oliver then discussed a lawsuit Murray Energy had filed "to block a rule aimed at reducing miners' exposure to coal dust that causes black lung."  *Id.* at 21:45.  Oliver noted that Murray had opposed the regulation because he "insisted that the rule was illegal, destructive, and did nothing for miners' health."  *Id.* at 22:00.

Next, the main story discussed a program proposed by Murray that gave miners bonuses based upon the amount of coal they extracted.  Accompanied by an on-screen graphic showing the first page of the National Labor Relations Board judicial decision, Oliver explained that the bonus program was voted down by miners based on concerns that it would create incentives to disregard safety measures, but that the company imposed it anyway, saying the miners could void their bonus checks if they did not want to participate.  *Id.* at 22:30.  Sixty-two miners did so, including one who wrote "eat shit, Bob" on his check, and another who wrote "kiss my ass, Bob."  *Id.* at 22:50.  Oliver displayed images of those two checks, which were cited and discussed in the National Labor Relations Board opinion.  *Id.*; *see* Ex. 5 at 4-5 (Decision, NLRB Case Nos. 06-CA-148388 and 06-CA-149117).

The segment then moved to the 2007 collapse at the Crandall Canyon Mine in Utah, including a video clip of a press conference immediately after the accident in which Murray claimed that the collapse "was caused by an earthquake, not something that Murray Energy or UtahAmerican did."  Ex. 2 at 23:40.  The segment next explained that the official Mine Health and Safety Administration investigation concluded that the collapse was caused by "unauthorized mining practices" and there was "no evidence that a naturally-occurring

earthquake caused the collapse," and showed a video clip of Congressional testimony from a victim's relative.  *Id.* at 24:05.

On a lighter note consistent with the satirical tone of *Last Week Tonight*, Oliver then shared an "apocryphal tale" from Murray company lore, which is that Murray was approached by a squirrel who encouraged him to launch his mining company.  *Id.* at 25:30.  Oliver made clear that Murray's representative denied that this ever actually happened.  *Id.* at 25:50.  The story then shifted back to the subject of jobs.  Oliver confirmed that Murray has provided thousands of jobs to mining communities, and observed that for those communities, that fact might understandably outweigh everything else.

Then, after discussing whether or not the coal jobs that have been lost will come back, Oliver returned to the tale of the squirrel.  Oliver reiterated that he believed that Murray had never been spoken to by a squirrel, then a costumed actor playing a squirrel entered the stage.  In a parody of the bonus checks voided by Murray's workers, the squirrel held up a large check made out to "Eat Shit, Bob," with the memo line "Kiss My Ass."  *Id.* at 29:45.

### D.     Plaintiffs' Allegations

The Complaint takes issue with four aspects of the segment.  First and foremost, Plaintiffs fault the segment's treatment of the collapse of the Crandall Canyon Mine, which is located in Utah and operated by UtahAmerican, which is not a Plaintiff.  *See* Compl. ¶¶ 33-45.  Plaintiffs complain that the segment did not discuss Murray's efforts to save trapped miners in the Utah mine, Compl. ¶ 37, and that the segment falsely suggested there was no evidence to support Murray's view that the mine collapse was caused by an earthquake, Compl. ¶¶ 38-41.  Plaintiffs argue that Defendants' statements "falsely convey[] that Mr. Murray is dishonest and lies about employee safety."  Mot. at 11.

Second, Plaintiffs complain that Oliver said "Mr. Murray and Murray Energy 'appear[ed]

to be on the same side as black lung'" due to their opposition to a regulation to limit miners' exposure to coal dust.  Compl. ¶ 46.

Third, the Complaint alleges that Defendants falsely stated that "Mr. Murray and the other Plaintiffs implemented bonus policies that sacrificed the health and safety of their employees."  Compl. ¶ 49.  What the segment reported on this point was taken directly—in fact, quoted—from the NLRB judicial decision pictured on the screen.  *See* Ex. 2 at 22:30 - 23:05.

Fourth, the Complaint objects to certain alleged "character assassinations" of Murray, including that he "looks like a geriatric Dr. Evil."  Compl. ¶ 51.  On the basis of this alleged conduct, the Complaint asserts claims for defamation, intentional infliction of emotional distress, and false light invasion of privacy, on behalf of all seven plaintiffs—Murray, Murray Energy, and the five corporate subsidiaries.

## ARGUMENT

Defendant HBO's removal pursuant to 28 U.S.C. §§ 1441 and 1446 was proper because the Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The only Plaintiffs who are real parties in interest are Murray and Murray Energy, and neither shares citizenship with any Defendant. Plaintiffs do not contest that the other requirements for diversity jurisdiction are satisfied.  The non-diverse Plaintiffs were included for the sole purpose of trying to avoid diversity jurisdiction, and, under the fraudulent joinder doctrine, their citizenship must be disregarded for purposes of determining diversity jurisdiction.

Plaintiffs make three arguments in favor of remand to the state court.  First, they contend that because the Fourth Circuit has not yet decided whether the fraudulent joinder doctrine applies to fraudulently joined plaintiffs (in addition to fraudulently joined defendants), this Court should remand to the state court.  Mot. at 7.  While it is true that the Fourth Circuit has not yet addressed the issue, courts in both the Northern and Southern Districts of West Virginia have

8

joined the vast majority of federal courts to have considered the issue, and confirmed that the fraudulent joinder doctrine applies equally to fraudulently joined plaintiffs and defendants alike. *See* Part B below.

Second, Plaintiffs argue that, pursuant to the "mutual defenses doctrine," the court should not consider any defenses that apply equally to the non-diverse and diverse Plaintiffs alike. Mot. at 8. However, this doctrine is not recognized in the Fourth Circuit, and even where it is recognized, it does not bar a finding of fraudulent joinder where, as here, the defenses would not be dispositive of all of the claims. *See* Part C below.

Third, Plaintiffs argue that the non-diverse Plaintiffs were properly joined because (1) the allegedly defamatory statements about Murray necessarily defame any company of which he was chief executive; or, alternatively, (2) defamation directed towards any of the numerous companies that are owned by Murray Energy gives rise to claims by all members of that extended corporate family, including the non-diverse Plaintiffs. Mot. at 9-12. None of these arguments provides a colorable basis for a claim by the non-diverse Plaintiffs.[5]

---

[5] Plaintiffs also make the point that the same subsidiary corporations, including the non-diverse Plaintiffs here, also filed suit as plaintiffs in *Marshall County Coal Company, et al. v. New York Times Co.*, No. 5:17-cv-79, currently pending before this Court. While there is complete diversity on the face of that complaint due to the New York citizenship of the lone defendant, it is unnecessary to consider all of Plaintiffs' potential motives for including the West Virginia plaintiffs in another case led by Ohio plaintiffs but filed in West Virginia, which also originally was filed in state court. Moreover, *The New York Times* has moved to dismiss their claims as a matter of law on the ground that its statements were not "of and concerning" the corporate plaintiffs, essentially making many of the same points defendants rely on here. *See id.*, Doc. No. 5 at 15-19. Plaintiffs also argue that the Episode "specifically referenced coal-mining jobs in West Virginia," Mot. at 6, but the two references to West Virginia in the Episode were not made in connection with Murray, Murray Energy, or the statements challenged in the Complaint. *See* Ex. 2 at 6:40, 14:10. Rather, they were part of a description of a campaign rally by President Trump and a statement that West Virginia has a very low number of solar jobs per capita. *Id.*

A.      **The Fraudulent Joinder Standard**

"'Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.'"  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (alteration omitted) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).  The fraudulent joinder doctrine "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 461. The doctrine applies equally to non-diverse Plaintiffs.

To establish fraudulent joinder, the removing party must show that "there is *no possibility* that the plaintiff would be able to establish a cause of action . . . in state court." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (internal quotation marks omitted).  "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* (internal quotation marks omitted).  However, "in determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (internal quotation marks omitted).

In cases implicating First Amendment interests, it is appropriate to give efforts to avoid diversity jurisdiction "heightened scrutiny," and this Court should do so here.  *See 17th St. Assocs., LLP v. Markel Int'l Ins.*, 373 F. Supp. 2d 584, 596 & n.7 (E.D. Va. 2005); *see also Lewis v. Time, Inc.*, 83 F.R.D. 455, 461-62 (E.D. Cal. 1979); *Spence v. Flynt*, 647 F. Supp. 1266, 1272 (D. Wyo. 1986).  "[T]he underlying goals of diversity and removal jurisdiction"— including avoiding local prejudice and guaranteeing the vindication of federal rights—"strongly support the retention of jurisdiction in cases involving the First Amendment." *Med. Lab.*

10

*Consultants v. ABC (In re Med. Lab. Mgmt. Consultants)*, 931 F. Supp. 1487, 1491 (D. Ariz. 1996) (finding fraudulent joinder and retaining jurisdiction in defamation case with "significant First Amendment ramifications" where national television network was sued for broadcasting program on "issue of undeniable public concern").

**B.     The Fraudulent Joinder Doctrine Applies to Fraudulently Joined Plaintiffs**

Plaintiffs' argument that the fraudulent joinder doctrine does not apply to fraudulently joined plaintiffs is against the clear weight of authority and common sense.  As one West Virginia federal court has observed, there is "no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs." *Grennell v. W. S. Life Ins.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004); *see also Sodibar Sys., Inc. v. Simon*, 2014 WL 1276441, at *3 (D. Md. Mar. 26, 2014); *Mylan Pharm. Inc. v. PG Publ'g Co.*, 2009 WL 5195865, at *2 (N.D. W. Va. Dec. 18, 2009); *Burns v. W. S. Life Ins.*, 298 F. Supp. 2d 401, 402-03 (S.D. W. Va. 2004).

The overwhelming majority of federal courts—including the only federal appellate court to have addressed the issue—agree that the fraudulent joinder doctrine applies to fraudulently joined plaintiffs.  *See, e.g.*, *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977) ("[I]f [a] 'nondiverse' plaintiff is not a real party in interest . . . his or its presence . . . may be ignored in determining jurisdiction."); *Youghiogheny Commc'ns-Tex., LLC v. eSecuritel Holdings, LLC*, 2012 WL 868786, at *3 (W.D. Tex. Mar. 13, 2012), *report and recommendation adopted*, 2012 WL 12931480 (W.D. Tex. Apr. 10, 2012); *Kans. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1295 (D. Kan. 2009); *Clear Channel Commc'ns, Inc. v. Citigroup Glob. Mkts., Inc.*, 541 F. Supp. 2d 874, 877-78 (W.D. Tex. 2008); *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 2007 WL 2332470, at *4 (E.D. Mich. Aug. 15, 2007); *Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222, 1224 (N.D. Ga. 2005); *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp.

11

2d 891, 907-09 (N.D. Iowa 2000); *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1014 (E.D. Wis. 1999); *Sims v. Shell Oil Co.*, 130 F. Supp. 2d 788, 796 (S.D. Miss. 1999); *Oliva v. Chrysler Corp.*, 978 F. Supp. 685, 689 (S.D. Tex. 1997).[6]

Seeking to avoid this overwhelming weight of authority, Plaintiffs illogically argue that without specific Fourth Circuit experience, any "doubts" about the propriety of removal should be resolved in favor of remand. Mot. at 7. Murray has previously made and lost this very argument in another fraudulent joinder case. *See Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456, at *3 (S.D. Ohio June 17, 2016) (rejecting the reasoning in *Myers Indus., Inc. v. Young*, 2013 WL 4431250 (N.D. Ohio Aug. 16, 2013)). The court rejected Murray's argument in that case, as this Court should do here, because it determined that the "thumb on the scale" in favor of remand "was inapplicable to the question of whether a particular federal legal doctrine applies." *Id.* Rather, that doctrine applies only to "underlying factual issues and substantive state law at issue in the claims." *Id.*

Plaintiffs cite *Allen v. Pfizer, Inc.*, 2016 WL 7338595 (D.S.C. Jan. 15, 2016), in support of their "doubts" argument, but that case is of no help to them. The court in *Allen* did not remand that case because the Fourth Circuit had not decided whether the fraudulent joinder doctrine applied to plaintiffs, as Plaintiffs here argue. To the contrary, the court "assum[ed]

---

[6] Other authorities also strongly support this approach. *See* 13F Charles Alan Wright et al., *Federal Practice & Procedure* § 3641.1, at 566 (3d ed. 2009) ("the federal courts must make their own determination whether a particular party plaintiff has any possible legal interest in the outcome of the litigation, and if he or she does not, then that person's citizenship will be considered irrelevant for purposes of determining the existence of diversity jurisdiction"); E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 606-08 (2006) ("[I]t would make little sense to limit fraudulent misjoinder to cases where a non-diverse or in-state defendant had been misjoined [because] [p]laintiffs may also attempt to defeat removal jurisdiction by joining non-diverse plaintiffs."); Matthew C. Monahan, Note, *De-Frauding the System: Sham Plaintiffs and the Fraudulent Joinder Doctrine*, 110 Mich. L. Rev. 1341, 1363-64 (2012).

arguendo" that the doctrine *did* apply to plaintiffs, but—rather than decide the merits of the defendants' fraudulent joinder theory, which was based on a "novel" argument related to Missouri personal jurisdiction law—it found that federal subject matter jurisdiction was lacking for an entirely different reason. *Id.* at *3-5.

This Court should adopt the position taken by all of the district courts within this Circuit that have decided the issue, which is supported by logic and common sense, and hold as a matter of federal law that the fraudulent joinder doctrine applies equally to plaintiffs and defendants.

### C.   The Mutual Defenses Doctrine Does Not Preclude Removal

Plaintiffs next argue that courts analyzing fraudulent joinder cannot consider "defenses that apply equally to all parties." Mot. at 8. That argument fails for two reasons.

First, it is inconsistent with the Fourth Circuit's decision in *Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015). In *Johnson*, the plaintiff—a prison guard who had been shot in his home at the direction of an inmate who used a cell phone to hire the assailant—brought negligence claims under South Carolina law in South Carolina state court against wireless phone service providers and the owners of towers that lease space to those providers. The defendants removed the case to federal court, and the district court denied the plaintiff's later motion to remand on the grounds that, among other things, complete diversity existed because a non-diverse tower-owner defendant had been fraudulently joined. *Id.* at 701.

On appeal, the Fourth Circuit agreed, concluding that there was "no possibility" that the plaintiff could prevail against that non-diverse defendant, because the plaintiff's state law claims were preempted by federal law. *Id.* at 705-06. Having determined that the district court had diversity jurisdiction, the Fourth Circuit then granted the wireless provider defendants' motion to dismiss, finding that, among other things, the plaintiffs' state law claim was preempted by federal law. *Id.* at 707. Critically, the same preemption defense could be raised equally by all

13

the defendants; but, rather than vacate the opinion of the district court and remand to the state court, the Fourth Circuit instead held that the defense established the fraudulent joinder of one defendant and the failure of the plaintiffs' claim against the others.  Thus, as one commentator noted in an analysis of *Johnson*, "*the 'common defense exception' that holds sway in some circuits, plainly does not exist in the Fourth Circuit*."  James M. Beck, *"Common" Defense No Bar to Removal in Preemption Case*, Drug & Device L. (Apr. 8, 2015) (emphasis added), https://www.druganddevicelawblog.com/2015/04/common-defense-no-bar-to-removal-in.html. Plaintiffs disregard *Johnson* in their discussion of this doctrine, and the only case they cite from within this Circuit, *McDowell Pharmacy, Inc. v. W. Va. CVS Pharmacy, L.L.C.*, was decided prior to *Johnson*.  2012 WL 2192167, at *5 (S.D. W. Va. June 14, 2012).

Second, even if the mutual defenses doctrine was the law in this Circuit, it would apply only where all defendants raise a "dispositive defense" that "involve[s] identical legal and factual issues."  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 113 (3d Cir. 1990).  In other words, where the doctrine is recognized, its reach is limited to situations where the defense asserted as to the non-diverse party is "equally dispositive" of the claims brought by diverse and non-diverse plaintiffs alike.  *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 575 (5th Cir. 2004) (en banc); *see also Snap-On Tools Corp.*, 913 F.2d at 113.  It does not apply, for example, where a non-diverse plaintiff's claim is "weaker" than a diverse plaintiff's claim.  *Cf. Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011).  Here, the "of and concerning" defense, which is dispositive of the claims brought by the fraudulently-joined Plaintiffs, is not applicable to the claims brought by the diverse Plaintiffs, Murray and Murray Energy.

**D.      The Non-Diverse Plaintiffs Have No Possibility of Success Because the Complaint Fails To Allege that the Episode Was "Of and Concerning" Them**

Plaintiffs' Complaint is focused on statements directed at Murray and Murray Energy, largely about mining operations at the Crandall Canyon Mine in Utah.  It does not allege that any statements were directed at the four non-diverse Plaintiffs, which all are subsidiary corporations that operate mines in West Virginia.  Compl. ¶¶ 11-14.  Without any allegation that the challenged statements were actually about those specific Plaintiffs, there is "no possibility" that these non-diverse Plaintiffs could recover against Defendants.  *Johnson*, 781 F.3d at 704.

Under both the First Amendment and West Virginia law,[7] the only party entitled to assert a claim for defamation is the party at whom the allegedly false statements are "specifically directed."  *Rosenblatt v. Baer*, 383 U.S. 75, 81-82 (1966); *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983) (requiring "reference to the plaintiff").  "In order to actionably defame an individual, a publication must contain some 'special application of the defamatory matter' to the individual," such that "[t]he 'circumstances of the publication . . . reasonably give rise to the conclusion that there is a particular reference' to the individual."  *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) (citations omitted).

In two Mississippi defamation cases, for example, a federal court retained jurisdiction because the challenged statements by non-diverse defendants were not "of and concerning" the plaintiffs.  *See Gales v. CBS Broad., Inc.*, 269 F. Supp. 2d 772, 775, 777-80 (S.D. Miss. 2003), *aff'd per curiam*, 124 F. App'x 275 (5th Cir. 2005); *Berry v. Safer*, 293 F. Supp. 2d 694, 696-701 (S.D. Miss. 2003).  In *Gales* and *Berry*, individuals who had served as jurors in Jefferson County, Mississippi, sued CBS and other defendants in Mississippi state court for statements

---

[7] For purposes of the remand and TRO motions only, Defendants assume without conceding application of West Virginia law to issues not controlled by federal law.

made in a segment titled "Jackpot Justice" on the CBS News magazine program *60 Minutes*. *Id.* The plaintiffs included jurors who had awarded a $150 million verdict in a high-profile pharmaceutical case, and the defendants included two Mississippi residents who had made statements on *60 Minutes* about Jefferson County jurors being "disenfranchised people" who "stick it" to big corporate defendants. *Id.* The court noted that a "'trial court may . . . at the earliest stages'" consider "'whether the statement at bar . . . is "of and concerning" the plaintiff.'" *Gales*, 269 F. Supp. 2d at 780 (second alteration in original) (quoting Robert O. Sack, Libel, Slander, and Related Problems 533-34 (1980)); *Berry*, 293 F. Supp. 2d at 700 (same). The court denied the motions to remand, finding "no possibility of recovery for defamation" against the two Mississippi defendants where the complaints had failed to allege facts sufficient to establish that the non-diverse defendants' statements "were 'of and concerning' or 'clearly directed toward' the plaintiffs." *Gales*, 269 F. Supp. 2d at 780-84; *Berry*, 293 F. Supp. 2d at 700-04. The alleged statements "d[id] not refer to any of the plaintiffs by name," and the references to "jurors" and "the jury," while referring to a group, "lack[ed] the specificity required to impose liability." *Id.*

So too here. As in *Gales* and *Berry*, Plaintiffs' Complaint does not mention the non-diverse Plaintiffs by name except to identify them as parties. *See* Compl. ¶¶ 11-14. It does not allege that any statements were directed at those subsidiary companies. It does not identify any harm suffered specifically by the non-diverse Plaintiffs. Consistent with the fact that the pre-litigation correspondence was sent on Murray Energy's letterhead and only concerned "Mr. Murray" and "Murray Energy," Compl. ¶¶ 32, 36; Ex. 3 at 1; Ex. 4 at 1, those are the only two Plaintiffs specifically named in the allegations of the Complaint. Where, as here, a complaint fails to make any specific allegations about a party, and relies instead on collective allegations

16

directed at "plaintiffs" or "defendants," numerous courts have found fraudulent joinder of the party.  *See, e.g.*, *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); *Arrington v. Nationwide Mut. Fire Ins.*, 2015 WL 852056, at *3 (W.D. Ky. Feb. 26, 2015); *Lyons v. Trott & Trott*, 905 F. Supp. 2d 768, 772 (E.D. Mich. 2012); *Beavers v. DePuy Orthopaedics, Inc.*, 2012 WL 1945603, at *4-5 (N.D. Ohio May 30, 2012); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001).[8]

The only allegation of the Complaint that even remotely attempts to meet the "of and concerning" requirement is the vague and conclusory allegation that "the public equates the mining business of each Plaintiff with Mr. Murray."  Compl. ¶ 10.  Based on that allegation, Plaintiffs appear to make two related arguments:  (1) that defamatory statements about Murray relate to and defame all of the companies of which he is CEO and President, Mot. at 9-11; and (2) that all of the corporate Plaintiffs are part of the same corporate family and defamatory statements directed at "Murray Energy" necessarily defame all of Murray Energy's subsidiaries. Mot. at 12.  Neither of these arguments can satisfy the constitutionally mandated "of and concerning" requirement.

    **1.  *Allegations About Murray as CEO.***  In the context of corporations, the rule is not, as Plaintiffs assert, that defamatory statements about corporate executives are also generally

---

[8] The defamation cases cited by Plaintiffs do not support remand here, as the "of and concerning" requirement was not at issue.  *See* Mot. at 12-13; *Montanaro v. State Farm Mut. Auto. Ins.*, 29 F. Supp. 3d 662, 668 (D.S.C. 2014) (finding defendant not fraudulently joined where court could not conclude that particular defendant had not himself "also sen[t] such a letter or make a statement that included the language quoted in the Complaint"); *Guider v. Hertz Corp.*, 2004 WL 1497611, at *5 (M.D.N.C. June 28, 2004) (affidavit attached to complaint claimed that alleged fraudulently joined defendant had personally made false statements and issue of qualified privilege was uncertain); *Pritt v. Republican Nat'l Comm.*, 1 F. Supp. 2d 590, 592 (S.D. W. Va. 1998) (complaint alleged that defendants had "individually" committed tortious acts).

applicable to their corporations.  Mot. at 9.  "A corporation is not defamed by communications

defamatory of its officers, agents or stockholders unless they also reflect discredit upon the

method by which the corporation conducts its business."  Restatement (Second) of Torts § 561

cmt. on cl. (a) (Am. Law Inst. 1977).  Corporations and their officers or agents are not

interchangeable.  When a statement is made about one or the other, the statement must still "have

been understood by a reasonable reader as being, in substance, actually *about* [the plaintiff who

is bringing suit]."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398-99 (2d Cir. 2006).

      Where statements about a CEO or other officer or owner of a business are not "actually

about" the business of the corporation, the corporation cannot maintain a cause of action.  *See*

*Eyal v. Helen Broad. Corp.*, 583 N.E.2d 228, 232-33 (Mass. 1991) ("reject[ing] the corporation's

argument that the defendants[] defamed it by allegedly defaming [the corporation's owner]"

where alleged statement did not reference corporation and "insinuated nothing" about it); *Afftrex,*

*Ltd. v. Gen. Elec. Co.*, 555 N.Y.S.2d 903, 904-05 (App. Div. 1990) (concluding statement that

"the owner of Afftrex, is also an evil man" was not sufficiently "of and concerning" Afftrex

because, in context, the statement "reflect[s] directly on [the individual]" in connection with his

former employment, rather than on the business (internal quotation marks omitted)); *Cohn v.*

*NBC*, 414 N.Y.S.2d 906, 909 (App. Div. 1979) (concluding that statement about individual that

was law firm's "principal producer of income" was not "of and concerning" law firm where the

law firm "was never mentioned" and it "d[id] not complain of . . . any defamatory portrayal or

utterance directed against it"), *aff'd*, 408 N.E.2d 672 (N.Y. 1980).[9]

---

[9] The cases cited by Plaintiffs do not support Plaintiffs' argument that defaming a corporate
officer thereby defames every corporation of which he is an officer.  *See* Mot. at 9-10 (citing
cases).  In each situation, the allegations were sufficiently connected to the business of the
particular corporate plaintiff to permit a claim by that corporation.  In *Whitney Information
Network, Inc. v. Weiss*, the court found that "several" "explicit references" to the corporate

The bare assertion that "the public equates the mining business of each Plaintiff with Mr. Murray," Compl. ¶ 10, is simply not enough to establish that each statement about Murray was also about the business of each of his companies.  *See Kirch*, 449 F.3d at 398, 401 (broad allegation that "'exclusive agent'" was known publicly as "the 'face'" of the corporation was insufficient to support defamation claim by agent); *Cohn*, 414 N.Y.S.2d at 909 ("mere conclusory assertion that the reputation of the firm is inextricably tied to Cohn as its principal producer of income" cannot give rise to claim by law firm for defamation because "[n]o such derivative claim for defamation exists").

   **2.** ***Allegations About Murray Energy.*** Nor is it enough for the non-diverse Plaintiffs to argue that they are all part of the same corporate family as Murray Energy Corporation, and that statements about Murray Energy are therefore also "of and concerning" them.  Defamatory statements about a parent company do not give rise to claims for defamation by subsidiary corporations.  It is well settled in the case of natural persons that a defamatory statement about one family member does not give rise to a claim by other family members, even though other

---

plaintiff "easily satisfy the 'of and concerning' element."  2008 WL 731024, at *6 (E.D.N.Y. Mar. 18, 2008).  In *VECC, Inc. v. Bank of Nova Scotia*, statements that a corporation's agent was potentially conducting a "scam" in connection with opening a bank account in the name of the corporate plaintiff were deemed to satisfy the requirement that the statement "tend to 'reflect discredit upon the method by which the corporation conducts its business.'"  296 F. Supp. 2d 617, 620, 623 & n.4 (D.V.I. 2003) (citation omitted).  In *Market Choice, Inc. v. New England Coffee Co.*, the challenged statements were in the context of conversations "about the possibility of doing business with [a competitor] rather than [the corporation and founder]," and another challenged statement was in connection with a notification that the corporation was no longer authorized to conduct certain business.  2009 WL 2590651, at *6 (W.D.N.C. Aug. 18, 2009).  In *Q-Tone Broadcasting Co. v. MusicRadio of Maryland*, the statements were made to a client of the corporation and included that the executive "sexually approached male clients" and was "likely to 'put the move' on the client."  1996 WL 494177, at *1 (Del. Super. Ct. Apr. 22, 1996).  In *Perlman v. Vox Media, Inc.*, the challenged statements specifically referenced the corporation and were arguably "straightforward facts," but the court found that, in context, they could defame the corporation by "reflect[ing] discredit on the way [the corporation] does business."  2015 WL 5724838, at *8, *17 (Del. Ch. Sept. 30, 2015).

family members may suffer injury as a result.  *See Fowler v. Curtis Publ'g Co.*, 78 F. Supp. 303, 304 (D.D.C. 1948) ("A person who is injured by reason of the fact that someone else is libeled, has no right of recovery.  Any detriment that he sustains is damnum absque injuria."), *aff'd*, 182 F.2d 377 (D.C. Cir. 1950); *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1255-56 (S.D. Miss. 1988) ("'[T]he defamation of one family member does not normally give rise to a cause of action by another family member . . . unless it can be shown that the libel in question was published of and concerning them.'" (citation omitted)), *aff'd*, 865 F.2d 664 (5th Cir. 1989).

The same principle applies to corporate families.  A subsidiary corporation may claim some indirect injury when its parent corporation is defamed—although here no such injury is alleged.  But unless the defamatory communication makes reference to the subsidiary corporation, it has no claim for defamation.  *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089–90 (D.C. Cir. 2007) (holding that statements about a bank were not "of and concerning" other corporations with shared ownership).

Plaintiffs attempt to satisfy the "of and concerning" requirement by invoking the "group libel" cases, which hold that a member of a group may assert a defamation claim if a statement is clearly aimed at each member of the group, or if the statement is made about a group that is so small that suspicion is cast on each member of the group.  *See Kennedy v. Children's Serv. Soc'y*, 17 F.3d 980, 983 (7th Cir. 1994); *Swearingen v. Parkersburg Sentinel Co.*, 26 S.E.2d 209, 214 (W. Va. 1943) (permitting claim by individual where statements were "directed toward the city council and mayor, which was a small restricted group of five persons, and . . . may apply to any member thereof"); *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1016 (3d Cir. 1994) (group of roughly 20 wallpaper dealers was too "amorphous and ill-defined" to "support a

conclusion that any of the plaintiffs' individual reputations were injured").[10]  The critical requirement in such cases, which does not exist here, is that the statement be reasonably construed as referring to the particular member of the group.  *See, e.g.*, *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1161 (S.D.N.Y. 1992) (reference to "Scientology" does not give rise to a claim by particular Scientology organization), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).

The "group libel" cases have no application here, because in this case John Oliver did not speak of a group at all:  he spoke specifically of Bob Murray and Murray Energy.  And none of Plaintiffs' claims allege that anything in the story that forms the basis for those claims cast suspicion on any of the non-diverse Plaintiffs.

Thus, for example, Plaintiffs' principal complaint concerns the statements about the Crandall Canyon Mine collapse.  Compl. ¶¶ 33-45.  They allege that Defendants implied that "Mr. Murray lied about the cause of the mine collapse."  Compl. ¶ 43.  But that mine is located in Utah, Compl. ¶ 37, and, as mentioned in the segment, that mine was operated by UtahAmerican, which is not a Plaintiff.  The non-diverse Plaintiffs operate four mines in West Virginia, Compl. ¶¶ 11-14.  There is simply no colorable claim that any statements about the Crandall Canyon Mine collapse were "of and concerning" these Plaintiffs or their mines in West

---

[10] The cases cited by Plaintiffs do not support the point that an alleged membership in a "group" necessarily permits claims by individual group members.  *See* Mot. at 12.  In *Excellus Health Plan, Inc. v. Tran*, the court found that the "statements . . . are sufficiently focused on individual Promedicus executives and physicians" so as to permit claims by those parties.  287 F. Supp. 2d 167, 175 (W.D.N.Y. 2003).  In *Long v. Egnor*, the court "assume[d], without deciding, that . . . all five Board members had the right to bring this libel action because it is a small group" of five.  346 S.E.2d 778, 786 (W. Va. 1986).  Another case cited by Plaintiffs, *Conseco Group Risk Management Co. v. Ahrens Financial Systems, Inc.*, provides no support at all, as it contained no discussion of group libel or whether statements specific to one plaintiff were "of and concerning" other plaintiffs.  2001 WL 219627, at *9-10 (N.D. Ill. Mar. 6, 2001).

Virginia.  *See AIDS Counseling & Testing Ctrs.*, 903 F.2d at 1005.[11]  The same is true with

Plaintiffs' other allegations referencing "Murray Energy" and "Mr. Murray and the other

Plaintiffs."  *See* Compl. ¶¶ 46, 49.

      To the extent Plaintiffs allege that Defendants implied "Mr. Murray is a liar in general,"

that is a statement about him personally, not about all of the many corporations that he runs.  It

lacks the requisite "'special application of the defamatory matter' to the individual" plaintiff to

give rise to a claim by the non-diverse Plaintiffs.  *See AIDS Counseling & Testing Ctrs.*, 903

F.2d 1005.  Likewise, the description of Murray as "a geriatric Dr. Evil," Compl. ¶ 51, and

alleged characterization of Murray and Murray Energy as "villainous," Compl. ¶ 47, are akin to

the description of the corporate owner as "an evil man," which was not "of and concerning" a

particular business that the man owned, because, in context, that business was not implicated by

the statement.  *See Afftrex, Ltd.*, 555 N.Y.S.2d at 905.  Such statements, alleged to be directed at

Murray and Murray Energy, were not "actually *about*" the trade or business of the four non-

diverse Plaintiffs and cannot support claims by those Plaintiffs.  *See Kirch*, 449 F.3d at 399.

      Without a viable claim that the challenged statements set forth in the complaint were "of

and concerning" the non-diverse Plaintiffs, these Plaintiffs have no possibility of success.  The

Court should, therefore, disregard the citizenship of the non-diverse Plaintiffs for jurisdictional

purposes, dismiss the non-diverse Plaintiffs, and retain jurisdiction over the case.  *Mayes*, 198

F.3d at 461; *Johnson*, 781 F.3d at 704.

---

[11] In contrast, in the case cited by Plaintiffs, *Willfred Coal Co. v. Sapp*, 193 Ill. App. 400, 414
(Ill. App. Ct. 1915), only one business was potentially implicated by statements allegedly
implying that a corporate executive was dishonest.  *See* Mot. at 11.

**E.      The Non-Diverse Plaintiffs Have No Possibility of Success Because the Fair Report Privilege Also Bars Certain Claims**

Claims based upon the single paragraph of the Complaint that alleges Defendants "falsely broadcasted that Mr. Murray and the other Plaintiffs implemented bonus policies that sacrificed the health and safety of their employees," Compl. ¶ 49, are also clearly barred by the fair report privilege.  That privilege shields the media from liability for its coverage of "official [government] actions or proceedings, so long as the report was accurate and either complete or fairly abridged." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (en banc).  West Virginia law requires plaintiffs to plead and prove the absence of such a privilege as an "essential element[]" of their claim for defamation.  *See Crump*, 320 S.E. at 77.

The main story from the Episode accurately summarized a National Labor Relations Board judicial decision about the bonus program and quoted directly from that decision, displaying those quotes on the screen.  *See* Ex. 2 at 22:30 - 23:05; Ex. 5.  Critically, the Complaint not only fails to argue that the Episode's summary of the NLRB decision was incorrect in any way, it withholds from the Court the fact that the NLRB decision itself is what the segment displayed and discussed.  Every factual statement made about the bonus program— that the miners rejected the bonus program because of safety concerns, that sixty-two miners voided their bonus checks, and that two of them had vulgar messages for Murray—came straight from the decision, and was clearly presented as such.  Ex. 5 at 4-5.

Thus, even if the Court were to assume, *arguendo*, that the allegations in this single paragraph of the Complaint are "of and concerning" any particular non-diverse Plaintiff, the claim made in that paragraph is entirely barred by the fair report privilege.  There is therefore

"no possibility that the plaintiff would be able to establish a cause of action" based on this claim. *Johnson*, 781 F.3d 693 at 704 (emphasis and internal quotation marks omitted).

### F.   The Non-Diverse Plaintiffs Cannot Prevail on Their Emotional Distress or False Light Claims as a Clear Matter of State Law

As a clear matter of West Virginia law, the non-diverse Plaintiffs cannot prevail on their false light and intentional infliction of emotional distress claims because these claims can only be brought by natural persons.  *See Chamberlaine & Flowers, Inc. v. Smith Contracting, Inc.*, 341 S.E.2d 414, 417 (W. Va. 1986) ("a corporation cannot recover for the tort of outrage or infliction of severe emotional distress"); *Susko v. Cox Enters., Inc.*, 2008 WL 4279673, at *5 (N.D. W. Va. Sept. 16, 2008) (holding that corporation "cannot assert a claim for false light invasion of privacy").  With these claims as well, there is "no possibility" of success for the non-diverse Plaintiffs.  *Johnson*, 781 F.3d at 704.

### G.   Plaintiffs Are Not Entitled to Attorneys' Fees or Costs

Plaintiffs fail to provide any support for their request for an award of attorneys' fees or costs, which is mentioned only in their motion and not addressed in their memorandum.  Failure to argue the issue amounts to a waiver.  *See dPi Teleconnect LLC v. Owens*, 413 F. App'x 641, 646 (4th Cir. 2011).  Because HBO has an "objectively reasonable basis for seeking removal" and no "unusual circumstances" exist, Plaintiffs' request for fees should be denied even if their motion is granted.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand.  HBO requests a hearing on this Motion.

Dated: July 21, 2017                          Respectfully submitted,


By:   */s/ Robert P. Fitzsimmons*
        Robert P. Fitzsimmons, Esq.
        W. Va. State Bar I.D. #1212
        Clayton J. Fitzsimmons, Esq.
        W. Va. State Bar I.D. #10823
        FITZSIMMONS LAW FIRM PLLC
        1609 Warwood Avenue
        Wheeling, WV  26003
        Phone:  (304) 277-1700
        Fax:  (304)277-1705
        E-mail:  bob@fitzsimmonsfirm.com

        Kevin T. Baine (*pro hac vice*)
        Thomas G. Hentoff  (*pro hac vice*)
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street NW
        Washington, D.C.  20005
        Tel:  (202) 434-5000
        Fax:  (202) 434-5029
        kbaine@wc.com
        thentoff@wc.com

        *Attorneys for Defendant Home Box Office, Inc.*

25

## CERTIFICATE OF SERVICE

I certify that this 21st day of July, 2017, I caused a copy of the foregoing to be electronically filed using the CM/ECF system.  Electronic notice of this filing will be provided via CM/ECF to counsel for Plaintiffs:

    Jeffrey A. Grove, Esq. (#6065)
    David L. Delk, Jr., Esq. (#6883)
    GROVE, HOLMSTRAND & DELK, PLLC
    44 1/2 15th Street
    Wheeling, WV 26003

                                        /s/ Robert P. Fitzsimmons
                                       Robert P. Fitzsimmons, Esq.
                                       W. Va. State Bar I.D. #1212
                                       FITZSIMMONS LAW FIRM PLLC
                                       1609 Warwood Avenue
                                       Wheeling, WV  26003
                                       Phone:  (304) 277-1700
                                       Fax:  (304)277-1705
                                       E-mail:  bob@fitzsimmonsfirm.com