**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, MURRAY ENERGY CORPORATION, and ROBERT E. MURRAY,<br><br>                Plaintiffs,<br><br>    v.<br><br>JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER INC., and DOES 1 through 10,<br><br>                Defendants. | Civil Action No. 17-cv-00099<br>Judge John P. Bailey |

**MEMORANDUM OF DEFENDANTS PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., AND TIME WARNER INC. IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................................3

    A.    The Sunday, June 18 Episode. ............................................................4

    B.    Plaintiffs' Lawsuit.............................................................................6

ARGUMENT ........................................................................................................................8

I.     THE TEMPORARY RESTRAINING ORDER MUST BE DENIED BECAUSE IT WOULD BE UNCONSTITUTIONAL. ...............................................................8

II.    PLAINTIFFS' MOTION FAILS THE FUNDAMENTAL REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER. ..........................................................13

    A.    Plaintiffs Cannot Demonstrate Likelihood of Success on the Merits Because the First Amendment Bars Their Claims. ................................................14

          1.    Statements Concerning the Crandall Canyon Mining Accident Are Not Actionable. ..........................................................................18

          2.    Statement that Plaintiffs "Appear To Be on the Same Side as Black Lung" Is Not Actionable. ...............................................................19

          3.    Statements that Plaintiffs Implemented Bonus Policies that Sacrificed the Health and Safety of Employees Are Not Actionable. ..........................................................................................20

          4.    Statements Lampooning Murray Are Not Actionable. .............................21

          5.    Claims Brought by Corporate Plaintiffs Are Not Actionable. ...................21

    B.    Plaintiffs Cannot Demonstrate Irreparable Injury..................................22

    C.    The Balance of Equities and the Public's Interest Both Weigh Against Granting Plaintiffs' Motion..................................................................24

CONCLUSION....................................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*A.M.P. v. Hubbard Broad., Inc.*, 216 F. Supp. 2d 933 (D. Minn. 2001) .......................................10

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
   903 F.2d 1000 (4th Cir. 1990) ...........................................................................................22

*Alberti v. Cruise*, 383 F.2d 268 (4th Cir. 1967)................................................................12, 13, 23

*Alexander v. United States*, 509 U.S. 544 (1993) ...........................................................................2

*Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978) ...............................................................24

*Berger v. Battaglia*, 779 F.2d 992 (4th Cir. 1985)........................................................................25

*Bihari v. Gross*, 119 F. Supp. 2d 309 (S.D.N.Y. 2000)............................................................9, 13

*Bingham v. Struve*, 591 N.Y.S.2d 156 (App. Div. 1992)...............................................................13

*Blossom Dairy Co. v. Int'l Bhd. of Teamsters*, 23 S.E.2d 645 (W. Va. 1942)..............................13

*Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir. 1983) .......................17

*Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764 (N.D. Texas 2007) ...........................................19

*CBS Inc. v. Davis*, 510 U.S. 1315 (1994) (Blackmun, J., in chambers) ..................................10, 24

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012).......................................24

*Chamberlaine & Flowers, Inc. v. Smith Contracting, Inc.*,
   341 S.E.2d 414 (W. Va. 1986).............................................................................................22

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)....................................................15

*Charlotte Observer, In re*, 921 F.2d 47 (4th Cir. 1990)................................................................10

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983)...........................15, 17, 19, 21

*Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967) ..........................................................................11

*Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1991) ................................22

*Elrod v. Burns*, 427 U.S. 347 (1976) ..........................................................................3, 24, 25

*Farah v. Esquire Mag.*, 736 F.3d 528 (D.C. Cir. 2013) ..........................................................15, 22

*Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999) ...................................................9

ii

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc) .....................................................9

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..........................................................................16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ......................................16, 18

*Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979) (en banc) (per curiam) ..................................12

*Hustler Mag., Inc. v. Falwell*, 485 U.S. 46 (1988) ...................................................................17, 21

*Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*,
    844 N.Y.S.2d 600 (Sup. Ct., Suffolk Cty. 2007) .....................................................................24

*King World Prods., Inc., In re,* 898 F.2d 56 (6th Cir. 1990) .........................................................10

*Kwass v. Kersey*, 81 S.E.2d 237 (W. Va. 1954) ..........................................................12, 13, 23, 24

*Long v. Egnor*, 346 S.E.2d 778 (W. Va. 1986)...............................................................................20

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ...........................................................9

*Marshall Cty. Coal Co. v. N.Y. Times*,
    No. 17-cv-00079 (N.D. W. Va. June 2, 2017) .............................................................................8

*Mayfield v. NASCAR, Inc.*, 674 F.3d 369 (4th Cir. 2012)..............................................................17

*Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) .............................................................10

*Medford v. Levy*, 8 S.E. 302 (W. Va. 1888)............................................................................23, 24

*Mercy Health Servs. v. 1199 Health & Human Serv. Emps. Union*,
    888 F. Supp. 828 (W.D. Mich. 1995) ..................................................................................13, 24

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)...................................................................... *passim*

*Murray Energy Holdings Co. v. Bloomberg, L.P.*,
    2016 WL 3355456 (S.D. Ohio June 17, 2016) .............................................................................8

*Murray Energy Holdings Co. v. Mergermarket USA, Inc.*,
    2016 WL 3365422 (S.D. Ohio June 17, 2016) .............................................................................8

*Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d 1111 (Ohio Ct. App. 2014)..............1, 8, 16, 17

*Murray v. Ciocia*, No. CV-13-801057 (Ohio Ct. Com. Pl., Cuyahoga Cty. 2013) ........................8

*Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879 (S.D. Ohio 2014) ..................................8

*Murray v. Moyers*, 2015 WL 5626509 (S.D. Ohio Sept. 24, 2015) ...............................................8

iii

*Murray v. Tarley*, 2002 WL 484537 (S.D. Ohio Feb. 21, 2002) ....................................................8

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)...........................................................2, 14, 16, 17

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) ...................................................................9

*Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931)..............................................................3, 10

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976).................................................................. *passim*

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386 (8th Cir. 1997)................16, 17

*Ohio Valley Advert. Corp. v. Union Local 207, Sign Painters*,
    76 S.E.2d 113 (W. Va. 1953).................................................................................................13

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) (en banc) ........................................................18

*Parker Paint & Wall Paper Co. v. Local Union No. 813*,
    105 S.E. 911 (W. Va. 1921).............................................................................................13, 23

*Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) .............................................................15

*Providence J. Co., In re,* 820 F.2d 1342 (1st Cir. 1986)...............................................................10

*Puello v. Crown Heights Shmira, Inc.*, 2014 WL 3115156 (M.D. Pa. July 7, 2014) ....................9

*Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009) ...........................14

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004).....................................................24

*Republic of Kazakhstan v. Does 1-100*,
    2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015) .........................................................................9

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991) (en banc)................................15

*Rodriguez v. Nat'l Freight, Inc.*, 5 F. Supp. 3d 725 (M.D. Pa. 2014) ..........................................24

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ......................................................................................21

*Russell, In re,* 726 F.2d 1007 (4th Cir. 1984) ..............................................................................12

*San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*,
    125 F.3d 1230 (9th Cir. 1997) ...............................................................................................13

*Seemuller v. Fairfax Cty. Sch. Bd.*, 878 F.2d 1578 (4th Cir. 1989)...............................................15

*Snyder v. Phelps*, 562 U.S. 443 (2011) ....................................................................................2, 17

*Speiser v. Randall*, 357 U.S. 513 (1958)......................................................................................25

*Stand Together Against Neighborhood Decay, Inc. v. Bd. of Estimate of City of N.Y.*, 690 F. Supp. 1192 (E.D.N.Y. 1988) ...............................................................23

*State ex rel. Daily Mail Publ'g Co. v. Smith*, 248 S.E.2d 269 (W. Va. 1978), *aff'd*, 443 U.S. 97 (1979) ...................................................3, 9

*Straitwell v. Nat'l Steel Corp.*, 905 F.2d 1532 (4th Cir. 1990) (unpublished table decision) .................................................19

*Susko v. Cox Enters., Inc.*, 2008 WL 4279673 (N.D. W. Va. Sept. 16, 2008) .......................15, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................................4

*Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674 (N.D. Okla. 1993) .......................................10

*Trinidade v. HSBC*, 2010 WL 11468360 (N.D. W. Va. Apr. 29, 2010) ........................................15

*Wall St. J., In re,* 601 F. App'x 215 (4th Cir. 2015) .....................................................12

*West Virginia ex rel. McCaffery v. Hutchison*, 585 S.E.2d 52 (W. Va. 2003) .............................23

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...........................................................14

## OTHER AUTHORITIES

28 U.S.C. § 1446...........................................................................................................8

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007).........................................................................................................................9

Restatement (Second) of Torts § 614..........................................................................20

## INTRODUCTION

Plaintiffs' emergency motion for a temporary restraining order or preliminary injunction ("TRO") is part of an ongoing pattern of "punitive litigation designed to chill constitutionally protected speech," *Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d 1111, 1124-25 (Ohio Ct. App. 2014), by plaintiffs with a demonstrated history of bringing meritless defamation lawsuits. Their request for an unprecedented and plainly unconstitutional prior restraint is a profound waste of judicial resources and should be rejected.

*Last Week Tonight with John Oliver* is a half-hour television program that presents a satirical look at the week in news, politics, and current events. Produced by Defendant Partially Important Productions, LLC and distributed on Defendant Home Box Office, Inc.'s ("HBO") premium pay television service, new episodes premiere on Sunday night. Each episode generally begins with a satirical look at news highlights from the previous week, and then moves to a main story that tackles an important and often-overlooked issue of public interest. On June 18, 2017, the main story examined issues facing the coal mining industry. Part of the segment discussed Robert Murray, the CEO of Murray Energy Corporation, the largest privately owned coal mining company in the United States. Murray's extensive political advocacy and his history of being at odds with federal health and safety regulators and some of his own workers, as well as Murray's past attempts to use defamation lawsuits to silence critics, were mentioned. The presentation was humorous, with jokes spread throughout the commentary and an appearance by an actor dressed as a giant squirrel.

The *Last Week Tonight* segment made clear that the program's commentary about Murray and Murray Energy relied on official government reports and Murray's own public statements, coupled with obvious satire. Nevertheless, Murray and companies he controls

("Plaintiffs") filed a lawsuit in West Virginia state court three days later, on June 21, alleging that John Oliver, HBO, and the other defendants (collectively, "Defendants") had defamed him and his companies with false statements that also constituted false light invasion of privacy and intentional infliction of emotional distress.  Also on June 21, Murray Energy issued and distributed a press release "FOR IMMEDIATE RELEASE" announcing the lawsuit.

A week later, on June 28, before even serving the lawsuit, Plaintiffs filed an emergency motion for a temporary restraining order that asked the court "to restrain Defendants, during the pendency of this litigation, from (i) re-broadcasting" the segment containing the statements they have challenged as false and defamatory "and (ii) publicly discussing the substance of this litigation."  June 28 Mot. at 1.  Since Defendant HBO removed the case to federal court, Plaintiffs have neither withdrawn nor sought a hearing on the pending motion.

"Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."  *Alexander v. United States*, 509 U.S. 544, 550 (1993).  As prior restraints on speech, they "are the most serious and the least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  Moreover, the speech that Plaintiffs here seek to restrain—news and political commentary about a public figure and an important public issue—"occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection."  *Snyder v. Phelps*, 562 U.S. 443, 452 (2011).  No matter that Plaintiffs disliked the segment or found it offensive—the Constitution shelters even "vehement, caustic, and sometimes unpleasantly sharp attacks" on public officials and figures.  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

In over two hundred years of jurisprudence, the United States Supreme Court has never upheld such a prior restraint, whether in a defamation case or any other.  Both the U.S. Supreme

2

Court and the West Virginia Supreme Court have warned that prior restraints could only ever be constitutional in truly "exceptional cases," *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931), such as where the speech at issue would reveal "military intelligence in a time of serious national peril and concerning a dangerous and indispensable operation [like] the Allies' invasion of Normandy in 1944," *State ex rel. Daily Mail Publ'g Co. v. Smith*, 248 S.E.2d 269, 271 (W. Va. 1978), *aff'd*, 443 U.S. 97 (1979).

Plaintiffs' ill-considered challenge to the *Last Week Tonight* episode does not remotely present the kind of "exceptional case" that could overcome the First Amendment's protections for free speech. Their motion does not cite a single case, from any jurisdiction, that awarded the relief they seek: a prior restraint against a media organization to censor commentary and satire that is alleged to be defamatory. That is because courts have held in an unbroken line of authority that such restraints would violate the Constitution. In addition, as a matter of common law, courts, including the West Virginia Supreme Court and the Fourth Circuit, have refused to issue injunctions in defamation cases. For these reasons alone, the TRO should be denied.

Plaintiffs' motion also fails the traditional test for a TRO. Plaintiffs make no serious attempt to show that they are likely to succeed on the merits of their claims, or that any alleged injury is irreparable or could be prevented by the unprecedented relief Plaintiffs seek. And Plaintiffs ignore established law that a prior restraint on speech both disserves the public interest and "unquestionably constitutes irreparable injury" to those enjoined. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Weighing the balance of equities therefore demands denial of the motion.

## BACKGROUND

*Last Week Tonight* is a weekly half-hour television program hosted by John Oliver that presents a satirical look at the week in news, politics, and current events. Plaintiffs claim they

were injured by the main story concerning issues surrounding the coal industry from the episode that premiered on Sunday, June 18, 2017 (the "Episode").

### A.    The Sunday, June 18 Episode.

The Episode began with a satirical review of news highlights from the prior week, including a discussion of the American Health Care Act. Ex. A.[1] The main story followed.  It opened with Oliver recounting that President Trump had particular success "connect[ing] with mining communities during the campaign." *Id.* at 6:23.  It then included a number of video clips from news programs and other sources, including one in which Trump promised that miners were "gonna be working your asses off, all right?" *Id.* at 7:17.

Plaintiff Murray was introduced about five minutes into the main story.  Oliver explained that many in the coal industry blame President Obama for job losses, and that Murray was among the "loudest" critics of President Obama's policies. *Id.* at 11:00.  Next, video clips of Murray harshly criticizing the former president were shown.  The story did not return to Murray for another six minutes.  During this time, Oliver presented data on job losses in the industry.

When the segment returned to Murray, Oliver noted that Murray had a history of lawsuits against the media, and that after *Last Week Tonight* contacted Murray Energy for the story, it sent cease-and-desist letters threatening "immediate litigation." *Id.* at 19:42.

Oliver then discussed a lawsuit Murray Energy had filed "to block a rule aimed at reducing miners' exposure to coal dust that causes black lung." Ex. A at 21:45. He explained that Murray had opposed the regulation because the rule was, in Murray's view, "illegal, destructive, and did nothing for miners, nothing for their health." *Id.* at 22:00.

---

[1] The Episode is incorporated by reference into the Complaint and may be considered here. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Exhibit A is a DVD of the Episode.  Exhibit B is a DVD of the following week's episode.

Next, the main story discussed a Murray Energy program that gave miners bonuses based upon the amount of coal they extracted.  Accompanied by an on-screen graphic showing the first page of a National Labor Relations Board judicial decision, Oliver explained that the bonus program was voted down by miners based on safety concerns, but that the company imposed it anyway, saying the miners could void their bonus checks if they did not want to participate.  *Id.* at 22:30.  Sixty-two miners did so, including one who wrote "eat shit, Bob" on his check, and another who wrote "kiss my ass, Bob."  *Id.* at 22:50.  Oliver displayed images of those two checks on the screen, as well as the NLRB judicial decision on which the Episode relied.  *Id.*; *see* Ex. C (Decision, NLRB Case Nos. 06-CA-148388 and 06-CA-149117).

The segment then moved to the 2007 collapse at the Crandall Canyon Mine in Utah.  The show included a video clip of a press conference immediately after the accident in which Murray claimed that the collapse "was caused by an earthquake, not something that Murray Energy or UtahAmerican did."  Ex. A at 23:40.  Oliver explained that the official government investigation concluded that the collapse "was caused by 'unauthorized mining practices'" and that there was "'no evidence that a naturally occurring earthquake caused the collapse.'"  *Id.* at 24:04 (quoting Ex. D, Mine Safety and Health Administration, "Crandall Canyon Accident Investigation Summary and Conclusions," at 1).

On a lighter note, Oliver then shared an "apocryphal tale" from Murray company lore, that Murray was approached by a squirrel who encouraged him to launch his mining company. *Id.* at 25:20.  Oliver made clear that Murray's representative denied that this ever happened.

The story then shifted back to the subject of jobs.  Oliver confirmed that Murray has provided thousands of jobs to mining communities, and observed that "for those communities, that fact might understandably outweigh everything else."  *Id.* at 26:16.

Then, after discussing whether or not the coal jobs that have been lost will come back, Oliver closed the segment by addressing Murray:  "Bob Murray, . . . I know that you are probably going to sue me.  But, you know what?  I stand by everything I said."  *Id.* at 29:12.  At that point, a costumed actor playing a squirrel named "Mr. Nutterbutter" entered the stage.  In a parody of the bonus checks voided by Murray's workers, Mr. Nutterbutter held up a large check made out to "Eat Shit, Bob," with the memo line "Kiss My Ass."

### B.      Plaintiffs' Lawsuit.

On June 21, 2017, Plaintiffs filed suit in Marshall County Circuit Court.[2]  The Complaint asserted three causes of action, for defamation, intentional infliction of emotional distress, and false light invasion of privacy.  Murray Energy also issued a two-page press release publicizing its lawsuit.  Ex. F.

The Complaint takes issue with various aspects of the segment.  First, Plaintiffs criticize the story for not including a discussion of Murray's efforts to save trapped miners in Crandall Canyon, Utah.  Compl. ¶ 37.  They also claim that Defendants falsely suggested there was no evidence to support Murray's view that the mine collapse was caused by an earthquake.  Compl. ¶¶ 37-41.  However, Plaintiffs do not dispute that the MSHA "found no evidence that a naturally occurring earthquake caused the collapse," nor could they dispute that fact when the segment quoted directly from the MSHA's Accident Investigation Summary and Conclusions.  *See* Ex. D; *see also* Ex. E at 1 (MSHA Report) ("The August 6 collapse was not a 'natural' earthquake, but rather was caused by a flawed mine design.").  Second, truncating and taking out of context a quotation from the segment, Plaintiffs complain that Oliver said Murray "appear[ed] to be on the

---

[2] Defendants John Oliver and Charles Wilson have not been served.  All arguments made in this opposition would apply with equal force to them.  In addition, each defendant specifically reserves their right to contest personal jurisdiction and venue.

same side as black lung" because Murray had opposed a regulation to limit miners' exposure to coal dust.  Compl. ¶ 46.  However, they do not dispute that Murray had opposed the regulation, and ignore that the segment included Murray's explanation for his opposition.

Third, the Complaint alleges that Defendants falsely reported that Murray "implemented bonus policies that sacrificed the health and safety of their employees."  Compl. ¶ 49.  However, it does not dispute that Oliver accurately quoted from the NLRB judicial decision pictured on the screen.  Fourth, the Complaint objects to certain alleged "character assassination[s]" of Mr. Murray, including that he "looks like a geriatric Dr. Evil."  Compl. ¶ 51.

The next episode of *Last Week Tonight*, which premiered on June 25, opened with a clip from a *CBS This Morning* news report about the lawsuit.  Oliver then explained that he did not intend to discuss the litigation on the show:

> We here at the show "Last Night Week Last Week Tonight" are currently being sued by Bob Murray, CEO of Murray Energy.  And look:  I desperately want to talk to you about this tonight.  But our lawyers have suggested that the courts be the venue where we work this out.  And I do get that.  But I promise we will tell you all about this, as soon as it is over.  And of course, of course, Mr. Nutterbutter will get a chance to tell his side of the story, too.

Ex. B at 1:11.

On June 28, Plaintiffs filed a motion for a temporary restraining order in Marshall County Circuit Court, seeking an order barring the further distribution of the Episode and imposing a gag order prohibiting the parties from publicly discussing the lawsuit.  TRO at 1.

On June 30, Defendant HBO removed the case to federal court, on the ground that the Marshall County Coal Company, the Marion County Coal Company, the Monongalia County Coal Company, and the Harrison County Coal Company, had been fraudulently joined in a

7

transparent attempt to defeat diversity jurisdiction.  Removal Notice, Dkt. No. 1, at 1.  This

removal divested the state court of jurisdiction pursuant to 28 U.S.C. § 1446(d).

## ARGUMENT

Plaintiffs' motion for a temporary restraining order and this lawsuit are merely the latest

examples of Murray's ongoing campaign to use "punitive litigation . . . to chill constitutionally

protected speech."  *Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d at 1124-25.  The lawsuit by

many of the same plaintiffs against the *New York Times*, which has a motion to dismiss pending

in these chambers, *see Marshall Cty. Coal Co. v. N.Y. Times*, No. 17-cv-00079, is only one of

many.  In the past few years alone, Plaintiffs repeatedly have filed similar lawsuits against critics

and members of the media, only to have them dismissed at the pleading stage.[3]  This history

suggests that Plaintiffs' objective is not to prevail on the merits, but to impose a cost on those

who have the temerity to criticize Murray.  This temporary restraining order is a prime example

of those efforts, and must be denied.

## I.   THE TEMPORARY RESTRAINING ORDER MUST BE DENIED BECAUSE IT WOULD BE UNCONSTITUTIONAL.

"[P]rior restraints on speech and publication are the most serious and the least tolerable

infringement on First Amendment rights."  *Neb. Press Ass'n*, 427 U.S at 559.  And "an

---

[3] *See Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456, at *8 (S.D. Ohio June 17, 2016) (denying declaratory judgment against media company as unconstitutional prior restraint and dismissing complaint which "consists virtually entirely of legal conclusions couched as factual allegations"); *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, 2016 WL 3365422, at *4 (S.D. Ohio June 17, 2016) (same); *Murray v. Moyers*, 2015 WL 5626509, at *4 (S.D. Ohio Sept. 24, 2015) (dismissing complaint against journalist); *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 888 (S.D. Ohio 2014) (dismissing complaint against media defendants); *Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d at 1125 (dismissing complaint against newspaper); *see also Murray v. Ciocia*, No. CV-13-801057 (Ohio Ct. Com. Pl., Cuyahoga Cty. 2013) (dismissing complaint against activist), *appealed*, No. CA-15-102792 (Ohio Ct. App. 2014) (parties agreed to dismiss case with Murray paying costs); *Murray v. Tarley*, 2002 WL 484537, at *8 (S.D. Ohio Feb. 21, 2002) (dismissing defamation complaint).

injunction against speech is the very prototype of th[is] greatest threat to First Amendment values." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 797 (1994) (Scalia, J., concurring in part and dissenting in part). The most fundamental example of an impermissible prior restraint is one that seeks to bar the media from publishing "news and commentary on current events," *Neb. Press Ass'n*, 427 U.S. at 559, because "[b]oth the history and language of the First Amendment support the view that the press must be left free to publish news, whatever the source, without censorship, injunctions, or prior restraints," *N.Y. Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring). "[N]ever in the [200-plus] year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case or any other." Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 173 (2007).

The compelled removal of content already published constitutes a prior restraint because it prohibits the future republication of speech that otherwise would have occurred. *See, e.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc) (injunction to remove published YouTube video would be "classic prior restraint of speech"); *Republic of Kazakhstan v. Does 1-100*, No. 15 Civ. 1900 (ER), 2015 WL 6473016, at *3 (S.D.N.Y. Oct. 27, 2015) (preliminary injunction to remove documents from website would be an unconstitutional prior restraint); *Puello v. Crown Heights Shmira, Inc.*, No. 3:14-0959, 2014 WL 3115156, at *3 (M.D. Pa. July 7, 2014) (same); *Bihari v. Gross*, 119 F. Supp. 2d 309, 327 (S.D.N.Y. 2000) (same); *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 750-51 (E.D. Mich. 1999) (same).

"The preeminent rule with regard to prior restraint on free speech" is that any prior restraint must be viewed "'with a heavy presumption against its constitutional validity.'" *Daily Mail Publ'g Co.*, 248 S.E.2d at 270 (quoting *Neb. Press Ass'n*, 427 U.S. at 558). It is a "most

extraordinary" remedy, *Neb. Press Ass'n*, 427 U.S. at 562, available only in the most "exceptional cases," *Near*, 283 U.S. at 716. *See also In re Charlotte Observer*, 921 F.2d 47, 49 (4th Cir. 1990) (per curiam) ("The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events."); *In re Providence J. Co.*, 820 F.2d 1342, 1348 (1st Cir. 1986).

Plaintiffs here have utterly failed to overcome this heavy presumption of unconstitutionality. They do not cite, because they cannot, a single case in which a media organization was enjoined from publishing the type of commentary at issue here in a suit for defamation, false light, or intentional infliction of emotional distress. Courts routinely hold that such motions are unconstitutional, and this case is no different. *See, e.g.*, *CBS Inc. v. Davis*, 510 U.S. 1315, 1317-18 (1994) (Blackmun, J., in chambers) (setting aside state court preliminary injunction against a television broadcast); *Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) (in case for defamation and false light, denying injunction as unconstitutional prior restraint); *Charlotte Observer*, 921 F.2d at 49 (vacating injunctions prohibiting news organizations from publishing name of attorney as unconstitutional prior restraints); *In re King World Prods., Inc.*, 898 F.2d 56, 59 (6th Cir. 1990) (vacating TRO against broadcast of news program as unconstitutional prior restraint, over claim of invasion of privacy); *Providence J. Co.*, 820 F.2d at 1348, 1350 (vacating TRO against newspaper's publication of certain materials as unconstitutional prior restraint).[4]

---

[4] *See also, e.g.*, *A.M.P. v. Hubbard Broad., Inc.*, 216 F. Supp. 2d 933, 935 (D. Minn. 2001) (denying TRO as unconstitutional prior restraint in case with claims for defamation and intentional infliction of emotional distress); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 682 (N.D. Okla. 1993) (injunction barring rebroadcast of television news magazine segment would be prior restraint in case with claims for defamation and false light).

10

To the extent that Plaintiffs argue that allegedly false and defamatory statements do not deserve First Amendment protection, TRO at 21-22, they misunderstand that this can only be true *after* the speech has been finally adjudged, *i.e.*, not at a preliminary juncture.  That is the very reason why the *prior* restraint doctrine is necessary.  The Supreme Court has made this exact point repeatedly, beginning in *Nebraska Press*:

> [A] judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted.  Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.  A prior restraint, by contrast and by definition, has an immediate and irreversible sanction.

427 U.S. at 559; *see also, e.g.*, *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 149 (1967) ("[W]e have rejected all manner of prior restraint on publication, despite strong arguments that if the material was unprotected the time of suppression was immaterial." (citation omitted)).

The same heavy presumption against constitutionality that applies to Plaintiffs' attempt to prevent Defendants from continuing to make the program available also applies to their request for a gag order, which also is a prior restraint.  Plaintiffs ask the Court to prevent Defendants, who are all media companies or members of the media, from reporting or commenting on current events—namely, this lawsuit.  Defendants do not cite a case in which a court imposed a gag order on a media company or member of the media.  The gag order requested here is not only presumptively unconstitutional, it also is inconsistent with the Plaintiffs' own behavior:  they issued a press release the very same day they filed their lawsuit.  The day *after* filing the TRO, Murray discussed the lawsuit in an interview with E&E News.  *See* Ex. G.

Plaintiffs' request also is breathtakingly broad and lacking in any apparent justification: they seek to enjoin all Defendants from engaging in any public discussion of the substance of the case, including any mention of the facts, claims, and defenses.  And their proposed gag order

would extend to HBO and Time Warner Inc., notwithstanding the absence of any suggestion that these companies would be inclined to make statements that would improperly influence the jury pool, and the absence of specific factual allegations that Time Warner had any involvement whatsoever in the challenged statements. *See In re Russell*, 726 F.2d 1007, 1010-11 (4th Cir. 1984) (requiring a "reasonable likelihood" that a fair trial would be denied before imposing a gag order).

Gag orders are rarely granted in civil cases. *See, e.g.*, *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) (per curiam). And, just two years ago, the Fourth Circuit barely paused before vacating a similarly broad gag order imposed in the *criminal* proceeding involving Massey Energy CEO Donald Blankenship, which would have prohibited "the parties, their counsel, potential trial participants, court personnel, and others from discussing the case with any member of the media." *See In re Wall St. J.*, 601 F. App'x 215, 217-18 (4th Cir. 2015).

In addition, courts across the country, including the West Virginia Supreme Court and the Fourth Circuit, have long recognized that, even setting aside the constitutional concerns, injunctions are specifically prohibited in defamation cases as a matter of common law. *See, e.g.*, *Kwass v. Kersey*, 81 S.E.2d 237, 245 (W. Va. 1954) ("[W]e have found no authority in the United States which holds that mere defamation can be enjoined.") (reversing temporary injunction); *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967) ("Generally an injunction will not issue to restrain torts, such as defamation or harassment, against the person."); *see also, e.g.*, *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 23 (1990) ("[A]n action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored.").[5]

---

[5] For purposes of the remand and TRO motions only, Defendants assume without conceding application of West Virginia law to issues not controlled by federal law.

This is so because damages are an adequate remedy for defamation claims.  *See, e.g.*, *Kwass*, 81 S.E.2d at 243 ("The plaintiff in this suit has an adequate remedy at law:  By action for damages . . . ."); *Alberti*, 383 F.2d at 272.  This Court is bound by these precedents.

None of the cases that Plaintiffs cite suggests otherwise.  All are distinguishable on their facts, and involve injunctions related to property damage, picketing, or non-speech torts.  For example, Plaintiffs contend that *Parker Paint & Wall Paper Co. v. Local Union No. 813*, 105 S.E. 911 (W. Va. 1921), "enjoined conduct, similar to the conduct here."  TRO at 17.  That is a significant overstatement.  *Parker Paint* has been distinguished twice by the West Virginia Supreme Court because the facts leading to the injunction were so extreme, involving "secondary picketing, [which] was accompanied by great violence, and did cause the breach of a number of business and commercial contracts between the employer and its customers."  *Blossom Dairy Co. v. Int'l Bhd. of Teamsters*, 23 S.E.2d 645, 649 (W. Va. 1942); *Ohio Valley Advert. Corp. v. Union Local 207, Sign Painters*, 76 S.E.2d 113, 120 (W. Va. 1953) (same).[6]

## II.  PLAINTIFFS' MOTION FAILS THE FUNDAMENTAL REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER.

Even if it were not blatantly unconstitutional, Plaintiffs' motion must be denied for the separate reason that it fails to satisfy the requirements for a temporary restraining order and a preliminary injunction.  "A preliminary injunction is an extraordinary remedy," *Winter v. Nat.*

---

[6] Plaintiffs cite three other picketing cases, but they are similarly inapposite.  *See San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1238-39 (9th Cir. 1997); *Mercy Health Servs. v. 1199 Health & Human Serv. Emps. Union*, 888 F. Supp. 828 (W.D. Mich. 1995); *Bingham v. Struve*, 591 N.Y.S.2d 156, 158 (App. Div. 1992) (per curiam).  Each involved tortious interference or harassment claims not present here.  *See, e.g.*, *Bihari v. Gross*, 119 F. Supp. 2d 309, 327 (S.D.N.Y. 2000) (distinguishing *Bingham* on this basis, and denying a motion for a preliminary injunction over speech on a website).  They also do not concern the relief Plaintiffs seek here, *i.e.*, censorship of commentary and satire at the heart of the First Amendment's protection.

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *id.* at 22.  A plaintiff seeking such relief must satisfy each and every one of the following elements:  "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Plaintiffs have not come close to making the required clear showing.

Plaintiffs make no serious attempt to argue that their claims are likely to succeed on the merits, devoting less than a page of their motion to this critical part of the analysis.  Instead, they contend that they can avoid an inquiry into the merits by showing that the balance of the hardships clearly tips in their favor.  TRO at 16, 20.  Although the Fourth Circuit at one time took such a "flexible" view of the preliminary injunction factors, it abandoned that approach after *Winter*.  *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds by* 559 U.S. 1089 (2010), *and reissued in relevant part at* 607 F.3d 355 (4th Cir. 2010).  Today, there can be no dispute that all of the four requirements must be satisfied, and that the evidence for each must be clear.  *Id.*  Nevertheless, Plaintiffs here have failed to make any serious effort, let alone a clear showing, at every step of the analysis.

### A.   Plaintiffs Cannot Demonstrate Likelihood of Success on the Merits Because the First Amendment Bars Their Claims.

The First Amendment limits the circumstances in which plaintiffs may recover damages for statements by the media concerning people in the public eye such as Murray and matters of significant public interest such as the coal industry.  *See N.Y. Times Co.*, 376 U.S. at 283.  Three well-settled doctrines plainly bar the claims Plaintiffs have brought in this case.

***Fair report privilege***.  The First Amendment shields the media from liability for its coverage of "official [government] actions or proceedings, so long as the report was accurate and

14

either complete or fairly abridged." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (en banc). As a matter of state law, West Virginia requires plaintiffs to plead and prove the absence of such a privilege as an "essential element[]" of their claim for defamation. *See Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 77 (W. Va. 1983).

  *Opinion and rhetorical hyperbole not actionable*.  Plaintiffs can recover only for false statements of fact. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986); *Trinidade v. HSBC*, No. 10-cv-09, 2010 WL 11468360, at *5 (N.D. W. Va. Apr. 29, 2010) (Bailey, J.).  The First Amendment does not permit recovery for statements of opinion not capable of being proven true or false. *Milkovich*, 497 U.S. at 20; *Susko v. Cox Enters., Inc.*, No. 07-cv-144, 2008 WL 4279673, at *3 (N.D. W. Va. Sept. 16, 2008).  If a statement "cannot reasonably be interpreted as stating actual facts about an individual," it is not actionable as defamation. *Milkovich*, 497 U.S. at 20 (alteration omitted).  The First Amendment also provides a safe harbor for "vigorous epithet," "rhetorical hyperbole," and other "loose, figurative" language that cannot reasonably be understood to convey actual facts about the plaintiff. *Id.* at 17, 21.  In particular, the "use of satire to comment on a matter of public concern d[oes] not deprive [a speaker] of the protection afforded by the first amendment." *Seemuller v. Fairfax Cty. Sch. Bd.*, 878 F.2d 1578, 1583 (4th Cir. 1989); *see also Farah v. Esquire Mag.*, 736 F.3d 528, 537-38 (D.C. Cir. 2013) (holding that readers would not have understood satirical news article containing "humorous or outlandish details" as conveying facts about plaintiff).

  *Falsity and actual malice*.  Where the plaintiff is a public figure, he must show not only that the challenged statement was false, *see Hepps*, 475 U.S. at 775-76, but that the defendant acted with "actual malice"—that is, with "knowledge that it was false or with reckless disregard

of whether it was false or not," *N.Y. Times*, 376 U.S. at 279-80. The actual malice standard is "a subjective one," requiring proof by clear and convincing evidence that "the defendant actually had a high degree of awareness of probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (ellipsis omitted).

"There is no real dispute that Murray and his companies, through his actions and the events that attained national prominence, are public figures" who must prove actual malice. *Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d at 1117. As chief executive of "the largest underground coal mining company in the United States," Compl. ¶ 9, Murray occupies a role "of especial prominence in the affairs of society," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). What is more, Murray has "invite[d] attention and comment" by thrusting himself to the forefront of public discussions concerning the coal industry. *Id.* at 345. He appears regularly on cable news shows, Ex. A at 11:05, and his press conferences have attracted attention from the national media, *id.* at 23:40 (clip of CNN coverage of Murray press conference); TRO 12-13 ("numerous media outlets . . . have aired reports of this lawsuit"); *see also Gertz*, 418 U.S. at 344 (public figures typically enjoy "significantly greater access" to the media). Should there be any doubt about his prominence, Murray styles himself in the Complaint "as one of the staunchest defenders and most ardent champions of the United States coal industry and America itself." Compl. ¶ 9.

As for the corporate plaintiffs, to the extent they can overcome the threshold "of and concerning" requirement, they too are public figures. The corporate plaintiffs together comprise the country's "largest underground coal mining company," Compl. ¶ 9, with workers in three countries and six states, *id.* ¶ 17. If that were not enough, their status as participants in a heavily regulated industry surely qualifies them as public figures. *See Nw. Airlines, Inc. v. Astraea*

16

*Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983); *Murray v. Chagrin Valley Publ'g Co.*, 25 N.E.3d at 1117 (holding that Murray's companies, including Murray Energy, are public figures).

Nowhere in the Complaint or the TRO do Plaintiffs plausibly allege that Defendants made false statements of fact, much less that they acted with actual malice. Their conclusory allegations on this issue are similar to those which the Fourth Circuit has previously held to be "entirely insufficient." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012). Plaintiffs' failure to plausibly allege either falsity or actual malice is dispositive not only of their defamation claim, but also of their false light and intentional infliction claims. *See Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Crump*, 320 S.E.2d at 83.

In applying these doctrines, this Court must be guided by the principle that commentary on news, politics, and public policy "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452. "It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for vigorous advocacy no less than abstract discussion." *N.Y. Times*, 376 U.S. at 269 (alteration and citations omitted).

The segment challenged here was a piece of commentary that addressed matters of broad public import. Murray was mentioned not merely as a prominent businessman, but as someone deeply engaged in federal policy affecting the coal industry. The segment excerpted interviews in which Murray calls former President Obama an "outlaw," castigates his "incompetence" and "evil agenda," and submits that the former president "and his Democrat followers are destroying entire segments of America." Ex. A at 11:05. One of the news clips shows Murray at the Republican National Convention; another identifies him as a fundraiser for Mitt Romney's

presidential campaign.  Murray also claims to have the ear of President Trump, who reportedly told him, "I love you, man."  *Id*. at 19:10.

Murray complains that Defendants did not treat him fairly because Defendants are "fundamentally opposed to any revitalization of the coal industry" and "vigorously support[] . . . [the] agenda" of Democrat Hillary Clinton.  Compl. ¶¶ 18, 19.  Even if these allegations were true, which they are not, they fundamentally miss the point:  in the arena of public commentary, Defendants have every right to criticize Murray using "vigorous epithet" and "lusty and imaginative" invective.  *Milkovich*, 497 U.S. at 17.  As a political flamethrower himself, Murray has no warrant for using the law of libel to disarm critics.  "The individual who deliberately enters that arena must expect that the debate will sometimes be rough and personal."  *Ollman v. Evans*, 750 F.2d 970, 1002 (D.C. Cir. 1984) (en banc) (Bork, J., concurring); *accord Harte-Hanks Commc'ns*, 491 U.S. at 687.

### 1.    Statements Concerning the Crandall Canyon Mining Accident Are Not Actionable.

Plaintiffs allege that Defendants "outrageously conveyed" that Murray has "no evidence" to support his view that an earthquake caused the collapse of the Crandall Canyon mine, Compl. ¶ 38, but Plaintiffs have not plausibly alleged that this statement was false or that Defendants published it with actual malice.  When Oliver made that statement, he was quoting directly from MSHA's official report on the accident.  Exs. A, D.  Plaintiffs allege that they pointed Defendants to other studies that supported their earthquake theory.  *See* Compl. ¶ 34.  But the most Plaintiffs can say about these studies is that they described an event "very similar to the United States Geological Survey's definition of an 'earthquake.'"  *Id.* ¶ 34(e); *see also id.* ¶ 34(f) ("what many would characterize as an earthquake"); *id.* ¶ 34(i) ("a seismic event akin to an earthquake").  Defendants can hardly be said to have published a knowing falsehood when *the*

18

*government found* there was "no evidence that a naturally occurring earthquake caused the collapse." Ex. D at 1. Plaintiffs' preferred reports do not come close to refuting that official conclusion.

This claim also fails for the independent reason that Oliver's statement quoting the MSHA report about the earthquake is covered by the fair report privilege. Although plaintiffs in West Virginia must plead and prove the absence of such a privilege as an element of their claim, *see Crump*, 320 S.E.2d at 77, Plaintiffs have offered no basis to believe that the segment contained anything other than an accurate summary of the MSHA's investigation. Not only does this failure warrant dismissal of this claim; in at least one prior defamation case against the media, the Fourth Circuit concluded that a plaintiff's failure to make "reasonable inquiry" into the existence of a qualified privilege was grounds to uphold Rule 11 sanctions. *See Straitwell v. Nat'l Steel Corp.*, 905 F.2d 1532 (4th Cir. 1990) (unpublished table decision).[7]

## 2. Statement that Plaintiffs "Appear To Be on the Same Side as Black Lung" Is Not Actionable.

Oliver's statement that "if you even appear to be on the side of black lung, you're on the wrong fucking side" is not actionable as defamation because it cannot reasonably be understood as conveying actual facts about the Plaintiffs. *See Milkovich*, 497 U.S. at 20. *Last Week Tonight* is a satirical program which discusses news and current events. Viewers understand these remarks as Oliver's signature, biting commentary which forms the core of every episode, not as objective assertions of fact. *See Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 775-76 (N.D. Texas 2007) (dismissing defamation claim against nightly news satire program *The Daily Show*

---

[7] Also in relation to the Crandall Canyon accident, Plaintiffs complain that Defendants showed a clip from congressional testimony of a victim's relative. But Plaintiffs do not allege, nor could they allege, that this testimony was false or that it falls outside the scope of the fair report privilege.

because, among other reasons, no reasonable viewer would have believed the challenged clip was an actual assertion of fact). The exaggerated nature of the analogy, coupled with Oliver's use of profanity, make plain that his statements about black lung are not to be taken literally. Murray might find the comments distasteful, but there can be no doubt that this type of "lusty and imaginative expression" on matters of public policy stands at the heart of the First Amendment's protection. *Milkovich*, 497 U.S. at 17.

### 3. Statements That Plaintiffs Implemented Bonus Policies that Sacrificed the Health and Safety of Employees Are Not Actionable.

Plaintiffs have likewise failed to state a claim that Defendants "falsely broadcasted that Murray and the other Plaintiffs implemented bonus policies that sacrificed the health and safety of their employees." Compl. ¶ 49. As an initial matter, the segment is not capable of the defamatory meaning that Plaintiffs allege. *See Long v. Egnor*, 346 S.E.2d 778, 780 (W. Va. 1986) (syl. pt. 6) (courts must determine as a matter of law whether a publication is capable of a defamatory meaning); Restatement (Second) of Torts § 614(1). *Last Week Tonight* took no position on whether the bonus program imperiled the safety of miners. In order to illustrate "the divide that can exist between a coal company's interests[] and those of its workers," Ex. A at 19:37, it merely noted that miners voted down the bonus program because they "*believed* it would have an adverse impact on safety," *id.* at 22:32 (emphasis added). Plaintiffs have not alleged that statement is anything other than an accurate report of the competing opinions on the merits of the bonus program.

In any event, Plaintiffs have no basis to assert that Oliver's statements concerning the bonus program fall outside the scope of the fair report privilege. Every factual statement—that the miners rejected the bonus program because of safety concerns, that 62 miners voided their bonus checks, and that two of them had vulgar messages for Murray—came straight from an

20

NLRB opinion.  Ex. C.  Murray has not alleged that these statements were false or that Oliver inaccurately summarized the contents of the NLRB opinion, nor could he.  In fact, the NLRB decision is far *more* damning than the *Last Week Tonight* story—the NLRB determined that Murray's company "engaged in unfair labor practices" in violation of federal law when it fired the miners who wrote "Eat shit, Bob" and "Kiss my ass, Bob" on their checks.  *See* Ex. C, at 31.

### 4.      Statements Lampooning Murray Are Not Actionable.

Murray's claim that Defendants defamed him by comparing him to "a geriatric Dr. Evil" is just plain frivolous.  *See* Compl. ¶ 51.  No reasonable viewer would interpret this statement to suggest that Murray is actually "villainous."  *Id.* ¶ 47.  Dr. Evil is the campy criminal mastermind from *Austin Powers*—itself a spoof of the James Bond movies—and the comparison was clearly an attempt to parody rather than to convey actual facts about Murray.  The fact that such caricature might make Murray an object "of scorn and ridicule," *Hustler*, 485 U.S. at 54, does not vitiate the constitutional protection, *id.* at 51.

Similarly, Plaintiff cannot state a claim for defamation simply because the program had an actor dress up as a squirrel and virtually present Murray with a check made out to "Eat shit, Bob!"  Compl. ¶ 51.  While the segment may have mocked Murray, no reasonable viewer could have understood the expression "Eat shit, Bob!" to convey any facts about Murray.  It was a comedic button at the end of a story about a matter of public interest that receives the fullest protection of the First Amendment.  *See Farah*, 736 F.3d at 540.

### 5.      Claims Brought by Corporate Plaintiffs Are Not Actionable.

The claims brought by the corporate Plaintiffs other than Murray Energy fail for the additional reason that they have not plausibly alleged that the segment concerned them at all.  *See Rosenblatt v. Baer*, 383 U.S. 75, 81-82 (1966); *Crump*, 320 S.E.2d at 77.  They make only

the conclusory assertion that "the public equates the mining business of each Plaintiff with Mr. Murray."  Compl. ¶ 10.  But even if the corporate Plaintiffs indirectly suffered damages from a television program involving *Murray*, they do not have a legally cognizable defamation claim unless they can show the program also was of and concerning them.  *See, e.g.*, *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990).[8]

   **B.    Plaintiffs Cannot Demonstrate Irreparable Injury.**

   Plaintiffs also fail to make the required clear showing that they likely will suffer irreparable harm in the absence of an injunction.  First, Plaintiffs must establish that the irreparable harm they will suffer absent an injunction is "neither remote nor speculative, but actual and imminent."  *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).  But Plaintiffs' explanation for how an injunction will spare them from irreparable harm is fatally speculative because it depends upon acts by third parties supposedly inspired by Oliver— the so-called "John Oliver Effect."  TRO at 2-3.  To support this connection, Plaintiffs point to two specific instances in the past when Oliver encouraged viewers to take political action:  once by writing comments to the Federal Communications Commission and once by editing the Wikipedia pages of members of the House of Representatives.  TRO at 5-6.  Those two instances are an insufficient basis on which to tie any act by any third party relating to a topic covered on an episode of *Last Week Tonight* to Oliver or to the other Defendants.  The Defendants simply cannot be held responsible for the unpredictable acts of third parties.

---

[8] The false light and intentional infliction claims brought by the corporate Plaintiffs fail for the additional reason that these claims can only be brought by natural persons.  *See Chamberlaine & Flowers, Inc. v. Smith Contracting, Inc.*, 341 S.E.2d 414, 417 (W. Va. 1986); *Susko v. Cox Enters., Inc.*, No. 07-CV-144, 2008 WL 4279673, at *5 (N.D. W. Va. Sept. 16, 2008).

And critically, Plaintiffs do not, because they cannot, point to any encouragement by Oliver to take action against Plaintiffs in this case.  Thus, it is pure speculation that, absent an injunction, Plaintiffs will be harmed irreparably by conduct attributable to Defendants.  Put another way, Plaintiffs have pointed to no evidence that the injunction they seek will prevent them from suffering harm.  *See, e.g.*, *Stand Together Against Neighborhood Decay, Inc. v. Bd. of Estimate of City of N.Y.*, 690 F. Supp. 1192, 1200 (E.D.N.Y. 1988).  Indeed, the third-party acts complained about by Plaintiffs would not be enjoined even if Plaintiffs receive the relief they seek.

Second, even if Plaintiffs' theory of irreparable harm were not speculative, the law in the Fourth Circuit and West Virginia is that money damages provide an adequate remedy for defamation claims.  *See Alberti*, 383 F.2d at 272; *Kwass*, 81 S.E.2d at 243.  Plaintiffs have done nothing to justify a departure from this general rule against injunctions in defamation cases.  Plaintiffs' authority is scant, and none suggests that reputational harm or a decline in health is "irreparable harm" necessary to impose a preliminary injunction in a defamation case.  *See, e.g.*, *West Virginia ex rel. McCaffery v. Hutchison*, 585 S.E.2d 52, 70-71 (W. Va. 2003) (holding, in mass tort litigation, that the court could use its equitable powers to establish a medical monitoring program); *Parker Paint*, 105 S.E. at 911 (alleging tortious interference with contracts, not defamation); *Medford v. Levy*, 8 S.E. 302, 308 (W. Va. 1888) (alleging nuisance,

not defamation).[9]  Instead, Plaintiffs proffer only authorities that are distinguishable or irrelevant, involving claims other than defamation[10] and cases that are factually distinct.[11]

The Court should deny Plaintiffs' TRO because their theory of irreparable harm is speculative and unprecedented in both the Fourth Circuit and West Virginia.

### C.    The Balance of Equities and the Public's Interest Both Weigh Against Granting Plaintiffs' Motion.

On the other hand, an injunction in this case would be an egregious violation of Defendants' First Amendment rights, resulting in incompensable harm to them.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74; *Davis*, 510 U.S. at 1317 ("Where a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment." (ellipsis omitted)).  Thus, the balance of equities here is completely disproportionate between harm to Plaintiffs, which is adequately compensated with monetary damages, *Kwass*, 81 S.E.2d at 243, and harm to

---

[9] Additionally, Plaintiffs' TRO quotes from the Note following the court's opinion in *Medford v. Levy*, rather than any language in the opinion itself, which is decidedly more dismissive of the health-related arguments raised by the plaintiffs.  8 S.E. at 306-07.

[10] *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 406 (2d Cir. 2004) (Lanham Act, trespass to chattels, and contract claims); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 731-32 (S.D.N.Y. 1978) (New York statutory right to privacy and common law right of publicity claims); *Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*, 844 N.Y.S.2d 600, 605-06 (Sup. Ct., Suffolk Cty. 2007) (doctrine of emblements); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (patent infringement).

[11] *See, e.g.*, *Rodriguez v. Nat'l Freight, Inc.*, 5 F. Supp. 3d 725, 729-30 (M.D. Pa. 2014) (determining plaintiff likely to succeed on other claims in addition to defamation); *Mercy Health Servs. v. 1199 Health & Human Servs. Emps. Union*, 888 F. Supp. 828 (W.D. Mich. 1995) (finding commercial speech, and noting the particularly vulnerable elderly audience, along with the peculiar interest of a hospital in its reputation).

24

Defendants, which is per se irreparable, *Elrod*, 427 U.S. at 373-74.  This balance is dispositive with respect to a request for a temporary restraining order at the outset of a case.

The public interest also weighs against an injunction.  Plaintiffs' reliance on the so-called "John Oliver Effect" is no more than a dressed-up version of the "Heckler's Veto," which the Fourth Circuit has described as "one of the most persistent and insidious threats to first amendment rights."  *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir. 1985).[12]  Imposing an injunction restraining Defendants' speech prior to adjudication of the case because of acts by third parties unquestionably would have a chilling effect on future protected speech.  The effects that any speech may have on third parties can be speculative and unpredictable, and therefore would force future speakers to "steer far wider" of the danger zone.  *See Speiser v. Randall*, 357 U.S. 513, 526 (1958).  This potential chilling effect on speech is an independent harm that further justifies denying Plaintiffs' TRO.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

Dated: July 21, 2017                                   Respectfully submitted,


By:   */s/ Robert P. Fitzsimmons*_____

---

[12] Plaintiffs mischaracterize the *Time* and *Fortune* articles they rely on to support the "John Oliver Effect."  Those articles are about how Oliver inspires social and political change, not vigilantism as they suggest.  TRO at 5.

25

Robert P. Fitzsimmons, Esq.
W. Va. State Bar I.D. #1212
Clayton J. Fitzsimmons, Esq.
W. Va. State Bar I.D. #10823
FITZSIMMONS LAW FIRM PLLC
1609 Warwood Avenue
Wheeling, WV  26003
Phone:  (304) 277-1700
Fax:  (304)277-1705
E-mail:  bob@fitzsimmonsfirm.com

Kevin T. Baine (*pro hac vice*)
Thomas G. Hentoff  (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, D.C.  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
kbaine@wc.com
thentoff@wc.com

*Attorneys for Defendants Partially Important
Productions, LLC, HBO, Inc., and Time Warner Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that this 21st day of July, 2017, I caused a copy of the foregoing to be electronically

filed using the CM/ECF system.  Electronic notice of this filing will be provided via CM/ECF to

counsel for Plaintiffs:

> Jeffrey A. Grove, Esq. (#6065)
> David L. Delk, Jr., Esq. (#6883)
> GROVE, HOLMSTRAND & DELK, PLLC
> 44 1/2 15th Street
> Wheeling, WV 26003

> /s/ Robert P. Fitzsimmons
> Robert P. Fitzsimmons, Esq.
> W. Va. State Bar I.D. #1212
> FITZSIMMONS LAW FIRM PLLC
> 1609 Warwood Avenue
> Wheeling, WV  26003
> Phone:  (304) 277-1700
> Fax:  (304)277-1705
> E-mail:  bob@fitzsimmonsfirm.com

27