IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY,  MURRAY ENERGY CORPORATION,  and ROBERT E. MURRAY,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER, INC., and DOES 1 through 10,<br><br>    Defendants. | Civil Action No.: 5:17-CV-99<br><br>Judge John Preston Bailey<br><br><br>CIVIL ACTION NO. 17-C-124<br><br>Judge Cramer<br>(Marshall County Circuit Court) |

**PLAINTIFFS' REPLY IN SUPPORT
OF THEIR MOTION TO REMAND**

**I.      INTRODUCTION**

Less than a week before a scheduled hearing in state court on Plaintiffs' motion for a temporary restraining order, Defendants attempted to invoke this Court's jurisdiction and removed this case on the basis of supposed fraudulent joinder of four plaintiffs.  Now, however, with the scheduled date of that hearing and several additional weeks having passed, Defendants have abandoned any effort to address the one issue that governs whether their removal of this case was appropriate, or even had any reasonable basis.  Defendants have retreated from any discussion of this issue even though it forms the primary basis of the claims of each of the four non-diverse Plaintiffs.  That is, nowhere have Defendants made any mention of whether false statements that the CEO of a coal company lied about the cause of death of coal miners who died while working for his organization reflect upon the coal mining business of that company.

1

Despite the prominence of that controlling issue – the core focus of Plaintiffs' motion to remand – Defendants have ignored it in their brief.  Defendants know that they cannot in good faith contend that false statements that the CEO of a company lied about the cause of death of coal mining employees killed while working for his organization somehow do not reflect upon that company's coal mining business.  So, rather than concede the obvious, and thereby effectively consent to remand, Defendants instead pretend that their false statements are not about the life and death of employees.  Indeed, Defendants meticulously omit from their entire brief any mention that six Murray Energy miners and three rescue workers died at The Crandall Canyon Mine in Utah.

And, to further avoid the issue, Defendants also pretend that the non-diverse Plaintiffs base their claims on the mere assertion that "defamatory statements about corporate executives are also generally applicable to their corporations." Def's Mem. [Doc. No. 13] at 1.  While such an assertion could of course be easily defeated if it was actually raised, Plaintiffs never contended anything of the sort.  Nor is there any room for Defendants to genuinely have had the mistaken belief that Plaintiffs were ever suggesting the foolish contention that defamatory statements about executives are generally applicable to their corporations.  The absurdity of that supposed argument aside, it could not have been more clear to Defendants that Plaintiffs contended no such thing.  That is because Plaintiffs  (unacknowledged by Defendants) specifically relied upon the same language from the same section of the same treatise that Defendants identify as the correct standard (and Plaintiffs quoted that language twice).  *See* Pl. Remand Mem. at 2 & 9 (quoting  Restatement (Second) of Torts § 561 cmt. on cl. (a) (Am. Law Inst. 1977) for proposition that communications about an officer can defame the corporation if

"they also reflect discredit upon the method by which the corporation conducts its business"); *see also* Def's Mem. at 18 (same).

As obvious as Defendants are making it that they are ducking the central issue in the case, they nevertheless say nothing about whether false statements that a CEO of a company lied about the cause of death of coal miners who died while working for his organization reflect discredit upon the coal mining business of that company. In their opening brief, Plaintiffs boldly contended that this "reflect discredit" principle of defamation law, which renders all the corporate Plaintiffs proper parties, is "indisputable." Pl. Mem. at 2. By failing to even address, much less dispute, that principle as it applies to the corporate Plaintiffs' actual claims, Defendants have confirmed that they also cannot meaningfully dispute that all the corporate Plaintiffs are proper parties, or that there was no fraudulent joinder.

Given that Defendants could not even address Plaintiffs' actual claims in their brief opposing remand, they did not have an objectively reasonable basis to remove this case. As such, not only is remand required, but Defendants should pay Plaintiffs' costs and fees for this motion.

## II. REMAND IS REQUIRED.

By avoiding any discussion in their brief of the one issue that matters most – and that was squarely and repeatedly presented to them as the principal basis of the non-diverse Plaintiffs' claims – Defendants have confirmed that they cannot justify removal of this case. Moreover, even apart from that primary grounding for the claims of the non-diverse Plaintiffs, they also have a right to relief based on a second fundamental principle, the group libel doctrine. Plus, the Defendants' efforts to attempt to escape the application of the universally accepted mutual defenses doctrine only underlines their desperation.

### A. By Refusing To Address The Obvious And Controlling Issue That Was Repeatedly Highlighted For Them, Defendants Concede They Have No Justification For Removal.

In their short thirteen-page remand brief, Plaintiffs focused primarily on a single issue that Defendants ignored in the entirety of their twenty-five page response.

Plaintiffs could not have been more clear in their remand brief that the main basis for the non-diverse Plaintiffs' claims is that the false statements that the CEO of those Plaintiffs lied about the deaths of employees killed during the line of work reflect discredit on the business of those corporate Plaintiffs. Over and over, Plaintiffs emphasized the "reflect discredit" principal of defamation law. *See, e.g.*, Pl's Mem. at 2 ("the legal proposition that communications about the officer of a company can defame the corporation if they reflect discredit upon it, is not some attempt to creatively extend the outer reaches of liability. To the contrary, it is a fundamental tenet long ingrained in the law of defamation."); *see also id.* ("'communications defamatory of its officers, agents or stockholders' also defame the corporation if 'they also reflect discredit upon the method by which the corporation conducts its business.'") (quoting Restatement (Second) of Torts § 561 cmt. on cl. (a) (Am. Law Inst. 1977)); *id.* at 9 ("'communications defamatory of its officers, agents or stockholders'" also defame the corporation if "'they also reflect discredit upon the method by which the corporation conducts its business.'") (quoting Restatement § 561 cmt. on cl. (a)); *id.* ("'an accusation of misconduct on the part of corporate officers when acting as and for the corporation, which discredits the corporation in its trade or business, is defamation against the corporation.'") (quoting 53 C.J.S. Libel and Slander; Injurious Falsehood § 60 (2017 Update)).

And again and again, Plaintiffs also underscored that false statements that the CEO of a company lied about the cause of death of employees killed while performing their job duties for

his organization reflect discredit on the company. *See, e.g.*, Pl's Mem. at 11 ("Defendant not only has accused Mr. Murray of professional misconduct involving dishonesty, it is a false accusation of dishonesty about Murray Energy mining operations, and the death of Murray Energy employees in their line of work for the Murray Energy organization."); *id.* ("Those defamatory statements falsely conveying that Mr. Murray is dishonest and lies about employee safety, therefore, reflect discredit upon the method by which the Plaintiffs do business."); *see also id.* at 5-6 ("Defendants falsely implied that Mr. Murray not only lied about the cause of that tragic mine collapse, but that he had no evidence to support his statements that an earthquake triggered the collapse. . . These Defamatory Statements about disregarding safety for profit and making baseless misrepresentations about employee deaths 'reflect discredit upon the methods by which Plaintiffs do business.'"); *id.* at 9 ("to constitute defamation of the company, it is not necessary that such defamatory comments about its executive – such as that he allegedly lied, without any supporting evidence, about the cause of death of employees who were killed during the line of work – concern such a serious matter to the corporation and its people as is at issue here.").

Despite the fact that the non-diverse Plaintiffs highlighted the chief basis for their claims, repeatedly and extensively making it the focal point of their brief, it was addressed by Defendants – not at all.  Through the use of two key tactics, Defendants avoided any discussion of whether false statements that the CEO of a company lied about the deaths of his organization's employees killed during the line of work reflect discredit upon the company.

First, Defendants carefully omitted from their brief any reference to the tragic deaths that occurred as a result of the collapse of the Crandall Canyon Mine.  Defendants do not even mention in their brief that anyone died, much less acknowledge that it was coal mining

5

employees of the Murray Energy organization that were killed. In this way, Defendants sidestepped having to confront an impossible task. They evaded having to try to argue in good faith that false statements about a CEO supposedly lying and trying to cover up the true cause of death of his coal mining employees who died in the line of duty for his organization somehow do not reflect on the business of the coal mining companies that he runs within that organization.

Second, since Defendants were filing a response brief and therefore had to respond to something, they simply made up an argument and pretended that Plaintiffs raised it. In this regard, Defendants state that "In the context of corporations, the rule is not, as Plaintiffs assert, that defamatory statements about corporate executives are also generally applicable to their corporations." Def's Mem. at 17-18. Plaintiffs, of course, never asserted anything like that.[1] What is more, Defendants cannot reasonably claim to be genuinely mistaken about what Plaintiffs actually did argue. That is because Plaintiffs, in setting forth the "reflect discredit" standard, not only quoted the same language from the same treatise as Defendants, but Plaintiffs quoted that very same language twice (and then repeatedly, throughout their brief, used the "reflect discredit" test to show that the non-diverse Plaintiffs are proper parties). *See* Pl's Mem. at 2, 5-6, 9 & 11. By feigning ignorance of the point that Plaintiffs made so conspicuously and repeatedly, therefore, Defendants have confirmed that they have no legitimate response.

On top of all that, Defendants also further mischaracterize Plaintiffs' allegations, reinforcing that Defendants have no basis to challenge the non-diverse Plaintiffs' claims as they are actually pled. Defendants contend that "The bare assertion that 'the public equates the

---

[1] The four cases Defendants cite effectively rejecting this irrelevant proposition (that Plaintiffs never made) are likewise irrelevant. *See* Def's Mem. at 18 (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398-99 (2d Cir. 2006); *Eyal v. Helen Broad. Corp.*, 583 N.E.2d 228, 232-33 (Mass. 1991); *Affrex, Ltd. v. Gen. Elec. Co.*, 555 N.Y.S.2d 903, 904-05 (App. Div. 1990); *Cohn v. NBC*, 414 N.Y.S.2d 906, 909 (App. Div. 1979). Similarly, the cases Defendants cite where the plaintiffs give no indication as to why the non-diverse parties are in the case but simply rely on "collective allegations" also have no bearing here. *See* Def's Mem. at 17 (citing cases concerning insufficiency of mere "collective allegations.").

10310172 v1

mining business of each Plaintiff with Mr. Murray,' Compl. ¶ 10, is simply not enough to establish that each statement about Murray was also about the business of each of his companies." Def. Mem. at 19. Plaintiffs, however, alleged much more than that. Plaintiffs also explained why the public equates the mining business of each corporate Plaintiff (including the non-diverse Plaintiffs) with Mr. Murray. Mr. Murray is the President, CEO, and Sole Director of each of those Plaintiffs. *See* Pl.'s Mem. at 6 (citing Compl. ¶ 7). In addition, Mr. Murray is also listed by the Mine Safety and Health Administration as the "Current Operator" for all the mines owned by those Plaintiffs. *Id.* Furthermore, those Plaintiffs, along with the other corporate Plaintiffs and their affiliates, comprise an organization that is known as "Murray Energy." *Id.* (citing Compl. ¶ 16). As such, the non-diverse Plaintiffs are clearly proper parties not just because false statements about their CEO lying about the deaths of coal miners killed while working for his organization reflect discredit on their coal mining business. Rather, it is also all the more obvious that they are proper parties because the discredit to their business from those false statements about their CEO is made even more evident by the fact that he is officially designated as the "Current Operator" of each of their coal mines and because they are part of an organization that bears his name.

In the end, to constitute proper parties, the non-diverse Plaintiffs need only a "glimmer of hope" of "a slight possibility of a right to relief." *Hartley v. CSX Trasp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). Here, the non-diverse Plaintiffs' claims plainly afford them such an unmistakable right to relief that the Defendants cannot even contest those claims as they are actually alleged.

Defendants' removal of this case was therefore inappropriate and remand is required.

### B.  In Addition To That Primary And Uncontested Basis, The Non-Diverse Plaintiffs Also Have Another Fundamental Principle Grounding Their Claims.

Although the non-diverse Plaintiffs have already demonstrated that they have a far higher likelihood of a right to relief than is necessary for them to qualify as competent parties, it bears mentioning that they also have an additional well-established basis on which to seek relief – the group libel doctrine.  Here again, Defendants' efforts to distort the non-diverse Plaintiffs' claims accentuates that Defendants cannot confront those claims as they are actually pled.

As if Plaintiffs were making such an argument, Defendants contend that it is not "enough" that the non-diverse Plaintiffs "are all part of the same corporate family."  Def's Mem. at 19.  Of course that alone would not be enough.  But it is also undeniably the law that "One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if, (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *Evans v. Chalmers*, 703 F.3d 636, 659-60 (4th Cir. 2012) (Wlkinson, J. concurring) (quoting Restatement (Second) of Torts § 564A (American Law Inst. 1977)).  Notwithstanding that this exact principle and these authorities were quoted in Plaintiffs' Brief,[2] Defendants do not mention, much less discuss, either *Evans v. Chalmers* or that section of the Restatement, in their response brief.

And Defendant cites no cases contradicting the primary principle that follows from *Evans v. Chalmers* and § 564A of the Restatement, which is that defamation of a group constitutes defamation of a member of that group if there are only roughly twenty-five or so members.[3]  Nor

---

[2] Pl.'s Mem. at 11-12.
[3] Restatement (Second) of Torts § 564A (American Law Inst. 1977) (example of group with 25 members). The cases Defendants cite involving massive global enterprises with diverse businesses or hundreds of entities are inapposite.  *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1090-91 (D.C. Cir. 2007)

10310172 v1

do Defendants acknowledge Plaintiffs' allegation that the non-diverse Plaintiffs, along with the other corporate Plaintiffs, "are part of a group that is known as 'Murray Energy.'" Pl.'s Mem. at 11 (quoting Compl. ¶ 16). And, while Defendants admit that John Oliver spoke of "Murray Energy," Def's Mem. at 21, Defendants fail to address the key aspects of the cases cited by Plaintiffs in which courts allowed multiple companies known by a group name to pursue defamation claims based on statements referencing that name. *See Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 170 & 176 (W.D. N.Y. 2003) (various limited partnerships and limited liability companies allowed to pursue defamation claims based on statements referring to "Promedicus" where those entities were affiliated with the same health group); *see also Conseco Group Risk Management Co. v. Ahrens Fin. Systems, Inc.*, 2001 WL 219627, at **9-10 (N.D. Ill. March 6, 2001) (defamatory statements regarding "Conseco" applied to a group of three different corporate entities in the same organization).

Therefore, for this separate and independent reason as well, the non-diverse Plaintiffs are proper parties and remand is required.

> **C.    Defendants' Efforts To Dodge The Application Of The Universally Accepted Mutual Defenses Doctrine Underscores That They Are Grasping At Straws.**

On several levels, Defendants' attempt to avoid the mutual defenses doctrine in order to try to apply the fair report privilege to certain allegations about a bonus program reinforces that they have no legitimate justification for removal.

First, the mutual defenses doctrine – the principle that the fraudulent joinder analysis cannot involve consideration of defenses that apply equally to "diverse and non-diverse" parties alike – is both inherently logical and universally accepted. *See McDowell Pharmacy, Inc. v.*

---

(massive global enterprise involving diverse businesses); *see also Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1161 (S.D.N.Y. 1992) (hundreds of entities). So too, the case involving entities that are not part of the same organization is also irrelevant. *See Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1016 (3d Cir. 1994) (entities not part of any cohesive organization).

10310172 v1

*West Virginia CVS Pharmacy, L.L.C.*, 2012 WL 2192167, at *5 (S.D. W.V. June 14, 2012) ("The court has found no circuits that have rejected the common defense rule when squarely presented with it"). Defendants are relegated to arguing that *Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015) eradicated the doctrine in this Circuit, sub silentio, and against the authority of every other Circuit to address it. *See* Def's Mem. at 13. That simply cannot be, as the mutual defenses doctrine was never even raised or mentioned in *Johnson*,[4] and the Fourth Circuit has mandated that "Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed." *U.S. v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016). The mutual defense doctrine therefore applies here, just as it does everywhere else. Indeed, it has been recognized after *Johnson* that "No circuit has rejected the mutual defenses doctrine when squarely presented with it." *Powers v. Wireless Horizon, Inc.*, 2017 WL 550581, at *7 (E.D. Mo. Feb. 10, 2017).

As such, Defendants' citation to a blog on the internet notwithstanding,[5] Defendants' attempt to apply the fair report privilege to certain allegations about a bonus program is invalid under the mutual defenses doctrine because that defense is equally applicable to the diverse and non-diverse parties alike. *See, e.g.*, *Grinston v. Cypress Media, LLC*, 2011 WL 833969, at *3 (S.D. Ill. Feb. 21, 2011) (holding that mutual defense rule barred application of fair report privilege to fraudulent joinder analysis because that defense applies to "diverse and non-diverse" parties "alike").

Second, even if the mutual defenses doctrine somehow did not bar consideration of the fair report privilege in the fraudulent joinder analysis, the fair report privilege would not apply anyway to the relevant allegations about the bonus program. By definition, the fair report

---

[4] *Brief of Appellants, Johnson v. American Towers*, 2013 WL 5402286 (Sept. 27, 2013).
[5] *See* Def's Mem. at 14 (citing blogger's view of *Johnson*).

10

privilege applies only to reports of government actions or proceedings, it does not cover "any matter added to the report." *Tharp v. Media General, Inc.*, 2011 WL 13142634, at *2 (D. S.C. Oct. 21, 2011) (citation omitted); *see Horne v. WTVR, LLC*, 2017 WL 1330200, at *5 (E.D. Va. April 6, 2016) (fair report privilege did not apply because the defendant "did more than simply report what" was said by the government).

Here, the defamatory statement about the bonus program is that "A few years back, Murray proposed a program where miners could receive bonuses based on the amount of coal they extracted." *See* Ex. 2 to Def's Mem. at 22:11 to 22:17. That statement is not protected by the fair report privilege because nowhere in the NLRB decision does it say that Mr. Murray proposed a bonus program, let alone one where miners could receive bonuses based on the amount of coal they extracted. *See* Ex. 5. And, that statement is defamatory because, as explained in Plaintiffs' remand brief, Defendants never broadcasted that this program was at all times predicated on safety compliance *and* performance measures. *See* Pl's Mem. at 4 (citing Compl. ¶ 49). Indeed, Defendants omitted that the very title of the bonus program was the "*Safety* and Production Bonus Plan." *Id.* at 5. And Defendants failed to state that employees found violating safety standards would face automatic disqualification from receiving bonuses under the program. *Id.* Plaintiffs simply did not base their claims on the facts Defendants summarized from the NLRB proceeding (i.e., that miners rejected a bonus program, sixty-two of them voided their checks and a couple wrote vulgar messages on them, *see* Def's Mem. at 23). As such, the fair report privilege would have no bearing even if its application were not barred by the mutual defenses doctrine.

Third, even if consideration of the fair report privilege were not barred by the mutual defenses doctrine, and even assuming it applied to the allegations about the bonus program, it

11

would still be essentially irrelevant to whether the non-diverse Plaintiffs were fraudulently joined. As Defendants themselves admit, they are in any event arguing that the fair report privilege applies to a "single paragraph in the Complaint." Def's Mem. at 23. And that solitary paragraph concerns solely a bonus program, and has nothing to do with the primary basis of the non-diverse Plaintiffs' claims, the false statements that their CEO lied about the true cause of death of his coal miner employees that were killed while working for his organization.

That Defendants would argue that the Fourth Circuit silently eradicated a universally accepted doctrine barring consideration of a defense where the defense would not be applicable anyway, and even if it did apply, would only pertain to one paragraph of the complaint, further demonstrates that they have no justification for removal.

## III. DEFENDANTS' SHOULD PAY PLAINTIFFS' COSTS AND FEES.

Perhaps recognizing that an award of fees and costs is warranted here given that they have no "objectively reasonable basis for seeking removal,"[6] Defendants argue that Plaintiffs have waived their right to fees and costs by requesting them in their remand motion and not separately arguing for them in their memorandum. *See* Def's Mem. at 24. But this contention by Defendants is just as baseless as their removal. The sole case they cite in supposed support of their waiver argument, *dPi Teleconnect LLC v. Owens*, 413 F. App'x 641, 646 (4th Cir. 2011), had nothing to do with removal or the district court's power to decide whether to award fees on remand and concerned only the question of when an issue is waived on an appeal to the Fourth Circuit.[7] That is a critical difference because an award of attorneys' fees on remand is a

---

[6] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

[7] Moreover, there was a waiver in *dPi Teleconnect* because there was no argument on an issue in that appeal in either the opening brief or on reply. *See id.* at 646. Plaintiffs, of course, are expressly arguing in their reply brief, and are addressing the relevant question – whether Defendants had an objectively reasonable basis for removal – at the logical time, after Defendants have had the opportunity to fully set forth their bases for removal in their memorandum.

12

collateral issue that can be addressed not only where it is not argued in the remand papers, but can indeed be raised by a separate motion in the district court – even after the case has already been remanded to state court. *See Stallworth v. Greater Cleveland Regional Transit Authority*, 105 F.3d 252, 255-57 (6th Cir. 1997) (holding district court could issue an award of fees and costs on a motion filed after remand). There is, therefore, no waiver.

     As discussed more fully above, Defendants have demonstrated that they had no objectively reasonable basis for removal because they have not even been able to address the actual claims made by the non-diverse Plaintiffs. With no legitimate justification for removal, and no alternative short of consenting to remand, Defendants have been forced to pretend that Plaintiffs have taken positions they never did. What is more, when the non-diverse Plaintiffs' actual claims are considered, fundamental and well-established principles dictate that they are proper parties. The non-diverse Plaintiffs obviously have far more than the glimmer of hope of a slight possibility of relief that is itself sufficient to show that removal was improper, and an award of their fees and costs is therefore appropriate. *See, e.g.*, *Loudin v. J.P. Morgan Trust Co.*, 481 B.R. 388, 396 (S.D. W.Va. 2012) (granting fees and costs because Defendant's only argument for removal was unreasonable); *see also Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 529-30 (S.D. W.Va. 2011) (granting fees and costs and explaining that "The purpose of awarding attorneys' fees upon remand is to reimburse a party for the costs associated with responding to an improper removal.") (citation omitted).

     This is especially so because, not only are the non-diverse Plaintiffs' claims based on longstanding principles of defamation law, but Defendants had to know this because they share certain of the same outside counsel representing the New York Times in *The Marshall County*

13

*Coal Co., et. al, v. The New York Times Co.*[8] At the time they removed, Defendants knew from the briefing in the New York Times case that the claims of the corporate Plaintiffs here – the same as those that have filed suit in the New York Times case – are grounded in firmly established tenets of defamation law.  What is more, Defendants also knew that the non-diverse Plaintiffs did not sue in this case to defeat diversity, as those same Plaintiffs had just sued the New York Times in that case where they were completely diverse and the matter was removed without objection.  Defendants have no real response to this point in their brief opposing remand, stating in one breath that the non-diverse Plaintiffs were joined "for the sole purpose of defeating diversity jurisdiction" and then undercutting their own assertion with the statement that "it is unnecessary to consider all of Plaintiffs' potential motives."  Def's Mem. at 3 & 9 n.5.

On top of the fact that Defendants must have known removal was inappropriate, given that Defendants also filed their improper notice of removal less than a week before the scheduled hearing on Plaintiffs' motion for a temporary restraining order, an award of fees and costs is all the more warranted.

### IV.   CONCLUSION

Plaintiffs motion to remand should be granted, with an award of the requested fees and costs.

---

[8] 5:17-cv-79 (N.D. W. Va. (filed May 3, 2017).

Dated: July 28, 2017                                    Respectfully submitted,

<p style="margin-left:40%">
<u>/s/ Jeffrey A. Grove</u><br>
Of Counsel for Plaintiff
</p>

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961
(304) 905-8628 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE MONONGALIA COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, MURRAY ENERGY CORPORATION, and ROBERT E. MURRAY, | Civil Action No.: 5:17-CV-99 |
| | Judge John Preston Bailey |
| **Plaintiffs,** | |
| v. | CIVIL ACTION NO. 17-C-124 |
| JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER, INC., and DOES 1 through 10, | Judge Cramer (Marshall County Circuit Court) |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Service of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO REMAND** was electronically filed with the Clerk of this Court on the 28th day of July, 2017, by using the CM/ECF system who shall provide electronic notice of such filing to the following:

Robert P. Fitzsimmons, Esq.
W. Va. State Bar I.D. #1212
Clayton J. Fitzsimmons, Esq.
W. Va. State Bar I.D. #10823
FITZSIMMONS LAW FIRM, PLLC
1609 Warwood Avenue
Wheeling, WV 26003
**(Counsel for Home Box Office, Inc.)**

                    /s/ Jeffrey A. Grove
                    Of Counsel for Plaintiffs

Jeffrey A. Grove, Esq. (#6065)
David L. Delk, Jr., Esq. (#6883)
GROVE, HOLMSTRAND & DELK, PLLC
44 1/2 15th Street
Wheeling, WV 26003
(304) 905-1961 / (304) 905-8628 (facsimile)

10310172 v1