**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE MARSHALL COUNTY COAL COMPANY, THE MARION COUNTY COAL COMPANY, THE HARRISON COUNTY COAL COMPANY, THE OHIO COUNTY COAL COMPANY, MURRAY ENERGY CORPORATION, and ROBERT E. MURRAY, | Civil Action No: 17-cv-00099  Hon. John P. Bailey |

Plaintiffs,

v.

JOHN OLIVER, CHARLES WILSON, PARTIALLY IMPORTANT PRODUCTIONS, LLC, HOME BOX OFFICE, INC., TIME WARNER INC., AND DOES 1through 10,

Defendants.

**BRIEF AMICUS CURIAE OF THE AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND IN SUPPORT OF DISMISSAL AND RULE 11 SANCTIONS**

## TABLE OF CONTENTS

I.   Interest of Amicus Curiae & Required Disclosures. ............................................... 1

II.   A Brief History of Plaintiffs' Attempts to Chill Speech by Abusing the Legal System. .... 1

  A.   Plaintiffs Frequently Abuse the Legal System to Attack Protected Speech. ...................... 2

  B.   The Ridiculous Case at Hand. ............................................................................... 2

III.   Anyone Can Legally Say "Eat Shit, Bob!" ........................................................... 5

  A.   Plaintiffs' Motion for a Temporary Restraining Order is Ridiculous. Courts Can't Tell Media Companies How to Report, Bob. .................................................................... 5

    1.   All of John Oliver's Speech Was Protected by the First Amendment. You Can't Sue People for Being Mean to You, Bob. ....................................................................... 5

    2.   Plaintiff's Requested Injunction is Clearly Unconstitutional. You Can't Get a Court Order Telling the Press How to Cover Stories, Bob. .................................................... 8

  B.   The Court Should Dismiss This Action & Assess Sanctions. ......................................... 10

IV.   Conclusion ...................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*, 509 U.S. 544, 550 (1993) ................................................ 9

*Arrington v. Palmer*, 971 P.2d 669 (Colo. App. 1998)................................................ 6

*Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987)..................................................... 10

*Connick v. Myers*, 461 U.S. 138, 145 (1983)............................................................... 2

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 489–90 (1975)............................................ 6

*Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 699 (1984) ............................... 7

*Desert Sun Pub. Co. v. Superior Court*, 158 Cal. Rptr. 519, 521 (Ct. App. 1979)........ 8

*Doe v. Gonzales*, 386 F. Supp. 2d 66, 75 (D. Conn. 2005)............................................ 9

*FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978) .............................................. 7

*Fletcher v. San Jose Mercury News*, 264 Cal. Rptr. 699, 708 (Ct. App. 1989)............. 8

*Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) ...................................................... 6

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ....................................................... 6

*Hustler Magazine v. Falwell*, 485 U.S. 46, 51-52 (1988) ............................................ 8

*In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989)...................................... 9

*In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990) .................................................... 10

*Milkovich v. Lorain Journal*, 497 U.S. 1, 14, 16 (1990).............................................. 6

*Moore v. City of Kilgore*, 877 F.2d 364, 380 (5th Cir. 1989) ..................................... 10

*Murray Energy Holdings Co. v. Bloomberg*, No. 2:15-CV-2845 (S.D. Ohio June 17, 2016)........ 2

*Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422 (S.D. Ohio June 17, 2016)................................................................... 2

*Murray v. Chagrin Valley Publishing Co.*, 25 N.E.3d 1111 (Ohio Ct. App. 2014) ...................... 2

*Murray v. Knight-Ridder, Inc.*, No. 02 BE 45, 2004 WL 333250 (Ohio Ct. App. Feb. 18, 2004). 2

*Murray v. Moyers*, No. 2:14-CV-02334, 2015 WL 5626509 (S.D. Ohio Sept. 24, 2015) ............ 2

*Murray v. Tarley*, No. C2-01-693, 2002 WL 484537 (S.D. Ohio Feb. 21, 2002)........................ 2

*Murray v. The HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879 (S.D. Ohio 2014) ................... 2, 10

*Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971)....................................... 9

*Rankin v. McPherson*, 483 U.S. 378, 387 (1987) ........................................................ 7

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................... 8

*Street v. New York*, 394 U.S. 576, 592 (1969)............................................................ 7

*Texas v. Johnson*, 491 U.S. 397 (1988) ................................................................. 4, 7

**Other Authorities**

*Coal Operator Sues Beacon Journal Over Portrayal of Him in Article*, ATHENS NEWS, (Jan. 29, 2001),............................................................................................................... 7

Jonathan Peters, *A Coal Magnate's Latest Lawsuit Was Tossed—But Ohio Can Do More to Defend Free Expression*, Columbia Journalism Review (May 28, 2014),.................................. 2

Lauren Carroll, *In Context: Hillary Clinton's Comments About Coal Jobs*, Politifact (May 10, 2016),............................................................................................................... 3

Matthew Wisner, *Robert Murray on John Oliver: Radical Elitists' Broadcast Operative*, Fox News............................................................................................................................ 4
Mike Masnick, *Bob Murray's Lawsuit Against John Oliver Is Even Sillier Than We Expected*, Tech Dirt (June 23, 2017) ................................................................................................ 5
Pierre Pavia, *Dr Evil in 1 Million Dollars*, YOUTUBE, (Jul 11, 2008), ......................................... 7
*Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).............................................. 9
United States Census Bureau, *Quick Facts: West Virginia*,
   https://www.census.gov/quickfacts/WV (last visited Aug. 1, 2017) (estimating the West Virginia population to be approximately 1,831,102 as of July 1, 2016)................................... 9
*United States v. Playboy Entm't Group*, 529 U.S. 803, 818 (2000) ............................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 2
Federal Rule of Civil Procedure 29(a) ............................................................................................ 1

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................................ 1, 5
W. Va. Const. art. III, § 7.............................................................................................................. 1

**I.     Interest of Amicus Curiae & Required Disclosures.**

The ACLU-WV is a nonprofit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the United States Constitution, the West Virginia Constitution, and our nation's civil rights laws. The ACLU-WV has long been dedicated to protecting the freedom of speech enshrined in the First Amendment to the United State Constitution and Article III, Section 7 of the West Virginia Constitution. The ACLU-WV is requesting permission to file this brief in accordance with Federal Rule of Civil Procedure 29(a). This brief was authored by staff counsel for the ACLU-WV and no party, party's counsel, or other person authored any parts of the brief or contributed money intended to fund preparing or submitting the brief.

Plaintiffs are attempting to use this Court as vehicle to chill protected speech and silence the marketplace of ideas. For the following reasons, the American Civil Liberties Union of West Virginia Foundation ("ACLU-WV") respectfully requests the Court deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Pl.'s Mot.") [Docket 1-1] and issue an Order to Show Cause as to why this case should not be dismissed and Plaintiffs sanctioned.

**II.    A Brief History of Plaintiffs' Attempts to Chill Speech by Abusing the Legal System.**

This case is about Plaintiff Robert E. ("Bob") Murray not liking a television program and somehow believing that is a legally actionable offense. On June 18, 2017, Defendant Home Box Office, Inc. aired an episode of "Last Week Tonight with John Oliver," a satirical news program about current events. The main topic discussed in the episode was coal. Apparently because Plaintiffs' delicate sensibilities were offended, they clutched their pearls and filed this suit.

Although this brief pokes fun at the absurdity of this case, the legal issues raised by it are anything but comical. This lawsuit, and Plaintiffs' frequent attempts to use our legal system to chill speech, threaten the fundamental right of the media to criticize public figures and speak candidly on matters of public concern. Speech on a matter of public concern "occupies the highest

1

rung of the hierarchy of First Amendment values, and is entitled to speech protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

### A.  Plaintiffs Frequently Abuse the Legal System to Attack Protected Speech.

It is a basic concept of free speech that you do not get to sue media organizations because you don't like their coverage. However, this is apparently a difficult concept for Plaintiffs to grasp. It appears that Bob Murray's favorite hobby is suing and/or threatening to sue people for making political statements he disagrees with. *See Murray v. Tarley*, No. C2-01-693, 2002 WL 484537 (S.D. Ohio Feb. 21, 2002) (dismissing defamation action); *Murray v. Knight-Ridder, Inc.*, No. 02 BE 45, 2004 WL 333250 (Ohio Ct. App. Feb. 18, 2004) (same); *Murray v. The HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879 (S.D. Ohio 2014) (same); *Murray v. Chagrin Valley Publishing Co.*, 25 N.E.3d 1111 (Ohio Ct. App. 2014) (affirming dismissal); *Murray v. Moyers*, No. 2:14-CV-02334, 2015 WL 5626509 (S.D. Ohio Sept. 24, 2015) (dismissing defamation claim); *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422 (S.D. Ohio June 17, 2016) (same); *Murray Energy Holdings Co. v. Bloomberg*, No. 2:15-CV-2845 (S.D. Ohio June 17, 2016) (same); Jonathan Peters, A Coal Magnate's Latest Lawsuit Was Tossed—But Ohio Can Do More to Defend Free Expression, Columbia Journalism Review (May 28, 2014), http://archives.cjr.org/united_states_project/murray_energy_defamation_lawsuits_huffington_post.php). After this long list of losses in Ohio, it appears that Bob Murray has now decided to try his luck with abusing West Virginia's court system.

### B.  The Ridiculous Case at Hand.

Plaintiffs' claim does not come close to stating a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Among the myriad of entirely legal activities contained in Plaintiffs' petty list of grievances are the following:

- Defendants attempted "to advance their biases against the coal industry and their disdain for the coal-related policies of the Trump Administration." Compl. [Docket 1-1], at ¶ 3.

- Defendants "employed techniques designed solely to . . . embarrass Plaintiffs[.]" *Id.* at ¶ 5.

- "Defendants childishly demeaned and disparaged Bob Murray and his companies, made jokes about Bob Murray's age, health, and appearance, [and] made light of a tragic mining accident[.]" *Id.*

- "Defendants are persons and organizations fundamentally opposed to any revitalization of the coal industry, having described coal as 'environmentally catastrophic." *Id.* at ¶ 18.

- Defendant Time Warner "is widely reported as a top ten donor of Hillary Clinton[.]" *Id.*

- "As a presidential candidate, Mrs. Clinton's agenda was to 'put a lotta [sic] coal miners and coal companies outta [sic] business.'" *Id.*[1]

- "Defendants' broadcasts have vigorously supported and advanced Mrs. Clinton's agenda." *Id.* at ¶ 19.

- Instead of focusing on what Plaintiffs wanted him to talk about, Defendants "ignored them and 'doubled-down' . . . , ending their recorded broadcast with the phrases 'Eat Shit, Bob' and 'Kiss my ass, Bob.'" *Id.* at ¶ 21.

- "Defendants deliberately omitted the facts Plaintiffs provided regarding the Crandall Canyon Mine incident." *Id.* at 37.

- "Defendant Oliver quoted from the sweeping executive summary of [an] MSHA report, which obviously and grossly overstated the actual conclusions contained in the MSHA report, which Defendants easily would have seen upon a cursory review of the actual MSHA report." *Id.* at 40.

- "Defendants . . . aired a clip of congressional testimony of a relative of a former employee of Murray Energy that appeared to be dissatisfied with Bob Murray's handling of the Crandall Canyon Mine collapse[.]" *Id.* at ¶ 42.[2]

---

[1] Astoundingly, despite complaining that Last Week Tonight "quoted an out-of-context snippet from a single report[,]" (*see* Compl. [Docket 1-1], at ¶ 39), here Plaintiffs leave in only a small portion of a longer quote, in a seeming attempt to mislead the court and/or public. *Compare* Compl. [Docket 1-1], at ¶ 18 *with* Lauren Carroll, *In Context: Hillary Clinton's Comments About Coal Jobs*, POLITIFACT (May 10, 2016), http://www.politifact.com/truth-o-meter/article /2016/may/10/context-hillary-clintons-comments-about-coal-jobs/.

[2] Plaintiffs' allegation that Defendants should not have quoted directly from the conclusions of an official MSHA report or congressional testimony, the validity of which they do not dispute, is particularly outrageous.

- "[I]n reference to Bob Murray's denial of an absurd story that Bob Murray claimed a squirrel told him he should operate his own mines, Defendant Oliver stated 'You know what, I actually believe Murray on that one' and "Even by your standard, that would be a pretty ridiculous thing to say.'" *Id.* at ¶ 44.

- "Defendant Oliver . . . failed to mention, despite having the information, that Bob Murray has pioneered Emergency Response and Fire Suppression Training in the coal industry." *Id.* at ¶ 50.

- "Defendants [described] Bob Murray as someone who 'looks like a geriatric Dr. Evil' and arranging for a staff member to dress up in a squirrel costume and deliver the message "Eat Shit, Bob!" to Bob Murray. *Id.* at ¶ 51.

- "[A]fter the live taping, Defendant Oliver exclaimed to the audience that having someone in a squirrel costume tell Bob Murray to 'Eat Shit' was a 'dream come true.'"[3] *Id.* at ¶ 52.

- "Defendant Oliver stated 'Bob Murray, I didn't really plan for so much of this piece to be about you, but you kind of forced my hand on that one." *Id.* at ¶ 53.

What Plaintiffs apparently fail to realize is that, even if all of this is true, they do not allege Defendants did anything illegal. "The expressive, overtly political nature of this conduct was both intentional and overwhelmingly apparent." *Texas v. Johnson*, 491 U.S. 397, 406 (1988).

Ironically, the Complaint outrageously claims that Defendants "attacked [Bob Murray] in a forum in which he had no opportunity to defend himself, and so he has brought this suit to try to set the record straight." Compl. [Docket 1-1], at ¶ 2. In direct contravention to this claim, Plaintiff Murray Energy sent out a press release about the case the very day it was filed. *See* Def's Mem., Ex. F [Docket 14-7]. Two days later, Bob Murray was on national television calling John Oliver a "radical elitist." Matthew Wisner, *Robert Murray on John Oliver: Radical Elitists' Broadcast Operative*, FOX NEWS, http://www.foxbusiness.com/features/2017/06/23/robert-murray-on-john-oliver-radical-elitists-broadcast-operative.html. No other opportunity to defend himself, indeed.

---

[3] Everyone is allowed to have dreams.

The Complaint also interestingly claims that "nothing has ever stressed [Bob Murray] more than [John Oliver's] vicious and untruthful attack." Compl. [Docket 1-1], at ¶ 5. As one media outlet asked, "[I]s he really saying that a late night British comedian on a premium channel has caused him more stress than the time that one of his mines collapsed and killed a group of his employees? If so . . . that's . . . weird." Mike Masnick, *Bob Murray's Lawsuit Against John Oliver Is Even Sillier Than We Expected*, Tech Dirt (June 23, 2017), https://www.techdirt.com/articles/20170622/18172937648/bob-murrays-lawsuit-against-john-oliver-is-even-sillier-than-we-expected.shtml.

### III.   Anyone Can Legally Say "Eat Shit, Bob!"

This case is beyond meritless. It is offensive to the very ideals of free speech embodied in the First Amendment. The fact that Plaintiffs filed this case is ridiculous enough; but, to pour gasoline on the fire, plaintiffs' counsel has also filed a motion asking the court to make John Oliver not say mean things about him anymore. *See* Pl.'s Mot. [Docket 1-1]. It is frankly shocking that Plaintiffs were able to find attorneys willing to file a lawsuit that is so obviously unconstitutional.

It is apt that one of Plaintiffs' objections to the show is about a human-sized squirrell named Mr. Nutterbutter, because this case is nuts. Which also begs the question: is Mr. Nutterbutter one of the 50 Doe Defendants included in this action?

### A.   Plaintiffs' Motion for a Temporary Restraining Order is Ridiculous. Courts Can't Tell Media Companies How to Report, Bob.

#### 1.   All of John Oliver's Speech Was Protected by the First Amendment. You Can't Sue People for Being Mean to You, Bob.

Plaintiffs do not come close to stating an actionable claim. Defendants aired a broadcast about a matter of public concern that is undoubtedly protected by the First Amendment. It is axiomatic that "the First Amendment to the United States Constitution placed limits on the

application of the state law of defamation" and in particular on "the type of speech which may be the subject of state defamation actions." *Milkovich v. Lorain Journal*, 497 U.S. 1, 14, 16 (1990). The Complaint itself makes it clear that Defendants' speech was about matters of public concern, as it repeatedly alleges that Defendants' broadcast this episode to advance their political agenda. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). As such, Plaintiffs' must allege "actual malice" in order to maintain a claim for defamation. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 489–90 (1975).

As discussed above, "Last Week Tonight" is a satirical show about real news that uses comedy and strong language to make its points. The segment Plaintiffs object to begins with John Oliver referring to coal as, "Basically cocaine for Thomas the Tank Engine." *See* Unofficial Transcript, attached as Exhibit A, at 1. Additionally, Bob Murray objects to being compared to Dr. Evil, a comical villain in the Austin Powers movie series and Mr. Nutterbutter, the talking squirrel. Obviously, any "reasonable person would realize that such communications are the type of critical commentary typically filled with political innuendo and should not be taken at face value or viewed as a statement of fact." *Arrington v. Palmer*, 971 P.2d 669, 671-74 (Colo. App. 1998). Opinions, too, are protected speech, and "[u]nder the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974).

It is irrelevant that Bob Murray apparently finds this protected speech offensive. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive of disagreeable."

6

*Texas v. Johnson*, 491 U.S. 397, 414 (1989); *see also*, *e.g.*, *Street v. New York*, 394 U.S. 576, 592 (1969); *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). Indeed, "if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978). And with regard to the Dr. Evil remark,[4] it should be remembered that truth is an absolute defense to a claim of defamation. *E.g.* Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 699 (1984).



---

[4] It should be noted that the very *mean* comparison arose from both a striking physical resemblance between the two characters and a statement by Plaintiff's General Counsel with an uncanny similarity to statements made by a more youthful Dr. Evil. *Compare Coal Operator Sues Beacon Journal Over Portrayal of Him in Article*, ATHENS NEWS, (Jan. 29, 2001), https://www.athensnews.com/news/local/coal-operator-sues-beacon-journal-over-portrayal-of-him-in/article_24549e9b-de35-5b4c-b3c6-2ad29b33f694.html (Plaintiff's General Counsel noting that although he could not legally demand one billion dollars, the figure did reflect the potential damages of the article that gave rise to that suit—this can reasonably be interpreted to mean Plaintiff's General Counsel wanted to demand one billion dollars); *with* Pierre Pavia, *Dr Evil in 1 Million Dollars*, YOUTUBE, (Jul 11, 2008), https://www.youtube.com/watch?v=cKKHSAE1gIs (a young . . . er Dr. Evil demanding "one million dollars," "one hundred billion dollars," and "one billion gajillion fafillion shabadoodalooyim[inaudible]million yen").

The statements Plaintiffs point to are clearly not libelous—they are satire regarding a public figure regarding a matter of public concern. As a flamethrower himself, Bob Murray should not be shocked when his own fire occasionally inspires others to fire back. This is the very purpose of the marketplace of ideas. *See generally Snyder v. Phelps*, 562 U.S. 443 (2011).  The place to disagree on important matters of public concern is the court of public opinion, not United States District Court. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 51-52 (1988). As one court has noted, "[o]ne planning to engage in politics, American style, should remember the words credited to Harry S. Truman 'If you can't stand the heat, get out of the kitchen.'" *Desert Sun Pub. Co. v. Superior Court*, 158 Cal. Rptr. 519, 521 (Ct. App. 1979). *See also*, *e.g.*, *Fletcher v. San Jose Mercury News*, 264 Cal. Rptr. 699, 708 (Ct. App. 1989) (statements calling plaintiff a "crook" were "merely rhetorical and hyperbolic language" and not actionable); *Arrington*, 971 P.2d at 671-74.

## 2. Plaintiff's Requested Injunction is Clearly Unconstitutional. You Can't Get a Court Order Telling the Press How to Cover Stories, Bob.

For reasons passing understanding, in addition to filing this action, Plaintiffs compounded the abuse to our justice system and filed a motion for a temporary restraining order and preliminary injunction. Plaintiffs request what they falsely deem the "narrow" and "limited relief" of "a temporary restraining order, preliminary injunction, and 'gag order' to restrain Defendants, during the pendency of this litigation, from (i) re-broadcasting the Defamatory Statements that are the subject of Plaintiffs' Complaint, and (ii) publicly discussing the substance of litigation." Mem. In Supp. of Pl's Mot. for TRO ("Pl's Mem") [Docket 1-1], at 2, 1.

Bob Murray thinks John Oliver was mean to him, and he doesn't want him to be mean again. While that is sad for Bob Murray, it is unconstitutional for a court to order such relief. With Plaintiffs' request for a (1) prior restraint (2) that is a content-based restriction (3) on a matter of

public concern (4) related to a public figure, they have really hit the protected speech jackpot! The requested injunction, "actually forbid[ding] speech activities," is a classic example of a prior restraint. *See Alexander v. United States*, 509 U.S. 544, 550 (1993). All prior restraints on expression are presumptively constitutional; prior restraints on matters of public concern are even more so. *See*, *e.g.*, *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). To make matters worse, the requested injunction is also content-based in nature, and therefore must withstand strict scrutiny. *See Doe v. Gonzales*, 386 F. Supp. 2d 66, 75 (D. Conn. 2005). "It is rare that a regulation restriction speech because of its content will ever be permissible." *United States v. Playboy Entm't Group*, 529 U.S. 803, 818 (2000). That is because, "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

Plaintiffs argue that Defendants will use their "unique powers" to "access . . . millions of West Virginians, to bias the potential jurors who will determine their fate." Pl's Mem. at 3. (These special powers must include magic, as West Virginia has under 2 million residents.[5]) However, although Defendants have said very little about this case, this has done nothing to stop press coverage of this frivolous litigation—possibly due to Plaintiffs' press releases and appearances on Fox News. "Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible." *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989).

---

[5] United States Census Bureau, *Quick Facts: West Virginia*, https://www.census.gov/quickfacts/WV (last visited Aug. 1, 2017) (estimating the West Virginia population to be approximately 1,831,102 as of July 1, 2016).

9

### B.  The Court Should Dismiss This Action & Assess Sanctions.[6]

It is within the Court's inherent authority to *sua sponte* issue an order to show cause as to why the case should not be dismissed and sanctions assessed. When a complaint lacks allegations based in fact and law as thoroughly as here, this "strongly supports supports [a] finding of improper purpose, justifying Rule 11 sanctions. *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). "[T]he primary[] purpose of Rule 11 is to deter future litigation abuse, such as the abuse of our legal system in which Plaintiffs have engaged in for well over a decade. *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990). It is beyond comprehension that Plaintiffs truly believe the speech at issue in this case to be actionable. In yet another libel case filed by Plaintiffs, the court noted that the article in question "engage[d] in conjecture that Murray may have acted out of spite, which begs the response of: *so what*?" *Murray v. The HuffingtonPost.com*, 21 F. Supp. 3d 879, 885 (May 12, 2014) (emphasis in original).  John Oliver was mean to you, Bob. So what?

### IV.   Conclusion

"Humans dislike self-directed criticism. The intolerance within all of us can oversuppress speech which is otherwise useful either to the speaker or to a listener." *Moore v. City of Kilgore*, 877 F.2d 364, 380 (5th Cir. 1989). Bob Murray needs to be taught that our judicial system is simply not the place for harassment and petty grievances. The ACLU-WV therefore respectfully requests that this court deny Plaintiffs' motion for a temporary restraining order and issue an order to show cause as to why this case should not be dismissed and Plaintiffs sanctioned.

---

[6] While, of course, following all of the proper due process requirements.

Dated: August 1, 2017                          Respectfully submitted,


                                               /s/ Jamie Lynn Crofts
                                               Jamie Lynn Crofts
                                               West Virginia Bar No. 12730
                                               ACLU of West Virginia Foundation
                                               P.O. Box 3952
                                               Charleston, WV 25339-3952
                                               (304) 345-9246, ext. 102 /
                                               (304) 345-0207 (f)
                                               jcrofts@acluwv.org

                                               *Counsel for ACLU-WV*

## <u>CERTIFICATE OF SERVICE</u>

I, Jamie Lynn Crofts, do hereby certify that on August 1, 2017, I electronically filed a true and exact copy of BRIEF AMICUS CURIAE OF THE AMERICAN CIVIL LIBERTIES UNION OF WEST VIRGINIA FOUNDATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND IN SUPPORT OF DISMISSAL AND RULE 11 SANCTIONS with the Clerk of Court using the CM/ECF System, with copies provided to:

David L. Delk , Jr.
Grove & Delk, PLLC
44 1/2 15th Street
Wheeling, WV 26003
ddelk@grovedelklaw.com

Jeffrey A. Grove
Grove & Delk, PLLC
44 1/2 15th Street
Wheeling, WV 26003
jgrove@grovedelklaw.com

Clayton J Fitzsimmons
Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
clayton@fitzsimmonsfirm.com

Holly Suzanne Planinsic
Herndon, Morton, Herndon & Yaeger
83 Edington Lane
Wheeling, WV 26003
hplaninsic@hmhy.com

Robert P. Fitzsimmons
Fitzsimmons Law Firm, PLLC
1609 Warwood Ave
Wheeling, WV 26003
bob@fitzsimmonsfirm.com

/s/ Jamie Lynn Crofts
Jamie Lynn Crofts
West Virginia Bar No. 12730
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 /
(304) 345-0207 (f)
jcrofts@acluwv.org

12