## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING

**THE MARSHALL COUNTY COAL CO.,**
**THE MARION COUNTY COAL CO.,**
**THE MONONGALIA COUNTY COAL CO.,**
**THE HARRISON COUNTY COAL CO.,**
**THE OHIO COUNTY COAL CO.,**
**MURRAY ENERGY CORPORATION,**
and **ROBERT E. MURRAY,**

      Plaintiffs,

v.                                        **Civil Action No. 5:17-CV-99**
                                                 **(BAILEY)**

**JOHN OLIVER, CHARLES WILSON, PARTIALLY**
**IMPORTANT PRODUCTIONS, LLC, HOME BOX**
**OFFICE, INC., TIME WARNER, INC.,** and **DOES 1**
**through 10,**

      Defendants.

### ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

Currently pending before this Court is Plaintiffs' Motion to Remand [Doc. 3], filed July 7, 2017. Defendants responded on July 21, 2017 [Doc. 13], and Plaintiffs replied on July 28, 2017 [Doc. 20]. For the reasons that follow, Plaintiffs' Motion will be granted.

**I.     BACKGROUND**

This case was originally filed in the Circuit Court of Marshall County, West Virginia, on June 22, 2017. [Doc. 1-1]. In the Complaint, Plaintiffs allege defamation stemming from a June 18, 2017, broadcast of "Last Week Tonight with John Oliver," which is hosted by John Oliver and broadcast weekly by Home Box Office, Inc. ("HBO").

On June 30, 2017, Defendants removed this case to this Court, asserting diversity

jurisdiction pursuant to 28 U.S.C. § 1332.  [Doc. 1].  Plaintiffs timely filed the pending Motion to Remand on July 7, 2017.  [Doc. 3].

Plaintiffs allege the following statements made by Defendants were defamatory in nature.  First, Defendants asserted that Mr. Murray has no evidence to support his statements that an earthquake caused the Crandall Canyon Mine Collapse, which took the lives of nine employees, after Plaintiffs provided information which claimed an earthquake did cause the collapse, implying that Mr. Murray had lied ("The Crandall Canyon Statement").  Next, Plaintiffs allege that Defendants insinuated that Plaintiffs disregard the well-being of their employees by stating during the broadcast that Plaintiffs appear to be on the same side as black lung, and that Plaintiffs' position on a coal dust regulation was the equivalent of rooting for bees to kill a child ("The Black Lung Statement").  Finally, Defendants described Mr. Murray as looking like a geriatric Dr. Evil ("The Geriatric Dr. Evil Statement").

## II.   APPLICABLE LAW

"We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations.  Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter.  If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter."  **Strawn v. AT&T Mobility**, 530 F.3d 293, 296 (4th Cir. 2008) (citations

omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' **Md. Stadium Auth. v. Ellerbe Becket Inc.**, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); *see also* **Shamrock Oil** [**& Gas Co. v. Sheets**], 313 U.S. at 109 ('Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (internal quotation marks omitted))." **Palisades Collections LLC v. Shorts**, 552 F.3d 327, 333-34 (4th Cir. 2008).

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. *See* **Strawn**, 530 F.3d at 296-97. "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction in a short plain statement–just as federal jurisdiction is pleaded in a complaint–when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper." *Id*. at 297 (citing **Ellenburg v. Spartan Motors Chassis, Inc.**, 519 F.3d 192, 200 (4th Cir. 2008)).

### III.  DISCUSSION

In their Memorandum in Support of the Motion to Remand, Plaintiffs argue that defamation of Mr. Murray is sufficient to defame the Marshall County Coal Company, Marion County Coal Company, Monongalia County Coal Company, Harrison County Coal Company, and Ohio County Coal Company ("Plaintiff Corporations") if the defamation

reflects discredit on the corporations' conduct. [Doc. 4]. Plaintiffs further assert that each of the Plaintiff Corporations belongs to the larger group-Murray Energy Corporation. As Murray Energy was allegedly defamed, Plaintiffs claim that each of the Plaintiff Corporations may also claim to have been individually defamed. *Id*. Plaintiffs also move this Court for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), though this is not mentioned in the initial Memorandum in Support. *Id*. In response, Defendants claim that the Plaintiff Corporations are fraudulently joined, that the fraudulent joinder doctrine should apply equally to both plaintiffs and defendants, that the common defense doctrine does not preclude removal, and that the statements were not of and concerning the Plaintiff Corporations. [Doc. 13]. Defendants also assert that Plaintiffs are not entitled to attorneys' fees because the request is not addressed in Plaintiffs' initial Memorandum in Support and because there existed an objectively reasonable basis for removal. *Id*.

Typically, diversity jurisdiction is determined from "the face of the plaintiff's well-pled complaint." **Ashworth v. Albers Medical Inc.**, 395 F.Supp.2d 395, 402 (S.D. W.Va. 2005). An exception to this well-pled complaint rule is the doctrine of fraudulent joinder. In the context of diversity jurisdiction, this exception allows a court to disregard the citizenship of certain parties. In asserting fraudulent joinder, a defendant seeking removal argues that other defendants were improperly joined because either there is no possible successful cause of action against those defendants or the complaint pled fraudulent facts. *See* **Wyatt v. Charleston Area Med. Ctr., Inc.**, 651 F.Supp.2d 492 (S.D. W.Va. July 20, 2009) (citing **Ashworth**, 395 F.Supp.2d at 403). In elaborating upon these requirements, the **Ashworth**

court stated that:

> The burden of demonstrating fraudulent joinder is heavy. The defendants must show that plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor. Moreover, a claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted. The standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and, indeed, if the plaintiff demonstrates even a glimmer of hope for relief, the jurisdictional inquiry must end. Nonetheless, a finding of fraudulent joinder is warranted when the record before the court demonstrates either that no cause of action is stated against the non-diverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.

***Ashworth***, 395 F.Supp.2d at 403 (internal citations and quotations omitted).

Finally, the Fourth Circuit has held in the context of fraudulent joinder that "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." ***Mayes v. Rapoport***, 198 F.3d 457, 464 (4th Cir. 1999). Here, there are no allegations of outright fraud in the pleading of jurisdictional facts. Thus, the Court's inquiry is limited to whether the plaintiff conceivably may state a claim against defendant based on the allegations of his Complaint.

Where a defamatory statement is made about an executive of a business in his professional capacity, especially in a business setting, such a statement may be seen as defaming that executive's business if the statement would negatively implicate the business or the manner of the business' operation. ***Life Printing and Publishing Co. v. Field***, 64 N.E.2d 383 (Ill. 1946); ***Dombey v. Phoenix Newspapers, Inc.***, 708 P.2d 742 (Ct. App. Ariz. 1985). Such a standard may be extended to lower-level employees of a business

where there is a clear implication that the defamatory statement about the employees' behavior would reflect negatively on the operation of the business. *VECC, Inc. v. Bank of Nova Scotia*, 296 F.Supp.2d 617, 621 (D. V.I. 2003). However, where the interrelationship of an executive and his business is so strong that they may not be separated in the mind of a reasonable person, there exists a presumption that defamatory statements that would damage the reputation of the executive in his business capacity would also damage the reputation of the business. *Market Choice, Inc. v. New England Coffee Co.*, 2009 WL 2590651 at *5 (W.D. N.C. Aug. 18, 2009).

This rule has not been greatly expounded upon in the states of the union, but, where it has been discussed, courts have viewed it as a basic tenant of defamation, often treating the rule as a foregone conclusion and mentioning it in passing. These mentions date at least to the mid-nineteenth century when discussions about corporations in the courts were in their early stages, as demonstrated by *Trenton Mutual Life and Fire Ins. Co. v. Perrine*, 23 N.J.L. 402, 412 (N.J. 1852). Therefore, this Court finds this rule to be appropriate in the instant case.

The Plaintiff Corporations in question were, therefore, properly joined, and the case should be remanded to state court. First, Mr. Murray is the CEO and director of each of the Plaintiff Corporations and is listed as the controller of the mines owned by those corporations. Not only is Mr. Murray heavily interrelated with these corporations in a formal business sense, but a reasonable person who knows of Mr. Murray, especially in West Virginia or another coal state, would find it nearly impossible to separate Mr. Murray from his corporations and mines. With such a strong interrelationship between Mr. Murray and

... 

the Plaintiff Corporations, defamatory statements made about Mr. Murray in his professional capacity may be easily seen as negatively implicating the operation of his corporations.

The allegedly defamatory statements made about Mr. Murray did refer to him in his professional capacity.  First, the Crandall Canyon Statement refers to a collapse at a mine Mr. Murray chaired and operated regarding the cause of the collapse.  Second, The Black Lung Statement refers to Mr. Murray in his professional capacity because his decisions regarding Black Lung regulation would be made as the chairman and operator of the mines. The alleged "character assassinations" of Mr. Murray, including the Geriatric Dr. Evil Statement,[1] refer to Mr. Murray in his capacity as a private individual because they bear no relation to his professional conduct.  However, because the interrelationship between Mr. Murray and the Plaintiff Corporations is so strong, it is possible that those comments may defame the corporations if it was determined that the comments discredited the way the Plaintiff Corporations were operated.  The Crandall Canyon statement implies that the Plaintiff Corporations are run by a dishonest figure, while the Black Lung statement implies a lack of care for the safety of Mr. Murray's employees.  Even without the character statements, there would be sufficient cause for the Plaintiff Corporations to have a possible chance of success in a defamation action based on comments made about Mr. Murray.

Pursuant to 28 U.S.C. § 1332, the district courts shall have original jurisdiction where

---

[1] For those who might not be familiar, Dr. Evil, whose real name is Douglas Evil Powers, gained notoriety as the villain of the Austin Powers film franchise.  He is a parody of Ernst Stavro Blofeld, a nemesis of James Bond.  Along with his cat, Mr. Bigglesworth, a colorful supporting entourage, and a plethora of secret lairs, Dr. Evil made several attempts at taking over the world, before ultimately finding redemption by the end of the final film.

the amount in controversy exceeds $75,000 and the matter is between citizens of different states. There is no dispute that the amount in controversy of the instant action meets the requisite $75,000.01. However, if the Plaintiff Corporations were properly joined, there is no diversity between the parties because both the Plaintiff Corporations and Home Box Office, Inc. are Delaware corporations, the citizenship of the former due to each being incorporated in Delaware. Defendants' primary contention is that the Plaintiff Corporations were not properly joined because the defamatory statements were not of and concerning the corporations, giving the corporations no possibility of asserting a right to relief. As discussed herein, this Court finds that defamatory statements made about an executive of a business may be sufficient to defame his business where the statement was made about the individual in his professional capacity and reflects negatively on the operation of the business. Therefore, the Plaintiff Corporations may have been defamed by statements made about Mr. Murray, giving them a possibility of success in this action as set forth by *Ashworth*, 395 F.Supp.2d at 403. Because the Plaintiff Corporations have this possibility of success, they were properly joined. This joinder destroys the diversity jurisdiction, which would have allowed a removal to this Court because the Plaintiff Corporations and Home Box Office, Inc. are all incorporated in Delaware. Therefore, this action should be remanded to state court.

When removal is challenged, the removing party bears the burden of demonstrating that removal jurisdiction is proper. *Strawn*, 530 F.3d at 297. If federal jurisdiction is doubtful, a remand to state court is necessary. *Md. Stadium Auth.*, 407 F.3d at 260. Defendants, as the removing party, bore the burden of demonstrating that removal

jurisdiction is proper but have not satisfied that burden. Instead, it is possible that the Plaintiff Corporations would be able to establish a cause of action in state court after taking all issues of law and fact in the Plaintiffs' favor. When determining whether parties are properly joined, this is all that is required to allow a remand to state court. *See* **Hartley v. CSX Transp., Inc.**, 187 F.3d 422, 426 (4th Cir. 1999); **Johnson v. Am. Towers, LLC**, 781 F.3d 693, 704 (4th Cir. 2015). Although it is impossible to predict the course of a case when it is remanded to state court and judged on the merits, there exists a glimmer of hope that the Plaintiff Corporations will establish a cause of action, so this jurisdictional inquiry may cease because joinder has been found to be proper, destroying diversity jurisdiction.

Plaintiffs have further requested reimbursement for fees and costs incurred as a result of Defendants' removal. 28 U.S.C. § 1447(c) provides this Court with discretion to order reimbursement of fees and costs after a case is removed and then remanded. The Supreme Court of the United States held that courts may award attorneys' fees pursuant to § 1447(c) where a party lacked an objectively reasonable basis for seeking removal. **Martin v. Franklin Capital Corp.**, 546 U.S. 132, 141 (2005). However, Defendants in the instant action did have an objectively reasonable basis for seeking removal. Because of the scarcity of case law regarding defamation of an executive also defaming her business, it was reasonable for Defendants to argue that this rule should not apply and that the joinder was fraudulent. Indeed, Defendants contested the same rule in **The Marshall County Coal Co., et al. v. The New York Times Co.**, Civil Action No. 5:17-CV-79 (N.D. W.Va. (May 3, 2017), which shares certain counsel with the instant action. As this Court had not yet ruled on the applicability of that rule when the memoranda were filed for the

instant Motion to Remand, Defendants had no way to know if their argument would be successful. Therefore, this Court will deny Plaintiffs' request for costs and fees.

As a final matter, Plaintiffs' Motion for Preliminary Injunction and Motion for Temporary Restraining Order **[Doc. 21]** is hereby **DENIED AS MOOT**. This Court passes no judgment as to the merits of either motion, but notes that both contain questions of law suited for the state court.

### IV. CONCLUSION

Based upon the foregoing, this Court hereby **GRANTS** Plaintiffs' Motion to Remand **[Doc. 3]**. Accordingly, this action is hereby **REMANDED** to the Circuit Court of Marshall County, West Virginia.

As a final matter, this case is hereby **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein and to the Clerk of the Circuit Court of Marshall County, West Virginia.

**DATED**: August 10, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE